# UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>　　　　　**Plaintiff,**<br><br>v.<br><br>**NEWTON JONES (01),**<br>**WILLIAM CREEDEN (02),**<br>**KATERYNA JONES (03),**<br>**WARREN FAIRLEY (04),**<br>**LAWRENCE McMANAMON (05),**<br>**KATHY STAPP (06),**<br>**CULLEN JONES (07),**<br><br>　　　　　**Defendants.** | Case No. 24-20070-DDC |

## DEFENDANTS' JOINT RESPONSE TO
## THE GOVERNMENT'S MOTION FOR ABROGATION OF
## ATTORNEY-CLIENT PRIVILEGE BY WAIVER

Defendants Newton Jones, William Creeden, Kateryna Jones, Warren Fairley, Lawrence McManamon, and Cullen Jones ("Defendants"),[1] by and through their undersigned counsel, respond as follows to the United States' ("Government's") Motion for Abrogation of Attorney-Client Privilege by Waiver ("Motion") (Doc. 107) and to the Court's May 6, 2025 order (Doc. 108).

### Background

1.　A grand jury returned the Indictment in this case on August 21, 2024. (Doc. 1.) The last outstanding summons was served on September 3, 2024. (Doc. 23.)

---

[1] Defendant Kathy Stapp pleaded guilty on December 19, 2024, and does not join in this response to the Government's Motion. (Doc. 79.)

2. On September 27, 2024, the Government produced the first of five "rounds" of discovery to the Defendants. Round 1 contained 4296 documents – approximately 2.5% of the total documents produced to date – which consisted primarily of documents the Government had received from the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers, and Helpers ("IBB"). (Ex. 1, Round 1 Production Letter; Ex. 2, Golden Rule Emails for Meet-and-Confer No. 1.) The Government's production letter also referenced unspecified "physical items and/or sensitive evidence" that would be available only by inspection. (Ex. 1 at 2.)

3. On October 2, 2024, counsel for Defendant Newton Jones ("Jones") asked the Government to identify these "physical items and/or sensitive evidence." The defense also advised that the format of the Round 1 production was out of step with e-discovery best practices and could significantly hamper a timely and effective review by the defense if extrapolated to what the Government said would be enormous future productions. (Ex. 3, Golden Rule Letter for Meet-and-Confer No. 1.) Accordingly, the defense requested that Round 1 be reproduced, and that all later rounds be produced in the proper format.

4. On October 25, 2024, counsel met and conferred in person and by videoconference about, *inter alia*: (1) what the "physical items and/or sensitive evidence" were, (2) apparent "redactions" on 241 documents, and (3) the lack of a privilege log. (Ex. 4, Agenda for Meet-and-Confer No. 1 ¶¶ 5, 7, 8.)

5. The Government advised that the statement about "physical items and/or sensitive evidence" was "standard language" and that the Government was not holding any physical items for inspection. (Ex. 5, Summary of Meet-and-Confer No. 1 ¶ 7.) However,

the Government advised it had an agreement with the IBB to preserve the electronic devices of the Defendants and would produce a list of items being preserved so the defense could pursue certain electronic data that had not been collected. (*Id.*)

6. Defendants followed up in mid-November 2024 seeking this list, requesting production of Rounds 2 and 3 of the discovery, and objecting to the delay. (Ex. 6, Request for Rounds 2 and 3 Productions and Device List.) The Government reproduced Round 1 in the proper format on December 4, 2024. (Ex. 7, December 2024 Production Communications Excerpts at 4.) It then produced Round 2 in the incorrect format, prompting the defense to again seek correction. (*Id.* at 1.) Rounds 2 and 3 were produced in the correct format in mid-December 2024. (*Id.*) In late January 2025, IBB produced a list of the devices in its custody; the list contained 176 devices. (Ex. 8, Production of Electronic Device List.)

