# EXHIBIT 4

*U.S. v. Jones*
2:24-cr-20070-DDC-TJJ (D. Kan.)
**Agenda for 10/25/24 Meet-and-Confer**

1. **Production of Load Files and Corresponding Metadata**

   o *Load files and metadata in the Government's possession should be produced and future collections, if any, should include the same.*

   o *A bulk or rolling production of load files and corresponding metadata is not difficult and can be accomplished with very few commands in accordance with industry-standard ediscovery practices. See, e.g.,* <u>Recommendations for Electronically Stored Information (ESI) Discovery Production in Federal Criminal Cases</u> *("DOJ Guidelines"), attached hereto as Exhibit A, at Strategies p. 4-5 (explaining normal process of producing metadata together with "an industry-standard load file" when available); see also Criminal E-Discovery, A Pocket Guide for Judges ("Pocket Guide"), attached hereto as Exhibit B, at p. 55-56 (adopting same). Withholding the load files that are currently in the Government's possession, custody, or control will serve only to delay and impose substantial unnecessary costs on the defense[1], including front-end processing costs and back-end review inefficiencies that would not otherwise be incurred.*

   o *We understand the Government demanded directly from the IBB "reports in their electronic format with metadata." (RD1_JONES_000475.) Accordingly, we are requesting the following for the Round 1 production and all subsequent productions to allow for adequate searching, family grouping, and sorting (collectively, "load files and metadata"):*

      ▪ *DAT files containing the common metadata and relational fields*

      ▪ *OPT files containing production images*

      ▪ *Images: single-page TIFF images for each page of the production to be used in conjunction with the OPT files to facilitate loading*

      ▪ *Natives: select native files with relative paths, to be keyed to the NativeLink field in the DAT file*

      ▪ *Text: document-level text files with extracted or OCR text and relative paths, to be keyed to the TextLink field in the DAT file.*

      ▪ *Names: documents should be named using the beginning Bates number for the document with which it is associated*

---

[1] Native processing of data sets exceeding 100 GB can easily run into five figures, adding more cost for an inferior product when a much better solution (load files) is less expensive and easier.

- o *It is not sufficient to provide native files only for reasons previously discussed and for additional reasons that have become evidence during the initial stages of the review. As we previously discussed, load files facilitate (1) loading the files into a review platform, (2) populating metadata fields correctly, and (3) grouping families (e.g.., emails and their attachments). In addition, it is now clear that some of the "native" files produced are in fact not native files at all. For example, RD1_JONES_000475 is supposedly a "native" file, but it is in fact a pdf image of an email. Further, some of the "natives" state only that the document was "produced in native," but we have not located the corresponding "native" files within the Government's production. (E.g., RD1-JONES_286236, RD1-JONES_286253, RD1_JONES__286254, 255, 256, RD1_JONES_286285; RD1_Jones_277228 through 277270.)[2]*

- o *For these reasons, and due to the substantial additional cost in managing the review in the form the documents have been produced to date, (1) a forensically sound collection be performed, and (2) corresponding load files and metadata should be produced in conjunction with the documents. As we previously discussed, guidance from the federal judiciary and the Justice Department confirm that this request is not only reasonable but in line with the bare-minimum industry-standard practices. W.D. Mo. Guide Principle 3 ("The format selected for producing discovery should maintain the ESI's integrity, allow for reasonable usability, reasonably limit costs and, if possible, conform to industry standards for the format. Because the volume of e-discovery frequently requires the use of software tools for discovery review, ESI must be produced in a manner that permits electronic search, retrieval, sorting, and management. . . ."); see also id. Appendix B ("Have the parties addressed e-discovery issues involving . . . [m]etadata in third party ESI . . . ?")[3]; see also DOJ Guidelines at Recommendations p. 1 ("ESI discovery production involves the balancing of several goals…[including that] the volume of ESI in many cases may make it impossible for counsel to personally review every potentially discoverable item, and, as a consequence, the parties increasingly will employ software tools for discovery review, so ESI discovery should be done in a manner to facilitate electronic search, retrieval, sorting, and management of discovery information"); Pocket Guide at p. 42 (adopting same).*

2. **Production Indices**

   - o *The production index provided by the Government is notably deficient. Fewer than 108 of the 4300 items listed have intelligible descriptions. Further, the IBB did not provide sufficient indices to identify all documents - there are substantial gaps such that the majority of the documents produced are not accounted for in the IBB's indices. We have located indices for only 6842 pages of the approximately 300,000*

---

[2] And, as discussed below in Point #5, it appears the Government attempted (but failed) to redact the reference to corresponding native files on these pdfs. There is no basis for such a redaction, and the actual natives should be produced.

