IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>v.<br><br>NEWTON JONES (01),<br>WILLIAM CREEDEN (02),<br>KATERYNA JONES (03),<br>WARREN FAIRLEY (04),<br>LAWRENCE MCMANAMON (05),<br>KATHY STAPP (06),<br>CULLEN JONES (07),<br><br>　　Defendants. | Case No. 24-20070-DDC |

**MEMORANDUM AND ORDER**

The parties have filed several motions covering much ground. But this Order decides a motion filed by a non-party—the International Brotherhood of Boilermakers and its Motion to Modify Subpoena or In the Alternative to Quash (Doc. 111). The court grants this motion, quashing the disputed portion of the subpoena at issue (Doc. 111-1). Below, the court explains why.

*Background*

The United States has served a subpoena on the International Brotherhood of Boilermakers—"IBB" for short. IBB, the former employer for defendants here, responded by filing the current motion. Doc. 111. IBB's motion asks the court to modify or quash the subpoena. *Id.* This filing explains that it "is willing to produce much of what is requested" by the subpoena, but not all requested material. *See* Doc. 111 at 1 (quotation cleaned up). Also, it carefully differentiates between the uncontested and contested aspects of the subpoena.

*First*, the uncontested:  With one reservation, IBB reports that it has agreed on its own to produce all the requested email accounts (and associated data) for eight of the nine individuals named in the subpoena.  *See* Doc. 111 at 2; *see also*, Doc. 111-1 at 4 (identifying nine email accounts targeted by government's subpoena).  The court thus excludes from its ruling here the documents and data that IBB independently has agreed to produce to the government.

*Now*, the contested:  IBB excludes two categories of documents or data from its agreement to produce.  It thus asks the court to quash the subpoena for (a) the email account (and associated data) for Kathy Stapp, its former Director of Human Resources and a defendant in this action; and (b) privileged material contained in any of the nine email accounts named in the subpoena.  Doc. 111 at 2.  On the former—Ms. Stapp's email account—IBB's counsel has explained that this part of the subpoena's demand presents a particularly gnarly challenge.  Ms. Stapp's HR role produced an email account laden with health related and other private employment communications about hundreds of IBB employees.  Doc. 121 at 3 n.3.  On the latter—purportedly privileged material in the nine emails accounts—IBB explains that these email accounts include a sprawling collection of privileged materials.  For instance, they include regular communications with an outside law firm who functioned as IBB's General Counsel for decades.  *See* Doc. 121 at 3.  They also include sporadic communications with other outside lawyers who IBB hired to handle specific legal matters.  *See id.*

IBB also notes that another pending motion could buffet the reach of this privilege exception, *i.e.*, the United States' Motion for Abrogation of Attorney-Client Privilege by Waiver (Doc. 107).  IBB explains that the government has asserted that at least some defendants in this action plan to assert an advice of counsel defense.  Doc. 121 at 1.  And so, the government contends, it's entitled to access to all legal advice pertinent to that defense.  *Id.*  But IBB and the

government haven't managed to define the scope of any waiver attendant to this anticipated defense. *See id.* at 3–4.[1]

Filing separately, Ms. Stapp has asserted two responses to IBB's motion. Her initial filing (Doc. 120) explains that she opposes the IBB's "motion to withhold her emails." *Id.* at 1. Ms. Stapp recently supplemented her position, explaining that she joins her co-defendants' motion "to request her emails," Doc. 133 at 2, but that she opposes her co-defendants' requests to secure the emails between IBB's counsel at Blake & Uhlig PA and certain of IBB's former employees. *Id.* at 2.

Below, the court analyzes the two disputes presented by IBB's motion. But before the court provides its analysis, it emphasizes that neither this Order nor any other court action comments on IBB's decision to provide materials and data to the United States on a voluntary basis. IBB is a sophisticated organization and it's represented by able counsel. It has elected to provide the government with some records and data. That private agreement isn't before the court, and the court anticipates playing no role in any disputes that might emerge from it.

*Analysis*

Fed. R. Crim. P. 17(c) governs a subpoena duces tecum issued in a criminal case—the type of subpoena at issue here. Does the subpoena at issue here comply with Rule 17(c)'s standards? Deciding this question begins with the legal standard.

**A. Legal Standards Governing Rule 17(c) Subpoenas**

The court recently outlined the controlling standard applied to subpoenas issued under Rule 17(c) of the Federal Rules of Criminal Procedure:

---

[1] IBB's motion clarifies that its agreement to produce documents voluntarily also presumes that it and the parties will finalize a protective order applying to its voluntary production. Doc. 121 at 7. No one has moved for a protective order and this Order thus takes no position about the contents or reach of any protective order that the parties might negotiate.

