UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| NEWTON JONES (01), ) | Case No. 2:24-cr-20070-DDC |
| WILLIAM CREEDEN (02), ) | |
| KATERYNA (KATE) JONES (03), ) | |
| WARREN FAIRLEY (04), ) | |
| LAWERANCE McMANAMON (05), ) | |
| And CULLEN JONES, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
COUNT ONE OR IN THE ALTERNATIVE FOR A BILL OF PARTICULARS**

Defendants Newton Jones, William Creeden, Kateryna Jones, Warren Fairley, Lawrence McManamon, and Cullen Jones ("Defendants") reply as follows in support of their Motion to Dismiss Count One or in the Alternative for a Bill of Particulars ("Motion") (Doc. 143).

**I.    The Government Misstates the Motion to Dismiss Standard.**

The Government's brief provides only half the governing standard. According to the Government, an indictment "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." (Doc. 144 at 4 (quoting *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992).) If that were the whole truth, it would have been unnecessary for the Government to attempt charging the Defendants through a 65-page speaking Indictment. The *Stavroulakis* case goes on, *in the next sentence*, to provide the full standard that governs here: "We note the

Supreme Court's caveat that when the definition of an offense includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species[]—it must descend to particulars." *Stavroulakis*, 952 F.2d at 693 (cleaned up).

The RICO statute undeniably defines the charged offense in "generic terms." *See, e.g.*, *United States v. Winter*, 663 F.2d 1120, 1135 (1st Cir. 1981) (requiring particularity for a § 1962(d) RICO conspiracy charge), *abrogated on other grounds by Salinas v. United States*, 522 U.S. 52 (1997); *United States v. Labate*, S100CR.632 (WHP), 2001 WL 533714, at *4 (S.D.N.Y. May 18, 2001) (same for a § 1962(c) RICO charge). None of the cases cited by the Government on this point address the RICO statute at all, let alone suggest that the charge can be pled by rote recitation of the statutory language. (Doc. 144 at 4-5 (citing *Stavroulakis*, 952 F.2d at 693; *United States v. Greenspan*, 986 F.2d 1430 (10th Cir. 1993); *United States v. Tramunti*, 513 F.2d 1087 (2d Cir. 1975); *Costello v. United States*, 350 U.S. 359 (1956).) Count I unquestionably must be pled with the constitutionally mandated particularity discussed in *Stavroulakis*. It was not.

## II. Count I Fails to Allege an Enterprise Sufficient to Satisfy the RICO Statute.

### A. The IBB Is Not the Charged "Enterprise."

The Government's primary argument is that "a RICO enterprise is defined to include 'any union' and RICO charges where defendants use the machinery of labor unions is well-established." (Doc. 144 at 1.) But the "enterprise" charged here is not a union. It is a fabricated non-entity that the Government calls the "Jones Enterprise," and which the

Indictment specifically distinguishes from "the Boilermakers Union." (Doc. 1 at 1 ¶ 1, 11 ¶ 2.)

The Government confusingly concedes this point later in its brief and contradicts its own argument by claiming the Jones Enterprise is the relevant "enterprise" pled under Count 1, not the IBB. (Doc. 144 at 2, 7.) A jury cannot be asked to determine whether an *unpled* enterprise supports the Government's case. *See* Tenth Circuit Pattern Criminal Jury Instructions No. 2.76.1 (directing the jury to acquit under § 1962(c) unless "an enterprise existed *as alleged in the indictment*") (emphasis added); *United States v. Harris*, 695 F.3d 1125, 1131 (10th Cir. 2012) (holding that, under § 1962(d), the jury must find "a conspiracy or agreement, *as detailed in the indictment*") (emphasis added). Whether the IBB *would* qualify as a RICO enterprise is irrelevant to whether the Government has *actually* pled a conspiracy to form the enterprise identified in the indictment—which it has not done for the reasons stated above.

