UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>NEWTON JONES,<br>WILLIAM CREEDEN,<br>KATERYNA (KATE) JONES,<br>WARREN FAIRLEY,<br>LAWRENCE McMANAMON, and<br>CULLEN JONES<br><br>　　　　　　　　Defendants. | Case No. 2:24-cr-20070-DDC-TJJ |

### UNITED STATES' EXPERT WITNESS NOTICE AND MOTION TO ADMIT OPINION TESTIMONY PURSUANT TO FEDERAL RULE OF EVIDENCE 702

The United States of America, by and through its undersigned counsel, hereby notifies Defendants, of its intent to elicit testimony from Lead Investigator Lauren K. Stojak as a summary witness trained in recordkeeping and reporting of labor unions. The United States also hereby moves the Court to permit Lead Investigator Stojak to offer opinion testimony pursuant to Federal Rules of Evidence 702, 703, or 705. Should her testimony be deemed admissible under those rules, the United States hereby gives notice of her testimony pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) as a pre-caution.

The United States reserves the right to supplement this notice with additional testimony by this witness, in accordance with Rule 16(a)(1)(G)(vi), considering its ongoing trial preparations and based on any timely disclosures provided by the defense about any testimony that Defendants intends to introduce at trial under Rules 702, 703, and/or 705 of the Federal Rules of Evidence during their respective cases-in-chief.

**Statement of Facts**

**A. LM-2 Reports**

Each labor union subject to the Labor Management Reporting and Disclosure Act (LMRDA) (29 U.S.C. § 401, et seq.) is required to file a Form LM-2 with the United States Department of Labor each year. The annual LM-2 report functions as a comprehensive financial snapshot of the filing labor organization including its membership, dues structure, assets, liabilities, officer and employee salaries, and expenditures of all kinds including its payments to outside vendors. See 29 U.S.C. § 431. The LM-2 reports and the information provided within are published by the Department of Labor for the benefit of the filing union's membership and the general public. Each LM-2 report must be signed by the President and Secretary-Treasurer of the filing union and the LMRDA carries criminal penalties for those officials for failing to file an LM-2 report, filing false information within an LM-2 report, or filing an LM-2 report with material omissions. See 29 U.S.C. §§ 431, 439; United States v. Bath, 504 F.2d 456 (10th Cir. 1974).

From 2005 until September 2022, Defendant Newton Jones as President and Defendant William Creeden as Secretary-Treasurer filed LM-2 reports on behalf of the Boilermakers Union. Those LM-2 reports contained information supplied by Defendant Jones and Defendant Creeden regarding the reimbursed expenses of all Boilermakers Union officers, as well as the various expenditures of funds made by the Boilermakers Union to various vendors.

**B. Curriculum Vitae of Lauran K. Stojak**

Lead Investigator Lauren K. Stojak has been employed by the United States Department of Labor, Office of Labor-Management Standards (OLMS) as an Investigator for more than twenty years. Investigators for OLMS perform routine audits of local and regional labor unions, known as Compliance Audit Program (CAPs). In addition, OLMS periodically performs comprehensive audits

of the international headquarters of labor organizations (I-CAPs) in order to determine whether any civil or criminal violations have been committed.

Since August 2020, Lead Investigator Stojak has served as the sole Lead Investigator within the entire Department of Labor who performs I-CAPs. When the Department of Labor selects an international union to undergo an I-CAP, Lead Investigator Stojak conducts that audit. In her tenure at OLMS, Lead Investigator Stojak has conducted eleven (11) I-CAPs of international unions and more than eighty (80) CAP audits of local or regional labor organizations. In addition, Lead Investigator Stojak has designed and delivered the Department of Labor's training courses in conducting labor union auditing and revamped the Department's I-CAP program for which she received the Exceptional Achievement Award from the Secretary of Labor. See Attached **Exhibit A**, Report of Lead Investigator Lauren K. Stojak (Exhibit 1- Curriculum Vitae).[1]

C. **I-CAP of the Boilermakers Union**

Lead Investigator Stojak conducted the I-CAP of the International Brotherhood of Boilermakers (the "Boilermakers Union") which uncovered unusual levels of reimbursed expenses among the leadership of the Boilermakers Union. For example, the years from 2016-2018, Defendants Newton Jones, Warren Fairley, Lawrence McManamon, and William Creeden were all among the top seven (7) recipients of salary and reimbursed expenses among **all** union officials in the United States and Canada. Ms. Stojak will testify that excessive reimbursed expenses are a frequent indicator of embezzlement—particularly where all four individuals are officials in the same union subject to the same leadership. At the close of the I-CAP Lead investigator Stojak recommended that a criminal investigation be initiated by the Department of Labor. Accordingly,

---

[1] In satisfaction of FRCrP Rule 16 (a)(1)(G)(iii), the Government reports that Lead Investigator Stojak has not authored any publications in the last ten (10) years and has not testified as an expert in the last four (4) years.

the Government initially intends to present the testimony of Lead Investigator Stojak as a fact witness in this matter.