7. Approximately 105,000 of the ~162,000 documents produced in Rounds 1-3 were *blank* emails of Defendants and witnesses. (Ex. 9, Golden Rule Emails for Meet-and-Confer No. 2; Ex. 10, Agenda for Meet-and-Confer No. 2 ¶ 5.) They identified only the sender, recipient, and date but contained no subject line or content. (Ex. 10 ¶ 5.) Defendants further discovered during a second meet-and-confer with the Government in mid-January 2025 that it had collected these blank emails from third-party service providers but had not sought or collected relevant electronic communications from the IBB, leaving all electronic communications of the Defendants and other critical witnesses in the possession of the IBB. (Ex. 11, Summary and Follow-Up Emails re Meet-and-Confer No. 2 ¶ 5.)

8.  As for the "redactions" on the 241 redacted documents, upon initial inspection, the "redacted" text was visible under the redactions. Once this was discovered, Defendants notified the Government and sequestered the documents without review. The Government later advised most redactions were "glitches in the production" rather than intentional redactions, but advised Defendants it would confer with IBB and respond appropriately. That was October 2024; Defendants have continued to sequester the documents because, since then, the Government has remained in ongoing discussions with the IBB about the scope of its privilege waiver and whether any documents were inadvertently produced. It was apparent that the limited set of these documents that were reviewed before the sequestration[2] were relevant to the defense, including routine policy documents, itineraries, and compensation records – all of which were explicitly referenced in the Indictment. (*Id.*)

9.  The Government initially advised that the documents subject to "glitches" would be reproduced in proper form in Round 2. As of the date of this filing, however, the Government has still not identified which documents have been reproduced without the glitches and which documents may be privileged. In response to Defendants' inquiry, the Government advised in January that it would provide a privilege log and list of documents that could be released from sequestration by January 27, 2025, but that did not occur. (Ex.

---

[2] While the reviewers who viewed these documents prior to sequestration are attorneys at Spencer Fane LLP, counsel for Defendant Jones, they are not members of his trial team. In an abundance of caution, at the first indication that the documents being reviewed might have been inadvertently-produced privileged documents, counsel for Defendant Jones halted the review and sequestered the 241 documents at issue before continuing with the review of the remainder of Round 1.

11 at 3 ¶ 9; Ex. 12, Golden Rule Emails for Meet-and-Confer No. 3.) On May 16, 2025, the Government advised that the IBB had identified seven privileged documents among those sequestered and that it would produce a log the following week. (Ex. 12, Golden Rule Emails May 2025 at 2 ¶ 5.) Defendants have not received such a log.

10.     The same day, the Government informed the defense that the IBB will not produce electronic communications or consent to a search of Defendants' electronic devices without a privilege review. (*Id.*) The Government then filed the present Motion, which requests an order defining the IBB's waiver of its attorney client privilege as follows:

   a. any communications between Boilermakers Union officers or employees and any of its attorneys concerning the standards for expenditure of union funds under the Boilermakers Union Constitution, by-laws, and policies, and federal law; and

   b. any communications between Boilermakers Union officers or employees and any of its attorneys concerning the subject of any the [sic] Indictment allegations, regardless of when the communications were made.

(Doc. 107 at 23.)

**Defendants' Response to the Government's Motion**

The Defendants generally do not oppose the relief requested by the Government in its Motion. They do object, however, to the Government's prejudicial delay in procuring and producing evidence in this case and to extending the temporal scope of any waiver beyond January 22, 2024, after which the first Government target letters were issued.