[3] https://www.mow.uscourts.gov/sites/mow/files/DC_Criminal%20ESI%20Principles%20and%20Checklist.pdf

*pages of documents produced. If the Government is aware of other IBB indices, we request that they be isolated and provided.*

- *A usable index should be provided for all productions, especially for any documents the Government collected without implementing standard ediscovery practices (e.g., for which it did not obtain load files or appropriate metadata from the third parties). See W.D. Mo. Guide Principle 3 ("If the producing party has not created a table of contents prior to commencing e-discovery production, it should consider creating one describing the general categories of information available as e-discovery...."). Specifically, we request that the indices provide (1) an adequate description of what each document is and (2) where it derives from. For any documents received along with appropriate load files and metadata, we are willing to forego this request.*

3. **Original Bates Ranges and Other Categorization Structures**

    - *The IBB produced both native files and pdfs to the Government with some cover letters describing the categories of documents produced, organized by Bates range. It appears, however, that the Government renamed the files using its own numbering system and randomized many of the documents, instead of producing the documents in the original organizational structure. This renders the IBB's categorization largely useless. The Government has provided its own production index, but in order to recategorize the documents back into the IBB's original categories, the defense would be required to engage in a manual process of transposing IBB Bates numbers to Government Bates numbers and then re-foldering the documents. This is unnecessarily inefficient and costly to the defense.*

    - *We request that this document set be made available in the manner it was produced to the Government, and the same should be done for all future productions of documents received from third parties. See W.D. Mo. Guide Principle 3 ("[A] table of contents could be nothing more than a folder structure where like items are placed into folders for that type of item.").*

4. **Missing *Brady/Giglio* Material**

    - *Round 1 is not a complete production of all documents the IBB produced within the identified Bates ranges. Some critical documents (i.e., Expensify reports) identified on the IBB spreadsheets are clearly missing from this production, as they are **not** identified on the Government's production index. (See RD1_JONES_000595.) As a result of the renaming and reordering of documents, we cannot discern what else has been withheld. We request that the Government identify the documents it is withholding and the basis for doing so.*

    - *With respect to the Expensify records that were produced—i.e., exculpatory documents that contain descriptions of the purpose of the expenditures—the notes*

*are unreadable on many of them. It appears the IBB placed too many images on a single page, printed out the electronic versions of these records, and scanned them back in, rendering them illegible. Although subsequent documents with larger prints of <u>some</u> of the same images exist, some are clearly <u>missing</u>. (See RD1_Jones_336703.)*

- o *This is an incomplete production of relevant Brady/Giglio material. We request a full production of these images and access to the original electronic files within the Expensify system, including fully intact metadata.*

5. **Redactions**

- o *Many of the documents produced in Round 1 have been redacted. We have previously been advised that "some records" were previously redacted by the IBB, but it appears the Government has made redactions as well.*

- o *For example, RD1_Jones_277228 through 277270 appear to be slip sheets produced by the IBB to the Government identifying native documents. It seems the Government then attempted to redact the slipsheet text but failed to obliterate the extractable text underneath the redaction. This suggests the Government has made redactions without producing a log specifying the bases for the redactions. In addition, it appears the native files identified in the slipsheets have not been produced. See Point #1 Above.*

- o *Please advise which documents were redacted by the Government, which documents were redacted by the IBB, and whether the Government has received any unredacted copies of the documents redacted by the IBB or other third parties. The Government should produce an itemized log specifying the bases for its redactions, as this information is necessary for the defense to determine the appropriateness of the redactions and respond accordingly. See DOJ Guidelines at Strategies p. 3 (explaining the parties should "identify and discuss the types of confidential or personal information present in the ESI discovery" subject to redactions); see also Baez v. F.B.I., 443 F. Supp. 2d 717, 722 (E.D. Pa. 2006) (explaining that "[a party] cannot mount a challenge to the redactions without knowing, in fairly specific terms, what information was redacted and why the government deemed the redaction justified.").*

- o *In addition, please advise if the Government is requesting to claw back any privileged documents. Some of the redactions black out the text. Others white out the text. Many of them are incomplete, meaning the extracted text can be viewed under the redactions. We have sequestered a subset of the redacted documents that we identified as potentially privileged using search terms of known counsel. We intend to confer with you on this issue prior to reviewing the potentially privileged materials.*

- o *However, some of the documents with incomplete redactions are clearly relevant and not privileged. (E.g., routine policy documents, itineraries, compensation*

4

*records; RD1_JONES_277411; RD1_JONES_277231; RD1_JONES_277243.) As such, we request that native and unredacted copies of these documents be provided, as many of them are itineraries that often contain <u>handwritten text</u>, which we cannot review despite being able to review the extracted text. (E.g., RD1_JONES_280041.)*

6. **Bates Stamps**

    o *The Government did not stamp the documents it provided with its own Bates numbers. Although the documents are identified by Government Bates number in the production index, they should also be stamped on the documents themselves for tracking purposes when used at depositions, trial, etc.*

7. **Physical Items and/or Sensitive Evidence**

    o *The Government should advise what evidence falls in this category and provide its availability for a viewing. If any of the items are subject to forensic testing, the defense will need to arrange for an expert inspection.*

8. **Privilege Log**

    o *We have not received a privilege log and do not know whether the IBB produced a privilege log. See § 5, above. If so, please produce it.*

9. **Investigative Reports**

    o *Defense counsel would further request that the Government's Round 2 production include Department of Labor and/or FBI investigative reports (e.g., FBI 302s).*

5