3

The Tenth Circuit summarized the legal principles governing a request for a Rule 17(c) subpoena in *United States v. Abdush-Shakur*, 465 F.3d 458 (10th Cir. 2006). As the Circuit explained,

> Rule 17(c) [of the Federal Rules of Criminal Procedure] provides that "[a] subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein." Rule 17(c) is "not intended to provide an additional means of discovery," but "to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). A party seeking a subpoena duces tecum under Rule 17(c) must establish:
>
>> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."
>
> *United States v. Nixon*, 418 U.S. 683, 699–700 (1974). Thus, "on appeal from the denial of a Rule 17(c) motion, the movant must show that the subpoenaed document was relevant, admissible, and specific." *United States v. Gonzalez–Acosta*, 989 F.2d 384, 389 (10th Cir. 1993). Failure of one of these elements precludes reversal. *See United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002) (affirming district court's suppression of a subpoena under Rule 17(c) where defendant arguably established relevance and admissibility, but not specificity).

*Abdush-Shakur*, 465 F.3d at 467 (quotation cleaned up).

On the first rudiment—"evidentiary and relevant"—commentators consistently emphasize that a "subpoena duces tecum is not a discovery device, and the category of materials subject to a subpoena is not so expansive as for materials subject to Rule 16." 25 James W. Moore & Robert M. Cipes, Moore's Federal Practice § 617.08[2] (Daniel R. Coquillette et al. eds.) (3d ed. 2024). But though "Rule 17 is limited to the production of evidentiary materials, a party need not actually use those materials in evidence." *Id.* Instead, a "good faith effort" to secure "evidence is sufficient for a subpoena's demands to fall within the ambit of the Rule." *Id.* Thus, it is "axiomatic that the relevance criterion can be fulfilled if

4

the documents sought would tend to prove a material issue of the prosecution or defense." *Id.* § 617.08[3][b] (citing, among others, decisions by district courts within Tenth Circuit).

On the second requirement—"admissible"—generally speaking "impeachment evidence does not meet the admissibility test and may not be the sole support for a party's demand." *Id.*

The last requirement—limiting Rule 17(c) subpoenas to "specific" requests—is a requirement our court views as "the most difficult hurdle to overcome." *United States v. Wittig*, 250 F.R.D. 548, 552 (D. Kan. 2008) (citing *United States v. Anderson*, 31 F. Supp. 2d 933, 944 (D. Kan. 1998)). The Tenth Circuit has defined the contours of the specificity requirement this way: "*Nixon* mandates that the party requesting the information identify the item sought and what the item contains, among other things." *Morris*, 287 F.3d at 991. The Circuit has enforced compliance with this requirement stringently. For example, in *Morris*, defendant sought a subpoena demanding pretrial production of "all records, documents, reports, telephone logs, etc., surrounding the investigation into the FBI undercover agent's shooting of [defendant] and the agent's entire personnel file." *Id.* The Court of Appeals affirmed the district court's decision quashing the subpoena because it wasn't sufficiently specific. The Circuit explained its rationale this way:

> Courts have held that requests for an entire file are evidence of an impermissible fishing expedition. *United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984); *United States v. Hughes*, 931 F.2d 63 (10th Cir. 1991). It appears that defense counsel [in *Morris*] attempted to use the Rule 17(c) subpoena for impermissible discovery purposes. [Defendant's] Rule 17(c) subpoena did not overcome the hurdle of specificity as required by *Nixon*.

*Id.*

At the opposite end of the specificity spectrum, courts have held that narrower requests comport with the specificity requirement. In *United States v. Romero*, for instance, defendant requested "records about only one vehicle from only one day." No. 21-cr-00559-JCH, 2023 WL 2614472, at *3 (D.N.M. March 23, 2023). The district court viewed this request as sufficiently specific because defendant had, "in other words, identified the item sought and what the item contains." *Id.* (quotation cleaned up). It thus ruled that the proposed subpoena complied with the Tenth Circuit's ruling in *Morris*, denying the government's motion to quash.

*United States v. Clinesmith*, No. 23-20063-DDC, 2025 WL 974262, at *2–3 (D. Kan. Apr. 1, 2025). Part B of this Analysis applies this standard to the disputed aspects of the subpoena at issue here.