It is also irrelevant that, in other cases, the Government previously pled that "a cohesive group of individuals use[d] the machinery of a labor organization to affect [sic] their criminal objectives." (Doc. 144 at 7.) None of the cases cited by the Government suggest this is enough to plead a conspiracy to form a RICO enterprise. *United States v. Dougherty*, 706 F. App'x 736, 743 (3d Cir. 2017) (addressing only a sentencing enhancement, not what makes up an "enterprise" or even whether the charge was properly pled); *United States v. Cahill*, 20 CR 521 (CM), 2022 WL 10394481, at *1 (S.D.N.Y. Oct. 18, 2022) (no discussion of whether the Government properly pled a conspiracy to form an "enterprise"); *United States v. Larson*, 807 F. Supp. 2d 142, 148 (W.D.N.Y. 2011), *aff'd*

*sub nom. United States v. Kirsch*, 903 F.3d 213 (2d Cir. 2018) (same); *United States v. Boyd*, 309 F. Supp. 2d 908, 916 (S.D. Tex. 2004) (same; addressing only whether the RICO predicates were sufficiently pled, not the RICO charges themselves); *United States v. Local 560 of Int'l Broth. of Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 780 F.2d 267, 290-94 (3d Cir. 1985) (affirming a civil RICO judgment following trial on the ground that a sub-group of the Genovese crime family that was tasked specifically with handling labor activities had enough structure to be an "enterprise").

All elements of § 1962(d) must be pled, including "that the defendant *knowingly* joined in a conspiracy the objective of which was to operate *that enterprise* through an identified pattern of racketeering activity." *United States v. Randall*, 661 F.3d 1291, 1297 (10th Cir. 2011) (citation omitted) (emphasis added); *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 77–78 (1994) ("And as a matter of grammar it is difficult to conclude that the word 'knowingly' modifies one of the elements [of a crime]. . . but not the other."). As discussed below, the Government has not pled with any degree of particularity that the Defendants knowingly joined in a conspiracy to operate the *charged* "Jones Enterprise." The fact that the Defendants knowingly joined the *IBB* is not enough.

**B.     The Indictment Does Not Sufficiently Plead the "Jones Enterprise" as an Association-In-Fact Enterprise**

The Government also (or in tandem) argues that the Indictment sufficiently alleges an association-in-fact via the Jones Enterprise. This theory is also flawed, as the Indictment contains no allegations supporting the Government's position that the Jones Enterprise existed separately from Defendants or the alleged racketeering activity. Instead, the

Indictment attempts to charge all Defendants with RICO conspiracy based solely on allegations that Defendants performed various acts in the course of, and limited to, their official roles within a legitimate union, the IBB. Even taking the Government's allegations as true, this does not satisfy the RICO requirements.

### i. No distinctness from persons.

The Government argues Defendants' motion "attempts to extend [*Cedric Kushner*] far beyond its specific and limited applicability," but in reality, Defendants cited *Cedric Kushner* for its straightforward recitation of the governing legal standard: that the Government "must allege and prove the existence of two distinct entities: (1) a 'person' and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 158 (2001); *see also* Doc. 143 at 10-11. This standard is not controversial or in dispute. Ironically, it is the Government that attempts to expand *Cedric Kushner* beyond any reasonable interpretation of its holding by claiming (incorrectly) that, "[i]n accordance with *Cedric Kushner*, the requisite distinctness between the defendant-person and the enterprise is lacking only when there is <u>completely unified identity</u> between a particular defendant and the enterprise." (Doc. 144 at 9) (emphasis added). This "completely unified identify" standard is not found in *Cedric Kushner*, is not supported by citation, and does not appear in any federal case interpreting the RICO statute. It seemingly does not exist beyond the Government's own pontification of what it believes *should* be the standard.

The Government goes on to say that a "typical RICO association-in-fact enterprise [] is permissibly pleaded as a group of individuals engaged in an ongoing pursuit of

KC 24997796.1

racketeering offenses." (Doc. 144 at 10) (citing *United States v. Fairchild*, 189 F. 3d 769, 777 (8th Cir. 1999). This is not in dispute, but again, is only one part of the equation. As clearly set forth in *Cedric Kushner,* the Government must *also* plead and prove that the alleged enterprise exists separately from the individuals themselves. *Cedric Kushner Promotions,* 533 U.S. at 158. It is this separateness that the Government failed to allege here.