D.  **Comprehensive Survey of Union Expenditures on International Travel**

Following referral of the matter for grand jury investigation that ultimately led to the Indictment, Lead Investigator Stojak conducted a comprehensive survey comparing the expenditures for international travel and other reimbursed expenses reported in the Boilermakers Union LM-2 reports by Defendants Newton Jones and William Creeden with those filed by other international unions for the years 2009 through 2024. The purpose of the survey was to determine whether expenditures for international travel by the Boilermakers Union authorized by Defendants Newton Jones and William Creeden were proportionate with other similar unions in general, and specifically within the construction and metal trades sectors.

Among Ms. Stojak's findings were that the Boilermakers Union under Defendants Newton Jones and William Creeden spent more than twice as much international travel as the next highest union and nearly **eighteen (18)** times as much per member as the next highest union.  Several international unions with more than **twenty (20)** times more members than the Boilermakers Union reported no international travel whatsoever.  See Attached Report of Lead Investigator Lauren K. Stojak with exhibits.

Ms. Stojak will also testify that, as stark as those figures are, her examination revealed that the Boilermakers Union systematically underreported funds spent on international travel.  For example, for the year 2019, the Boilermakers Union under Defendants Newton Jones and William Creeden failed to properly report at least $100,000 spent on hotel stays in Italy and Poland in the Boilermakers Union's LM-2 reports.  Attached Report of Lead Investigator Lauren K. Stojak, p 3.

Finally, Lead Investigator Stojak will testify that the amount of international travel reported by Defendants Newton Jones and William Creeden indicates disproportionate expenditures over several years on international travel, and represents a prominent indicator of embezzlement of those funds. Attached Report of Lead Investigator Lauren K. Stojak, p. 9. Accordingly, in light her unique knowledge, skill, experience, and training, the Government intends to present that portion of Lead Investigator Stojak's testimony in the form of an opinion pursuant to the Federal Rule of Evidence, Rule 702.[2]

## Applicable Principles

**A. Expertise Testimony Under Rule 702**

American jurisprudence on evidence rests upon a foundation of liberal admissibility and the conviction that the jury should be presented with any and all reliable evidence that will assist it in its deliberation. See Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 587 (1993) ("Daubert"). Rule 702 of the Federal Rules of Evidence ("Rule 702"), which governs the introduction of expert testimony, was drafted in accordance with the "'liberal thrust' of the Federal Rules and their 'general approach of relaxing the traditional barriers to opinion testimony.'" Id. (citing Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 169 (1988)). See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. at 585-88 (holding that prior restrictive "general acceptance" standard incompatible with liberal precepts of Rule 702).[3]

---

[2] A CD containing all the LM-2 reports used by Lead Investigator Stojak will be provided to Defendants.

[3] Rule 702, as amended, provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In <u>Kumho Tire Company v. Carmichael</u>, 526 U.S. 137, 141, 149-51 (1999) ("<u>Kumho Tire</u>"), the Supreme Court instructed that <u>Daubert</u> not only applies to strictly scientific disciplines, but to expertise based upon skill, experience, or observation as well. The Court in <u>Kumho Tire</u> instructed that the trial judge may consider one or more of the <u>Daubert</u> factors in assessing whether to admit opinion testimony. The Court emphasized, however, that the <u>Daubert</u> factors do not comprise a mandatory checklist of requirements. Since the range of non-scientific expertise admissible under Rule 702 is so varied, none of the <u>Daubert</u> factors should necessarily be included or excluded in any assessment of reliability. <u>Kumho Tire</u>, 526 U.S. at 150-52 (factors intended to be helpful, not definitive). <u>See</u> Fed. R. Evid. 702 advisory committee's note (noting five factors courts have found relevant in determining whether expert testimony is sufficiently reliable to be considered). <u>See , for example,</u> <u>Tyus v. Urban Search Management</u>, 102 F.3d 256 (7th Cir. 1996) (noting that the factors mentioned by the Court in <u>Daubert</u> do not neatly apply to expert testimony from sociologist).