Under 29 U.S.C. § 501(c), the Government must prove beyond a reasonable doubt that the Defendants' expenditures were unauthorized and that the Defendants lacked a

5

good-faith belief that they were legitimate. *See United States v. DeFries*, 129 F.3d 1293, 1306 (D.C. Cir. 1997) ("[A] § 501(c) violation requires the unauthorized appropriation of union property."); *United States v. Butler*, 954 F.2d 114, 118 (2d Cir. 1992) (holding that a defendant lacks criminal intent under § 501(c) "when the evidence establishes that he had a good-faith belief both that the funds were expended for the union's benefit and that the expenditures were authorized (or would be ratified) by the union"); *United States v. Bane*, 583 F.2d 832, 835–36 (6th Cir. 1978) (holding that the Government "must prove . . . that the defendant lacked a good faith belief that the expenditure was for the legitimate benefit of the union"). In defending against the § 501(c) charges, the Defendants are entitled to adduce evidence about the advice given by the IBB's counsel about the subject matters in the Indictment. *DeFries*, 129 F.3d at 1308-10 (reversing convictions under § 501(c) for failure to give an advice-of-counsel instruction based on advice given by the union's counsel to its executives).

To the extent the IBB voluntarily waived its privilege as to some aspects of the matters charged in the Indictment, neither the IBB nor the Government may deprive the Defendants of their right to put on a defense or obtain information concerning the subject matter of the charges by cherry-picking only the facts that suit them. *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993) ("[S]elective assertion of privilege should not be merely another brush on an attorney's palette, utilized and manipulated to gain tactical or strategic advantage."); *In re Qwest Communications Int'l Inc.*, 450 F.3d 1179, 1191 (10th Cir. 2006) (rejecting the so-called "selective-waiver doctrine" and noting that "'[i]t would . . . be inconsistent and unfair to allow appellants to select according to their

6

own self-interest to which adversaries they will allow access to the materials'") (quoting *In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1372 (D.C. Cir. 1984)).

However, ordering production of the IBB's privileged communications that were generated *after* the issuance of the target letters would be inappropriate for at least two reasons. *First*, those communications are highly likely to contain privileged materials pertaining to the Government's investigation *itself*, which is a different subject matter entirely from the matters alleged in the Indictment. *Second*, the IBB has possession of privileged communications between Defendants and their *personal* lawyers, a substantial portion of which would have been generated after the target letters were issued, and none of which should be provided to the Government.

Finally and obviously, the Government may not delay "exclusively for the convenience of the State." *Dickey v. Florida*, 398 U.S. 30, 38 (1970). To say the Defendants were surprised that the information now sought by the Government was, for some reason, not collected during the investigation and produced in the initial production, would be an understatement. These communications will bear heavily – perhaps dispositively – on whether the Government can meet its burden of proving that any alleged racketeering conspiracy existed or any embezzlement or other predicate acts occurred.

In addition, and perhaps most importantly, the IBB communications are and will be critical to defending against the Government's sweeping allegations that Defendants were "not performing any productive work" (Doc. 1, Indictment ¶ 29), "did not perform productive work commensurate with fulltime employment" (*id.* ¶ 30), "performed little or no work" (*id.* ¶ 31), "spent weeks at home not working" (*id.* ¶ 46), "performed little or no

7

productive work" (*id.* Ct. 35, ¶ 2), and "were not fulltime employees scheduled to work at least 30 hours per week" (*id.* Ct. 49, ¶ 6). These allegations are at the center of Counts 35, 36, 37, 38, 49, 50, 51, 52, 53, 56 and 57, yet the Government failed to obtain materials that go directly to the plausibility of these allegations.[3] It is improper for the Government to delay its investigation of the Defendants' electronic communications until after the Indictment was returned, only to then *continue* delaying its collection and production efforts while simultaneously pushing for an earlier trial date. These tactics, along with the protracted nature of the parties' various other discovery disputes and the present, wholly avoidable motion practice regarding the Government's dispute with the IBB, will serve only to prejudice the defense, drain the Defendants' resources, and hamper their ability to timely review the relevant materials in preparation for trial.