### B. Application of This Standard

One needn't read much of the government's subpoena to discern how far it deviates from this controlling standard. The subpoena demands that IBB produce the entirety of Ms. Stapp's email account, using this language: "Email account[] associated with, operated by, or created by Kathy Stapp, including but not limited to, kstapp@biolermakers.org." Doc. 111-1 at 4. Attachment B to the government's subpoena clarifies that it seeks all of Ms. Stapp's emails for more than 14 years, describing the "Particular Things to be Provided" this way: "The contents of all emails" associated with this account for the period "from January 1, 2009, to August 31, 2023[.]" *Id.* at 5. Persistent subpoena readers will learn that the government also includes within its demand "stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time [when] each email was sent, and the size and length of each email[.]" *Id.* And there's more. The government's instructions also demand "All records or other information regarding the identification of the Accounts" and "All records or other information stored by an individual using the Accounts[.]" *Id.*

In effect, the holding in *United States v. Morris* decides the current dispute. 287 F.3d 985. There, the defendant in a criminal case aspired to serve a subpoena that would demand "all records, documents, reports, telephone logs, etc., surrounding the investigation into the FBI undercover agent's shooting of [defendant] and the agent's entire personnel file." *Id.* The district court quashed the subpoena, ruling it too unspecific to comply with *Nixon*'s specificity

requirement. The Tenth Circuit affirmed even though "the information . . . sought through [this] Rule 17(c) subpoena appears highly relevant and is arguably admissible[.]" *Id.* The Circuit likened the subpoena's request to a fishing expedition and held the district court hadn't abused its discretion by quashing the subpoena. *Id.* (citing *Gonzalez-Acosta*, 989 F.2d at 388). The Circuit viewed the contested subpoena as one issued for "impermissible discovery purposes." *Id.*

The *Morris* subpoena is far narrower than the one served on IBB here. The *Morris* subpoena merely sought records for an investigation into one agent's shooting on a particular day and that agent's personnel file. Here, in contrast, the government seeks 14-plus years of email for Ms. Stapp. The request is unlimited by subject matter. It reads like a document request a party might propound in a civil case—and even in that setting the request likely wouldn't survive challenge. *See, e.g.*, *Stecklein & Rapp Chartered v. Experian Info. Sols., Inc.*, 113 F.4th 858, 862 (8th Cir. 2024) (affirming district court's ruling quashing subpoenas where "subpoenas posed an 'undue burden' precisely because much of the requested information was irrelevant" and reprimanding defendant for "cast[ing] its discovery net so wide" (quoting Fed. R. Civ. P. 45(d)(3)(A)(iv))); *Johnson v. Knox Cnty. Sch.*, No. 22-cv-136-TRM-DCP, 2023 WL 11277997, at *2 (E.D. Tenn. Dec. 28, 2023) (granting objection to subpoena duces tecum request for forensic examination of cell phone and finding request "extremely broad in nature" where it "contain[ed] no subject matter but simply [sought] any and all text messages, instant messages, messages from messenger applications, email or other indicia of communication . . . for over two years" (quotation cleaned up)); *Struck v. Gao*, No. 22-cv-02415-SPG-MAA, 2023 WL 4155373, at *11 (C.D. Cal. Mar. 15, 2023) (sustaining defendant's overbreadth objection to subpoena request where subpoena sought "all documents and information related to [defendant], regardless of the subject matter of such communication" because the request didn't "limit the scope of information

7

requested"); *Bell v. Taylor*, No. 14-cv-00785-TWP-DKL, 2016 WL 1170822, at *2 (S.D. Ind. Mar. 25, 2016) (granting motion to quash where court found discovery request "an open-ended request to fish for irrelevant materials").

The court realizes that the Circuit's review in *Morris* applied the abuse of discretion standard. And so, one could argue, the Circuit might just as well have affirmed a contrary ruling by the district court. The court also recognizes that some district judges have applied a more forgiving approach to subpoenas directed to third parties. In *United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008), for instance, a district judge denied the government's motion to quash a defendant's Rule 17(c) subpoena. In a thoughtful and comprehensive order, *Tucker* opined that *Nixon* didn't apply to Rule 17(c) subpoenas issued to third parties. *Id.* Instead, *Tucker* applied (in *Nixon*'s place) a "less-stringent standard [requiring], as a threshold matter, the element of materiality." But other judges in the same judicial district, New York Southern, have declined to follow its lead. As example, a defendant in a later criminal case in the Southern District contended that "the *Nixon* analysis should not apply to subpoenas issued by the defense [and served] on third parties." *United States v. Barnes*, No. S9 04 CR 186(SCR), 2008 WL 9359654, at *3 (S.D.N.Y. Apr. 2, 2008). But *Barnes* rejected this argument, holding that "[t]hough the *Tucker* Court found this relaxed standard appropriate, it is not the prevailing law." *Id.; see also United States v. Ferguson*, No. 06CR137, 2007 WL 2815068, at *3 (D. Conn. Sept. 26, 2007) ("All district courts within [the Second] Circuit . . . have applied *Nixon* to assess the validity of 17(c) subpoenas issued to third parties.").