Nor can it. Instead, the Indictment affirmatively pleads various facts showing that not only is there no enterprise distinct from Defendants or the IBB, but there *can't* be any enterprise distinct from Defendants or the IBB. The charged conduct involves protected union activity such as compensation and hiring decisions, travel, and event planning–all conduct that was done in the course of, and limited to, Defendants' official roles with the IBB. (Doc. 1 at 19-20, ¶¶ 26-27; *id*. at 21, ¶30; *id*. at 21-22, ¶ 31-34). Thus, the "Jones Enterprise" does not exist separate and distinct from Defendants or their employment with the IBB, and the requisite distinctness cannot be proven as a matter of law.

Because the Indictment does not allege a distinct association-in-fact enterprise that exists separate from Defendants and their employment, the Government's authorities are distinguishable because those cases dealt with distinct, identifiable enterprises separate from the defendants or a legitimate organization like the IBB. *See, e.g., United States v. Turkette*, 452 U.S. 576, 579 (1981) (involving association-in-fact enterprise that existed independently from defendants' employment); *United States v. Richardson*, 167 F.3d 621, 623 (D.C. Cir. 1999) (same); *United States v. Stefan*, 784 F.2d 1093, 1096 (11th Cir. 1986) (same); *United States v. Elliott*, 571 F.2d 880, 884 (5th Cir. 1978) (same).

Finally, the Government attempts to discount *Board of Commissioners* by claiming it is wholly inapplicable because it was decided post-trial and not at the pleading stage. *See Bd. of Cnty. Comm'srs of San Juan Cnty. v. Liberty Group*, 965 F.2d 879, 886 (10th Cir. 1992) ("officers and employees of an organization cannot, in the ordinary course of their duties, constitute an association in fact separate from the organization itself."). But regardless of procedural posture, the court's (binding) holding clearly sets forth the applicable *substantive* RICO standard: an association-in-fact does not exist where the only alleged criminal activity involves officers and employees acting in the ordinary course of their duties. At this stage, then, the Government must plead facts showing Defendants engaged in acts outside of the ordinary course of their duties with the IBB. It did not, and under *Board of Commissioners*' clear standard, the Indictment does not allege a sufficient association-in-fact as required under RICO.

        **ii.**        **No distinctness from the racketeering activity.**

For largely the same reasons, the Government also fails to allege an enterprise that is distinct from the alleged racketeering activity. The Government claims in its brief that "Count One sets forth that Defendants held various offices and employment in the Boilermakers Union and with the Bank of Labor, ***in addition*** to their roles in the Jones Enterprise." (Doc. 144 at 12) (emphasis added). It plainly does not. The Indictment alleges that the Defendants performed the relevant activity vis-à-vis their employment with the IBB, not separate or independent of that employment but wholly within the course and scope of their employment. *See*, *e.g.*, Doc 1 at 12, ¶ 5 (defining Defendant Creeden's role in the alleged conspiracy as "direct[ing] and supervis[ing] the activities of the Jones

Enterprise *as* Secretary-Treasurer of the Boilermakers Union and Senior Executive Vice-President of the Bank of Labor"); *see also* Doc. 1 at 12, ¶ 4 (defining Defendant Newton Jones' role in the enterprise as "direct[ing] and supervis[ing] the activities of the Jones Enterprise *as* International President of the Boilermakers Union and Chairman of the Board of the Bank of Labor."). Although the Government now claims that Defendants' role in the "Jones Enterprise" was *in addition* to their role at the IBB, those allegations are notably missing from the Indictment.

Further, although the Government's brief generally claims (without specific citation) that the Indictment alleges "numerous activities constituting failure of oversight, breaches of fiduciary duty, wasting of funds, selective enforcement, adoption of conflicts of interest, and politic trickery," *see* Doc. 144 at 12-13, no such *specific* allegations appear in the Indictment that would support activity separate from Defendants' legitimate employment. Instead, as more fully outlined in Defendants' motion (Doc. 143 at 10-14), the Indictment merely alleges that Defendants performed various acts in the ordinary course of their employment with the IBB. That is not enough, and the Indictment fails to allege facts showing separateness between Defendants and the alleged racketeering activity, as irrefutably required under RICO. This failure is deadly to Count I.