The <u>Daubert</u> and <u>Kumho Tire</u> decisions direct the trial court to act as the "gatekeeper" of expert testimony to ensure that proffered expert testimony is sufficiently relevant and reliable. This court has wide latitude in making its reliability and relevance determinations. <u>See</u> <u>United States v. Nacchio</u>, 555 F.3d 1234, 1241 (10th Cir.2009) (en banc) (citing <u>Kumho Tire</u>, 526 U.S. at 152). The court's gatekeeper role, however, is not intended to serve as a replacement for the adversary system: the rejection of expert testimony should be the exception rather than the rule. <u>See</u> Fed. R. Evid. 702 advisory committee's note.

6

**Argument**

1. **Lead Investigator Stojak's Opinion Testimony Is Reliable**

The underlying data used in the survey conducted by Lead Investigator Stojak was drawn exclusively from the LM-2 reports filed by international unions, including those filed by Defendants Newton Jones and William Creeden. That information is public and accessible to anyone at all times. The methods used by Lead Investigator Stojak are mathematical and statistical analyses within the capability of those competent in those disciplines and replicable and/or subject to challenge under cross-examination or otherwise. Thus, her testimony is the product of reliable principles and methods.

Lead Investigator Stojak's testimony is based on sufficient data. It is true that all the information is self-reported and not the exact figures those unions spent on international travel. However, the great majority of financial data in all industries arises from self-reported sources. Moreover, the unions filing LM-2 reports were legally obligated to provide accurate information using the same forms within the same instructions under penalty of criminal law. The survey thus compares like to like. Moreover, the number of international unions surveyed over the course of several years (2009-2024) provides a sufficient universe to produce a rigorous and understandable conclusion.[4]

The modest portion of Ms. Stojak's proposed testimony that can be characterized as opinion properly arises from her knowledge of union recordkeeping and financial reporting, as well as her unique skill, experience, and training in reviewing and interpreting those reports as the

---

[4] To the extent that self-reported nature of the LM-2 data compromises the accuracy of the survey's conclusions, it appears to redound to Defendants' benefit. As Ms. Stojak will testify in non-opinion form, her examination revealed that the Boilermakers Union systematically underreported funds spent on international travel. Report of Lead Investigator Lauren K. Stojak, p. 7.

7

Government's sole lead auditor of international union's finances.  Compare United States v. Cantwell, 41 F. App'x 263, 269 (10th Cir. 2002) (permitting fraud examiner to testify regarding structure and characteristics of pyramid schemes); United States v. Turner, 400 F.3d 491, 499 (7th Cir. 2005) (opinion testimony of IRS agent certain transactions seemed to be structured to avoid agency reporting requirements).

    **2. Lead Investigator Stojak's Opinion Testimony Is Relevant**

Two factors in particular are relevant under the union embezzlement statute (29 U.S.C § 501(c)) in determining whether a particular expenditure of union funds constitutes theft: 1) whether the expenditure lacked authorization under the governing rules of the union; and 2) whether the official making the expenditure lacked a good faith belief in benefit to union.  Those factors are non-exhaustive and neither is absolutely determinative.  However, both lack of union authorization and/or benefit to the union are unquestionably relevant to Counts One through Forty-Eight charging violations of section 501(c).  See United States v. Gibson, 675 F.2d 825, 828 (6th Cir. 1982) (finding that conviction under union embezzlement statute may be obtained either through lack of authorization or lack of good faith belief in benefit to union).

Article 5.2 of the Boilermakers Constituion provides:

> The Executive Council shall have the power to supervise all business and financial affairs of the International union and to authorize **all expenditures deemed necessary to effectuate or accomplish the objectives of this International union**, as set forth in Article 1.2.

As noted above, the survey conducted by Lead Investigator Stojak showed that, on behalf of the Boilermakers Union, Defendants Newton Jones and William Creeden reported more than double the expenditures on international travel than the next highest union, despite being only the forty-ninth (49th) largest union in the United States.  Attached Report of Lead Investigator Lauren K. Stojak, pp. 7-8, Exhibit 3.  The results of that survey and Ms. Stojak's opinion testimony showing

the Boilermakers Union's highly disproportionate expenditures on international travel bears upon the constitutional standard within the Boilermakers Union permitting expenditures only where "necessary" to meet the union's objectives. That result also bears upon the more general consideration of whether Defendants Newton Jones and William Creeden truly believed international travel expenses at that astronomical level truly benefited the union's membership. Lead Investigator Stojak's testimony reflects a reliable application of the principles and methods to the facts of the case.