## Conclusion and Reservation of Rights

For the foregoing reasons, Defendants do not oppose the relief requested by the Government, but only for the subject matter of the Indictment through January 22, 2024. In doing so, Defendants reserve the right to pursue additional relevant information from the IBB (and failing that, to seek the Court's intervention as necessary). Nor do they waive any privilege or work-product protections as to communications between Defendants and their personal lawyers, and they preserve all objections they may have regarding documents in the IBB's possession, including but not limited to any relevance or procedural objections.

---

[3] Defendants are preparing and will file motions pursuant to Fed. R. Crim. P. 17(c).

Respectfully submitted,

SPENCER FANE LLP

/s/ *Patrick A. M<sup>c</sup>Inerney*
Patrick A. M<sup>c</sup>Inerney # 22561
Daniel M. Nelson KS Fed # 79203
SPENCER FANE LLP
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106-2140
Tele: 816-474-8100
Fax: 816-474-3216
pmcinerney@spencerfane.com
dnelson@spencerfane.com
Attorneys for Newton Jones

/s/ *Kurt Kerns*
Kurt P. Kerns # 15028
KERNS LAW GROUP
328 N. Main Street Wichita, KS 67202
Tele: 316-265-5511
kurtpkerns@aol.com

Federico Andino Reynal, *pro hac vice*
THE REYNAL LAW FIRM, PC
917 Franklin Street, Sixth Floor
Houston, TX 77002
Tele: 713-228-5900
areynal@frlaw.us
Attorneys for William Creeden

/s/ *Mark Molner*
Mark D. Molner # 24493
EVANS & MULLINIX, P.A.
7225 Renner Road, Suite 200
Shawnee, KS 66217
Tele: 913-962-8700
Fax: 913-962-8701
mmolner@emlawkc.com

John T. Davis, *pro hac vice*

9

        KESSLERWILLIAMS LLC
        1401 S. Brentwood Blvd., Suite 950
        St. Louis, MO 63144
        Tele: 314-455-5555
        Fax: 314-727-2869
        john.davis@kesslerwilliams.com
        Attorneys for Kateryna Jones

        /s/ *J.R. Hobbs*
        James R. Hobbs KS Fed # 70169
        Marilyn Keller # 15444
        WYRSCH HOBBS & MIRAKIAN, P.C.
        One Kansas City Place
        1200 Main St., Suite 2110
        Kansas City, Missouri 64105
        Tele: 816-221-0080
        Fax: 816-221-3280
        jrhobbs@whmlaw.net
        mbkeller@whmlaw.net
        Attorneys for Warren Fairley

        /s/ *Branden Smith*
        Branden Smith # 22761
        SMITH LEGAL, L.L.C.
        719 Massachusetts Street, Suite 126
        P.O. Box 1034
        Lawrence, Kansas 66044
        Tele:  785-856-0780
        Fax:  785-856-0782
        branden@smithlegalllc.com

        Kevin M. Spellacy, *pro hac vice*
        James Wooley, *pro hac vice*
        Erin E. Hanson, *pro hac vice*
        323 W. Lakeside Ave., Suite 200
        Cleveland, OH 44113
        Tele: 216-344-9220
        Fax: 216-664-6999
        kspellacy@spellacylaw.com
        jwooley@spellacylaw.com
        ehanson@mghslaw.com
        Attorneys for Lawrence McManamon

        /s/ *Kathleen Fisher Enyeart*
Jackson Hobbs # 28191
Kathleen Fisher Enyeart # 25203
Brody Sabor KS Fed # 79098
LATHROP GPM
2345 Grand Blvd., Suite 2200
Kansas City, Missouri 64108
Tele: 816-292-2000
Fax: 816-292-2001
jackson.hobbs@lathropgpm.com
kathleen.fisherenyeart@lathropgpm.com
brody.sabor@lathropgpm.com
Attorneys for Cullen Jones

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing was electronically filed on June 26, 2025, with the Clerk of the Court for delivery to interested parties.

        /s/ *Patrick A. McInerney*
Attorney for Newton Jones