While the Tenth Circuit doesn't seem to have addressed *Tucker*'s relaxed standard, the court, on the facts presented here, needn't predict how our Circuit would react to it. That's so because even if one evaluates the government's subpoena to IBB under *Tucker*'s relaxed

8

standard, it doesn't pass muster. It's hard to imagine that all of Ms. Stapp's emails during 14-plus years are material to the issues in this case. Finding that the government's subpoena in this case doesn't comply with *Nixon* or even the relaxed approach applied in *Tucker*, the court quashes the government's demand for the entirety of Ms. Stapp's email account.

Nothing in Ms. Stapp's two filings support a different outcome. Her initial filing—Doc. 120—argued merely that "[s]he is entitled to review [her] emails" because she may become a witness and may testify at the trial. *Id.* at 1. Ms. Stapp's supplemental filing provides similar conclusions, contending that it's "unreasonable not to afford her the opportunity to review her emails" as she prepares for trial testimony and her sentencing. Doc. 133 at 3. While these broad statements have a certain intuitive appeal, they're hardly sufficient to displace binding Supreme Court and Circuit precedent.

This ruling leaves one last issue to decide. Namely, should the court quash the subpoena's request asking IBB to produce all privileged material in the nine email accounts? At first glance, one might think that the court can't decide this question without first deciding the government's abrogation of privilege motion, Doc. 107. But closer scrutiny leads to a different conclusion.

Start with the subpoena's request for all privileged material contained in Ms. Stapp's email account. The court already has ruled that the government's request for 14-plus years' worth of emails in this account is insufficiently specific to survive the *Nixon* analysis. The government's request for a privileged subset of those emails is no different. It doesn't comply with *Nixon*, which "mandates that the party requesting the information identify the item sought and what the item contains, among other things." *Morris*, 287 F.3d at 991. And even if it did, the government hasn't demonstrated compliance with *Nixon*'s other requirements. That is, it

hasn't shown that the privileged emails in Ms. Stapp's account are "relevant [and] admissible[.]" *Gonzalez-Acosta*, 989 F.2d at 389.[2] The court thus quashes the subpoena's request for all privileged emails in Ms. Stapp's email account. But it does so without foreclosing a return to the issue if future developments so warrant.

The same reasoning goes for the subpoena's demand for all privileged material in the other eight email accounts. Recall the state of play about this part of the government's subpoena. The subpoena demands that IBB produce all emails in eight identified email accounts. On its own, IBB has elected to provide the lion's share of that data. But IBB has drawn the line at producing privileged emails contained in these eight accounts. So, the subpoena's demand for all the privileged material in the eight specified accounts is what's at issue. The request for these privileged communications is no different than the one for all privileged material in Ms. Stapp's email account. It's just a larger version of the request. Applying the same reasoning, this part of the government's subpoena isn't specific; and even if it were, the government hasn't shown how the targets of the subpoena are relevant or admissible. So, the court quashes this last aspect of the subpoena as well.[3]

---

[2] Imagine that Ms. Stapp's account includes a trove of emails from IBB's outside counsel providing legal advice on employment law issues—something that's reasonable to envision given her HR role. If the pertinent employees aren't one of the defendants here, how could these privileged emails prove relevant or admissible in *this* case?

[3] The court notes that the government did not seek leave to serve the subpoena at issue. Leading commentators view seeking leave "an orderly and desirable procedure, and one frequently followed[.]" 2 *Wright & Miller's Federal Practice and Procedure* § 275 (4th ed. updated May 2025) (citing *United States v. Beckford*, 964 F. Supp. 1010, 1023 (E.D. Va. 1997)). This approach also complies with the spirit of this court's view that district courts have "an interest in preserving the proper procedure prescribed by the Rules of Criminal Procedure, irrespective of the desires of the parties." *Wittig*, 250 F.R.D. at 551 (internal quotation marks & citation omitted). But exercising its discretion, the court elects to bypass the question whether the government skipped a procedural requisite by issuing the subpoena without securing court leave. Deciding this motion on a purely procedural basis merely would delay the court's effort to conclude the subpoena dispute.

*Conclusion*

The court thus grants the IBB's Motion to Modify Subpoena or In the Alternative to Quash (Doc. 111). For reasons explained by this Order, the court quashes the subpoena's demand for email communications (and associated data) in Kathy Stapp's email account. Also, the court quashes the subpoena's demand for all privileged communications in nine designated email accounts. Finally, the court takes no position on the IBB's agreement to provide the United States with unprivileged emails in the eight accounts covered by this apparent agreement.

**THEREFORE, IT IS HEREBY ORDERED** that—to the extent that the government and the IBB have not resolved the disputes presented by the government's subpoena—the Motion to Modify Subpoena or In the Alternative to Quash filed by the International Brotherhood of Boilermakers (Doc. 111) is granted.

**IT IS SO ORDERED.**

**Dated this 29th day of July, 2025, at Kansas City, Kansas.**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**