Finally, the Government seemingly implies that Defendant Newton Jones and William Creeden's employment with the Bank of Labor somehow establishes, on its own, that the Jones Enterprise exists separately from the IBB. This is another flawed theory, as the only relevant allegations regarding Defendants Newton Jones and William Creeden's employment with the Bank of Labor *also* involve actions done in the ordinary course of

their employment. (Doc. 1 at 25 ¶ 41) (alleging it was "part of the conspiracy" that Defendants Newton Jones and William Creeden would obtain employment with the Bank of Labor and receive salaries and benefits offered to officers and employees of the Bank of Labor). These allegations, on their own, cannot and do not break the clear unity between the IBB and Defendants. Nor can they be attributed to *all* Defendants, without any allegation that each Defendant agreed to, or even was aware of, any action involving the Bank of Labor.

Even taking the Indictment's pleaded facts as true, Count I does not and cannot establish a legally sufficient RICO enterprise. As pled, the Defendants did nothing more (and nothing less) than perform their assigned duties and functions as IBB officers and employees, and categorically re-characterizing those actions as improper or illegal does not establish a separate and distinct association-in-fact under RICO. Count I is therefore fundamentally flawed and must be dismissed.

## III.   Count I Fails to Allege an Agreement Sufficient to Satisfy the RICO Statute.

Even if the Government had pled an enterprise, it has not pled that anyone agreed to join it. The existence of an enterprise is not enough to satisfy § 1962(d) of the RICO statute. The Government must plead all elements of a RICO conspiracy, which include at least[1] the following:

> *First*: A conspiracy or agreement, as detailed in the indictment, existed between two or more persons to participate in the affairs of an

---

[1] Defendants do not concede that the verdict director in *Harris* was full and complete. They reserve the right to propose appropriate instructions should the case be submitted to the jury.

enterprise that affected interstate commerce through a pattern of racketeering activity;

*Second*: that defendant *deliberately* joined or became a member of the conspiracy or agreement with knowledge of its purpose[;] and[ ]

*Third*: the defendant agreed that someone, not necessarily the defendant, would commit at least two of the racketeering acts detailed in the indictment.

*Harris*, 695 F.3d at 1131 (emphases added).

Here, there is no agreement "detailed in the [I]ndictment" at all. *Id.* Aside from rote recitation of the elements of the offense, there is no allegation in the Indictment that any of the Defendants even knew a "Jones Enterprise" *existed*, let alone that they deliberately joined in it or that it was sufficiently detailed to require someone to commit two of the pled predicate acts. The entirety of the Government's allegations about an "agreement" are in ¶¶ 12-15 of the Indictment:

### E.  The Racketeering Conspiracy

12. From at least on or about January 2009 and continuing to on or about August 2024, . . . Defendants . . . together with others . . . employed by and associated with the Jones Enterprise . . . did knowingly intentionally and unlawfully combine, conspire, confederate, and agree together and with each other, to violate Section 1962(c) of Title 18, United States Code, that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Jones Enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5).

13. The pattern of racketeering activity through which the Defendants agreed to conduct the affairs of the enterprise consisted of multiple acts indictable under Title 29, United States Code, Section 501(c) (relating to embezzlement from union funds); Title 18, United States Code, Section 1343 (relating to wire fraud); and Title 18, United States Code, Section 664 (relating to embezzlement from pension and welfare funds).

>   14. It was a part of the conspiracy that each Defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the Jones Enterprise.
>
>   ### F.  Manner and Means of the Racketeering Conspiracy
>
>   15. Among the manner and means by which the Defendants and other conspirators agreed to conduct and participate in the conduct of the affairs of the Jones Enterprise included, among others, the following: . . . .

(Doc. 1 at 15-16 ¶¶ 12-15.)

These conclusory allegations say nothing.  There is no allegation, for example, of any written or oral or tacit agreement to form the "Jones Enterprise;" no allegation about what its terms provided; no allegation of what the agreement's purpose was; no allegation about who would be conducting which two predicate racketeering acts; no allegation about who agreed to which terms of the alleged agreement; no allegation about the rights or duties of any of the Defendants under the agreement; no allegation of a specific date or even an estimated date of when each Defendant entered into the agreement; no allegation about where or how the agreement was executed; no allegation about how, when, or where the terms were to be carried out; no allegation about what would happen if the terms weren't followed; and generally no indication whatsoever that *anyone* knew a "Jones Enterprise" even existed at the time of the alleged offense.