### 3. Weight of Evidence

Any dispute over admissibility of the proposed opinion testimony of Lead Investigator Stojak recalls the first rule of relevance that "a brick is not a wall." McCormick on Evidence, § 185 (1999). The Government does not contend that Lead Investigator Stojak's opinion testimony will foreclose the issue of whether Defendants' expenditures were "necessary for the protection of [the Boilermakers Union's] interests and the achievement of its objectives." Such a showing is not required under Rules 401 or 702. All that is required to admit Lead Investigator Stojak's opinion testimony is a showing that it makes the conclusion whether the amount of international travel undertaken by Defendants constitutes a "necessity" under the Boilermakers' Constitution or provided benefit to the Boilermakers Union either more or less certain at the margin. See Fed. R. Evid. 401 advisory committee's note ("Any more stringent requirement is unworkable and unrealistic."). Thus, her testimony will help the trier of fact to understand the evidence and to determine a fact in issue. Any arguments concerning admissibility of Lead Investigator Stojak's testimony are thus properly regarded as preemptive attacks on its weight, rather than cognizable grounds to exclude it as inadmissible.

As many courts have observed, challenges to the reliability of expert testimony are best presented through cross examination and the presentation of contrary evidence; the expert testimony itself should not be excluded. Thus, any objection to Lead Investigator Stojak's testimony, whether it be frivolous or devastating, can be adequately presented through the traditional means of advocacy. See Daubert, 509 U.S. at 596. See also United States v. Velasquez, 64 F.3d 844, 848 (3d Cir. 1995) ("The axiom is well recognized: the reliability of evidence goes 'more to the weight than to the admissibility of the evidence.'") (citing United States v. Jakobetz, 955 F.2d 786, 800 (2d Cir. 1992)).

Defendants may rely upon voir dire, cross-examination, the opportunity to present countervailing evidence, opening statements and closing arguments, and an appropriate instruction from the court to tackle any perceived shortcomings in Ms. Stojak's presentation. Indeed, the potential that expert testimony consists of personal impressions, based on faulty assumptions, and uncertain methods leaves it more, not less, susceptible to effective cross-examination. Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Finally, the Daubert Court added that a trial judge always maintains the authority to direct a judgment at the close of trial, in the event that the received body of evidence supporting a position is insufficient as a matter of law. As the Court observed, "[t]hese conventional devices, rather than wholesale exclusion . . . are the appropriate safeguards where the basis of scientific testimony meets the standards of Rule 702." Id. at 596-97 (citations omitted). See United States v. 14.38 Acres of Land, 80 F.3d 1074, 1078 (5th Cir. 1996) ("The [Daubert] case did not otherwise work a sea change

over federal evidence law. . . .  As the Court in Daubert makes clear, . . . the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.").

WHEREFORE, the United States respectfully urges that the Court permit the proposed opinion testimony of Lead Investigator Lauren K. Stojak under Rule 702 be granted.

Respectfully submitted,

RYAN A. KRIEGSHAUSER
UNITED STATES ATTORNEY

By: /s/Faiza H. Alhambra
FAIZA H. ALHAMBRA
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
913-551-6904
913-551-6541 (fax)
Faiza.Alhambra@usdoj.gov
Kan. S. Ct. No. 24525

By: /s/ Jabari B. Wamble
JABARI WAMBLE
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
913-551-6730
913-551-6541 (fax)
Jabari.wamble@usddoj.gov
Kan. S. Ct. No. 22730

By: /s/ Vincent Falvo
VINCENT FALVO
Trial Attorney
Violent Crime and Racketeering Section
United States Department of Justice
1301 New York Avenue, NW, Room 753
Washington, D.C. 20530
(202) 353-9384
vincent.falvo@usdoj.gov

**CERTIFICATE OF SERVICE**

      I certify that on October 27, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all interested parties.

                                                        */s/ Faiza H. Alhambra*
                                                        Faiza H. Alhambra
                                                        Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I certify that on October 27, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all interested parties.

*/s/ Faiza H. Alhambra*
Faiza H. Alhambra
Assistant United States Attorney