Indeed, by *renaming the enterprise*, the Indictment itself belies the Government's claim that the agreement is anything more than a figment of its imagination, far from a longstanding entity that the Defendants allegedly knew about and agreed to join sometime within the past 15 years.  (Doc. 1 at 11 ¶ 2 ("This is the same enterprise referred to as the 'Boilermakers Enterprise' in the Information charging Coconspirator One."),)

The Indictment contains only the same type of barebones allegations the Court rejected in *United States v. Battle*, 04-20159-CR, 2004 WL 7331629, at *3 (S.D. Fla. Nov. 16, 2004). In that case, like here, the indictment described the charged pattern of racketeering activity in a list of generic offenses paired with the corresponding criminal statutes. *Id.* at *2. This skeletal pleading failed to advise the defendants which of them the government claimed were involved in the various allegedly unlawful acts. *Id.* The indictment's slew of general allegations under the banner "Manner and Means of the Conspiracy" was no consolation. *Id.* The court ruled this was inadequate pleading and ordered the Government to file a bill of particulars for each defendant, specifying the factual basis by which each defendant *specifically intended* to participate in the affairs of the enterprise, when they entered into the agreement, who specifically agreed to complete the predicate acts, how the others knew they would do so, and other specifics about the predicate acts. *Id.* at *4-5; *see also United States v. Blair*, 54 F.3d 639, 642 (10th Cir. 1995) ("There can be no doubt . . . that conspiracy is a specific intent crime."); *United States v. Ruan*, 56 F.4th 1291, 1301 (11th Cir. 2023) (affirming specific-intent instruction in RICO conspiracy prosecution); Eleventh Circuit Pattern Jury Instructions § O75.2 (requiring specific intent be proved for RICO conspiracy charge).

The Government did the same thing here as in *Battle*, only even more vaguely. As discussed above, there are no specifics in the Indictment whatsoever about the alleged "agreement." And just as in *Battle*, the Indictment pleads the predicate acts only in conclusory terms, referring vaguely to generic violations of the wire fraud and embezzlement statutes. (Doc. 1 at 15 ¶ 13.) It then proceeds to describe the "manner and

means" of the conspiracy in serial fashion, leaving out details concerning when, where, and how the alleged acts occurred, and providing only hints and clues as to which Defendants were involved in which acts. For example, the Indictment is riddled with vague statements about "members and associates of the Jones Enterprise and other conspirators" and unspecific references to meetings "in expensive locations" "including Paris," with no date ranges or other limiting factors that could cabin the 15-year span of the Indictment to a finite set of allegations. (Doc. 1 at 19 ¶ 26.) Rather than give proper notice, the Indictment obfuscates the particulars of what the Government claims was an unlawful agreement—which can only result in trial by surprise.

*Battle* is different from this case only in one critical way: no bill of particulars can rectify the flaw in the Indictment here. The defendants in that case agreed to be part of a known organization with its *own* name (the "Cuban Mafia" or the "Corporation"), structure, hierarchy, and chain of command (e.g., an apex figure with a vice chairman, advisors, lieutenants, and other leaders, members, and associates with specified roles). There was no question the participants in that organization formed an agreement to abide by its rules. Here, the Government has failed entirely to plead any facts that would suggest an agreement with any type of specificity that even exists, let alone that the Defendants deliberately joined in or knew about it.

## IV.     DEFENDANTS' ALTERNATIVE REQUEST FOR A BILL OF PARTICULARS IS PROPER.

As an initial matter, Defendants' request for a bill of particulars is timely because it was filed within the deadline prescribed by this Court for all pre-trial motions. *See* Fed. R.

KC 24997796.1

Crim. P. 7(f) (allowing motion for bill of particulars within 14 days "or at a later time if the court permits"); *see also* Doc. 101 at 2 (setting deadline of December 1, 2025, for all pre-trial motions). Because the Court set December 1, 2025, as the deadline for all pre-trial motions, which would include the motion for bill of particulars, Defendants' request on September 17, 2024, was timely. *See, e.g.*, *United States v. Pahlawan*, 761 F. Supp. 3d 872, 900 (E.D. Va. 2025) ("the Court rejects the Government's argument that Defendant[s] request for a bill of particulars qualifies as untimely, because the Motion was filed more than fourteen days after Defendant was arraigned on the Superseding Indictment…The Court deems the Motion timely, because it was filed within the time period set by this Court for the filing of pretrial motions.").

Not only is this relief timely, but it is also necessary. Although the Government's brief claims that Count I "include[s] specific allegations with dates, places, legal and constitutional citations, and other details," Doc. 144 at 15, for all the reasons outlined above and in Defendants' opening motion (Doc. 143), the Indictment fails to apprise Defendants of the Government's position regarding Count I. Even after responsive briefing, it remains unclear who and what the Government believes is the enterprise and how each Defendant agreed to and participated in that enterprise on an individual level. As is, Defendants cannot properly prepare a defense to such vague claims and theories, and a bill of particulars is necessary.

## CONCLUSION

For the foregoing reasons and those stated in Defendants' motion, the Court should either dismiss Count I or order the Government to file a bill of particulars.

Respectfully submitted,

SPENCER FANE LLP

*/s/ Patrick A. M<sup>c</sup>Inerney*
Patrick A. M<sup>c</sup>Inerney         # 22561
Daniel M. Nelson KS Fed   # 79203
SPENCER FANE LLP
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106-2140
Tele: 816-474-8100
Fax: 816-474-3216
pmcinerney@spencerfane.com
dnelson@spencerfane.com
Attorneys for Newton Jones

/s/ Kurt Kerns
Kurt P. Kerns # 15028
KERNS LAW GROUP
328 N. Main Street Wichita, KS 67202
Tele: 316-265-5511
kurtpkerns@aol.com

Federico Andino Reynal, pro hac vice
THE REYNAL LAW FIRM, PC
917 Franklin Street, Sixth Floor
Houston, TX 77002
Tele: 713-228-5900
areynal@frlaw.us
Attorneys for William Creeden

/s/ Mark Molner
Mark D. Molner # 24493
EVANS & MULLINIX, P.A.
7225 Renner Road, Suite 200
Shawnee, KS 66217
Tele: 913-962-8700
Fax: 913-962-8701
mmolner@emlawkc.com

15

John T. Davis, pro hac vice
KESSLERWILLIAMS LLC
1401 S. Brentwood Blvd., Suite 950
St. Louis, MO 63144
Tele: 314-455-5555
Fax: 314-727-2869
john.davis@kesslerwilliams.com
Attorneys for Kateryna Jones

/s/ J.R. Hobbs
James R. Hobbs KS Fed # 70169
Marilyn Keller # 15444
WYRSCH HOBBS & MIRAKIAN, P.C.
One Kansas City Place
1200 Main St., Suite 2110
Kansas City, Missouri 64105
Tele: 816-221-0080
Fax: 816-221-3280
jrhobbs@whmlaw.net
mbkeller@whmlaw.net
Attorneys for Warren Fairley

/s/ Branden Smith
Branden Smith # 22761
SMITH LEGAL, L.L.C.
719 Massachusetts Street, Suite 126
P.O. Box 1034
Lawrence, Kansas 66044
Tele: 785-856-0780
Fax:  785-856-0782
branden@smithlegalllc.com

Kevin M. Spellacy, pro hac vice
James Wooley, pro hac vice
Erin E. Hanson, pro hac vice
323 W. Lakeside Ave., Suite 200
Cleveland, OH 44113
Tele: 216-344-9220
Fax: 216-664-6999
kspellacy@spellacylaw.com
jwooley@spellacylaw.com
ehanson@mghslaw.com
Attorneys for Lawrence McManamon

/s/ Kathleen Fisher Enyeart
Jackson Hobbs # 28191
Kathleen Fisher Enyeart # 25203
Brody Sabor KS Fed # 79098
LATHROP GPM
2345 Grand Blvd., Suite 2200
Kansas City, Missouri 64108
Tele: 816-292-2000
Fax: 816-292-2001
jackson.hobbs@lathropgpm.com
kathleen.fisherenyeart@lathropgpm.com
brody.sabor@lathropgpm.com
Attorneys for Cullen Jones

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document was served via the Court's CM/ECF system to all counsel of record on the day of its filing.

/s/ *Patrick A. M<sup>c</sup>Inerney*
Attorney for Newton Jones