## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                              Case No. 24-20070-DDC

NEWTON JONES (01),
WILLIAM CREEDEN (02),
KATERYNA JONES (03),
WARREN FAIRLEY (04),
LAWRENCE MCMANAMON (05),
KATHY STAPP (06),
CULLEN JONES (07),

        Defendants.

## MEMORANDUM AND ORDER

The court finds itself in familiar territory. Defendants ask the court to issue a Subpoena Duces Tecum under Federal Rule of Criminal Procedure 17(c). Doc. 173. The court already quashed a Rule 17(c) subpoena in this case—one issued by the government to the International Brotherhood of Boilermakers Union (IBB). *See* Doc. 138. And much of what doomed the government's subpoena—most notably, failing the specificity requirement—dooms defendants' subpoena requests as well.

The tendency for the parties to request overly broad subpoenas likely stems—at least in part—from the sweeping nature of the case itself. A 57-count Indictment alleges defendants engaged in a racketeering conspiracy through their employment at IBB from January 2009 to August 2023 (with some alleged conduct for some defendants continuing until August 2024). Doc. 1 at 12–14. The Indictment charges defendants with converting IBB funds for their own benefit through wire fraud and embezzling union, pension, and welfare funds. *Id.* at 12. The alleged scheme involves expenditures for international travel, restaurants, merchandise,

relocation, vacation, forensic surveillance, and unauthorized loans, as well as payments for people who performed little to no work, among other charges. *Id.* at 27, 33, 34–36, 38, 40, 43, 45–50. Even in the face of this expansive Indictment, however, the court can't authorize defendants to undertake an unlimited fishing trip. Indeed, Supreme Court and Tenth Circuit precedent expressly prohibit "fishing expedition[s]" under the auspices of Rule 17(c). *See United States v. Nixon*, 418 U.S. 683, 699–700 (1974); *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002).

The court held a hearing on defendants' 17(c) motion on November 24, 2025. At the hearing, the court asked defendants about the specificity problems it had perceived in the subpoena requests. And the court reminded defendants that specificity functions like a gateway to the rest of the 17(c) analysis. After hearing defendants' arguments, the court previewed its conclusion: granting defendants' motion would rubber-stamp "an impermissible fishing expedition" thus contravening clear Circuit and Supreme Court precedent. *Morris*, 287 F.3d at 991; *Nixon*, 418 U.S. at 699–700. And so, undertaking the job assigned by controlling precedent, the court denies all but one of defendants' subpoena requests for lack of specificity. It thus grants in part and denies in part defendants' Motion for Issuance of Rule 17(c) Subpoena Duces Tecum to IBB (Doc. 173).

This Order first outlines the governing legal standard. It then zeros in on specificity and explains why each denied request fails *Nixon*'s most difficult hurdle. Finally, the court explains why defendants' single successful subpoena item passes muster.

## I.    Legal Standard[1]

---

[1]    The court pulls the following legal standard—and some later statements of law—from another recent case, also relied on by the parties, *United States v. Clinesmith*, No. 23-20063-DDC, 2025 WL 974262 (D. Kan. Apr. 1, 2025). This case summarized the prevailing law, and there's no need to reinvent a new summary here.

The Tenth Circuit summarized the legal principles governing a request for a Rule 17(c) subpoena in *United States v. Abdush-Shakur*, 465 F.3d 458 (10th Cir. 2006). As the Circuit explained,

> Rule 17(c) [of the Federal Rules of Criminal Procedure] provides that "a subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein." Rule 17(c) is "not intended to provide an additional means of discovery," but "to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). A party seeking a subpoena duces tecum under Rule 17(c) must establish:
>
> > (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."
>
> *United States v. Nixon*, 418 U.S. 683, 699–700 (1974). Thus, "on appeal from the denial of a Rule 17(c) motion, the movant must show that the subpoenaed document was relevant, admissible, and specific." *United States v. Gonzalez–Acosta*, 989 F.2d 384, 389 (10th Cir. 1993). Failure of one of these elements precludes reversal. *See United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002) (affirming district court's suppression of a subpoena under Rule 17(c) where defendant arguably established relevance and admissibility, but not specificity).

*Abdush-Shakur*, 465 F.3d at 467 (quotation cleaned up). So, to evaluate defendants' motion, the court must assess each subpoena request for relevance, admissibility, and specificity. As the court already indicated, specificity does most of the heavy lifting here, flunking out all but one of defendants' requests. So, the court begins with *Nixon*'s last requirement, only circling back to the others when addressing the one surviving subpoena item.

## II.    Applying the Legal Standard to Defendants' Motion

The court first provides an overview of case law applying *Nixon*'s specificity requirement. Then, it evaluates defendants' 14 subpoena requests under the requirement. All but one fail.

### A.    Specificity

Our court views the last *Nixon* requirement—limiting Rule 17(c) subpoenas to "specific" requests—as "the most difficult hurdle to overcome." *United States v. Wittig*, 250 F.R.D. 548, 552 (D. Kan. 2008) (citing *United States v. Anderson*, 31 F. Supp. 2d 933, 944 (D. Kan. 1998)). The Tenth Circuit has defined the contours of the specificity requirement this way: "*Nixon* mandates that the party requesting the information identify the item sought and what the item contains, among other things." *Morris*, 287 F.3d at 991. The Circuit has enforced compliance with this requirement stringently. For example, in *Morris*, defendant sought a subpoena demanding pretrial production of "all records, documents, reports, telephone logs, etc., surrounding the investigation into the FBI undercover agent's shooting of [defendant] and the agent's entire personnel file." *Id.* The Court of Appeals affirmed the district court's decision quashing the subpoena because it wasn't sufficiently specific. The Circuit emphasized "that requests for an entire file are evidence of an impermissible fishing expedition." *Id.* The Circuit called the "all" request described above an "attempt[] to use the Rule 17(c) subpoena for impermissible discovery purposes." *Id.* And so, the Circuit held that the "subpoena did not overcome the hurdle of specificity as required by *Nixon*." *Id.*

At the opposite end of the specificity spectrum, courts have allowed narrower requests. In *United States v. Romero*, for instance, defendant requested "records about only one vehicle from only one day." No. 21-cr-00559-JCH, 2023 WL 2614472, at *3 (D.N.M. Mar. 23, 2023). The district court viewed this request as sufficiently specific because defendant had, "in other

words, identified the item sought and what the item contains." *Id.* (quotation cleaned up).  It thus ruled that the proposed subpoena complied with the Tenth Circuit's ruling in *Morris*, denying the government's motion to quash.

The specificity requirement protects the Supreme Court's instruction that parties must not use Rule 17(c) to conduct discovery, "as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 699–700.  Our court has applied this standard and described the differences between a sufficiently specific subpoena and one that's impermissibly unspecific.  In *Wittig*, for example, our court rejected a defendant's request to issue a Rule 17(c) subpoena, explaining:  "Although the proposed subpoena narrows the subject matter as well as the date range and recipient, it continues to read like a civil discovery request, including a broad description of materials requested and an expansive 'Definitions' section that seeks 'each' and 'every,' 'any' and 'all,' 'without limitation' 'however denominated.'"  250 F.R.D. at 552.  Our court reached the same conclusion in *United States v. Jackson*, where defendants' subpoenas used phrases like "any and all documents" and "including, but not limited to" to seek a broad array and large number of documents.  155 F.R.D. 664, 668 (D. Kan. 1994).  *Jackson*, like *Wittig*, thus rejected the request for the subpoena, deeming its request for entire files not sufficiently specific.  *Id.*

These rulings from our court comport with how our Circuit has differentiated between permissibly specific and impermissibly unspecific.  In *Morris*, for example, the Circuit held that the district court hadn't erred when it concluded that a request for "all records, documents, reports, telephone logs . . . surrounding the investigation of the FBI undercover agent's shooting" of defendant "lacked specificity and constituted an impermissible fishing expedition[.]"  287 F.3d at 991.  And our Circuit's rulings track decisions by other Circuits.

In *United States v. Richardson*, the Fourth Circuit affirmed a district court's order quashing a subpoena that looks like many of the topics defendants here have used. *Richardson*'s putative subpoena proposed to collect "all records (including but not limited to emails, postal correspondence, minutes/notes of meetings, memoranda,)" among other things, "relating to [subpoena recipient's] coordination of efforts, training and/or strategic partnerships with all agencies of the [U.S.] Department of Justice," among others government agencies. 607 F.3d 357, 368–69 (4th Cir. 2010) (first and third sets of brackets in original). The Fourth Circuit held the subpoena lacked requisite specificity because "'a Rule 17 subpoena *duces tecum* cannot substitute for the limited discovery otherwise permitted in criminal cases and the hope of obtaining favorable evidence does not justify the issuance of such a subpoena.'" *Id.* (quoting *United States v. Caro*, 597 F.3d 608, 620 (4th Cir. 2010)); *see also United States v. Villa*, 503 F. App'x 487, 489 (9th Cir. 2012) (upholding district court's ruling that defendant's putative subpoena asking municipality to produce documents "relating to a number of individuals involved in his case" was "insufficiently specific" to meet *Nixon*'s standards).

The reach of defendants' proposed subpoena here easily eclipses subpoenas that courts have approved. Of defendants' 14 subpoena requests, 13 fail on specificity grounds. The court explains why, below. The court then addresses the sole surviving request, evaluating its relevance and admissibility.

### i.    Requests # 1-7:  Email Accounts

The requests for production of the email accounts in items #1–#7 seek all emails in a given custodian's account for periods ranging from just over two years (item #2) to almost 16 years (item #3). Doc. 173-1 at 5 (Proposed Subpoena). IBB argues these requests are "akin to making a request for an entire file" which constitutes a "'fishing expedition.'" Doc. 180 at 7

(quoting *Morris*, 287 F.3d at 991). It's right. Indeed, the court already ruled as much on a similar request by the government to subpoena all of defendant Kathy Stapp's emails. *See* Doc. 138 at 7, 9 ("[T]he government seeks 14-plus years of email for Ms. Stapp. The request is unlimited by subject matter. . . . It's hard to imagine that all of Ms. Stapp's emails during 14-plus years are material to the issues in this case. Finding that the government's subpoena in this case doesn't comply with *Nixon* . . . the court quashes the government's demand for the entirety of Ms. Stapp's email account.").

Granted, the government's quashed subpoena requested "all emails" and "all records," Doc. 111-1 at 5, while the defendants' email requests don't use the word "all," *see* Doc. 173-1 at 5 (Proposed Subpoena). And the requests' lengthy time span stems, in part, from the Indictment's breadth—which charges conduct from January 2009 to August 2023/ August 2024. Doc. 1 at 12–14 (Indictment). Defendants argue that Ms. Stapp's emails would prove relevant by citing the topics in an email from Ms. Stapp to defendant William Creeden, attached to defendants' motion as Exhibit B. *See* Doc. 173 at 6; Doc. 173-2 at 2 (Nov. 3, 2014 Stapp-Creeden email).

But defendants' email requests include no search terms, no specific dates, and no other limiting methods, thus falling far short of identifying "sharply defined groups of documents." *Jackson*, 155 F.R.D. at 667. When granting defendants' earlier unopposed 17(c) subpoena to IBB, the court expressed a similar concern. It criticized defendants' requests for emails covering more than a 15-year span—with no limiting terms or more specific date ranges—because the requests didn't comport with the *Nixon* requirements. *See* Doc. 140 at 3 ("The court's hard-pressed to conclude that this description (and or others used in the proposed subpoena) comports with the standards established by Supreme Court and binding Circuit authority."). So,

defendants were on notice—twice—how unfavorably the governing law would view such broad and sweeping requests.  But they pressed forward with the disfavored requests anyway.

Striving to save their plans for a fishing trip, defendants contend that Federal Rule of Evidence 106, the so-called rule of completeness, justifies their requests—particularly the request for Ms. Stapp's emails.  Doc. 187 at 11 (citing Fed. R. Evid. 106).  They argue that the government has secured some relevant documents but failed to secure other "documents that are critical to clarify or explain the part already received."  *Id.* at 12 (quotation cleaned up).  So, defendants purportedly "are entitled to these documents in order to present a fair and complete defense at trial."  *Id.* at 13.

Federal Rule of Evidence 106 provides in relevant part:  "If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time."  It "applies only to the narrow circumstances in which a party has created a misimpression about the statement, and the adverse party proffers a statement that in fact corrects the misimpression."  Fed. R. Evid. Advisory committee's note to 2023 amendment.  Those "narrow circumstances" suggest Rule 106 provides little aid to defendants on the 17(c) issue at hand.  *Id.*; *see also United States v. Maxwell*, No. 20-CR-330 (AJN), 2021 WL 2292773, at *2 (S.D.N.Y. June 4, 2021) (denying 17(c) subpoena request and finding Rule 106 argument to justify request "premature" because it "would only ripen at trial if portions of the [document] are introduced and admitted").

Even if the court overlooked the ripeness problem, defendants' requests remain overbroad and Rule 106 can't save them.  To be sure, the "common law completeness doctrine provided that 'when a letter is read, the answer may be given' in evidence."  21 *Wright & Miller's Federal Practice & Procedure* § 5084 (2d ed. 2025).  In like fashion, one could argue some email

responses in an email chain also "in fairness ought to be considered at the same time" with the original emails.  Fed. R. Evid. 106.  So, the court recognizes it's conceivable that some of the emails defendants might acquire by their 17(c) requests could qualify under the completeness rule.  But, as our Circuit has explained, this fairness standard doesn't justify defendants' wide-ranging requests.  "The rule of completeness . . . does not necessarily require admission of an entire statement, writing or recording.  Rather, only those portions which are relevant to an issue in the case and necessary to clarify or explain *the portion already received* need to be admitted." *United States v. Lopez-Medina*, 596 F.3d 716, 735 (10th Cir. 2010) (emphasis added) (quotation cleaned up).  So, for completeness purposes, defendants could target crucial portions of the requested email accounts—with search terms or specified dates drawn from emails produced to the government, for example—to ensure completeness of email exchanges at trial.  And, if a completion issue arises at trial, defendants might muster Rule 106 in that context—where it's intended to function.  But in no sense does this rule of evidence nullify the standards the Supreme Court has attached to Rule 17(c) of the Federal Rules of Criminal Procedure.  Finally, IBB represented to the court at the hearing that it will stand available to provide any Rule 106 documents should the need arise during trial.  The notion that Rule 106 relaxes *Nixon*'s specificity factor thus doesn't persuade and can't rescue defendants' overly broad email requests. The court thus denies issuance of a subpoena for requests #1–#7 on specificity grounds.

### ii.        Requests #8–#9:  Communications with Attorneys

The next two requests (#8–#9) seek emails, memoranda, and invoices between defendants and IBB's former attorneys—the Blake & Uhlig law firm and David Elbaor.  Doc. 173-1 at 5–6 (Proposed Subpoena).  Defendants seek the documents involving Blake & Uhlig for the full Indictment period, January 1, 2009, to August 21, 2024.  *Id.*  They seek the documents

involving Mr. Elbaor during the period of his engagement as IBB's counsel—January 1, 2021, to August 21, 2024. *Id.* Defendants purport to narrow their request by identifying 15 search terms—the same 15 terms for each request. *Id.*

Two specificity issues plague defendants' requests #8 and #9: the date range and the generality of the search terms. For starters, the date range in question—particularly for the Blake & Uhlig documents—remains sweeping. IBB argues that defendants should specify definitive dates. Doc. 180 at 15. IBB reasons that it already produced defendants' email accounts to them, "which should have helped them to determine when any legal advice relevant to them was given[.]" *Id.* Defendants respond that IBB excluded all communications from Blake & Uhlig in its earlier production, so that production doesn't allow defendants to identify the relevant dates. Doc. 187 at 3. While the court recognizes defendants' dilemma, it simply can't square *Nixon*'s specificity mandate with subpoenaing production of years' worth of emails.

And the 15 search terms don't cure defendants' specificity problem. To begin, defined subject matter isn't a panacea that cures all ills. *See Wittig*, 250 F.R.D. at 552 (denying request to issue 17(c) subpoena although "the proposed subpoena narrows the subject matter as well as the date range and recipient" because "it continues to read like a civil discovery request, including a broad description of materials requested"). And most of defendants' identified terms—such as "expenses," "compensation," and "benefits," Doc. 173-1 at 5–6 (Proposed Subpoena)—are so general that they fail to identify "the item sought and what the item contains." *Morris*, 287 F.3d at 991 (quotation cleaned up). Such general topics don't get the job done. To be sure, a few of defendants' search terms are more specific. But—even if sufficiently specific—a request with these more precise terms would fail on admissibility grounds.

Take defendants' two most specific search terms: "hiring Brian Daly" and "hiring Kate Jones." Doc. 173-1 at 5–6 (Proposed Subpoena). An issued subpoena would require IBB to apply those specific search terms to emails between IBB and its attorneys. Apart from a waiver, attorney-client privilege likely protects some of what that search would produce. And seeking material protected by attorney-client privilege precludes a finding of admissibility for a 17(c) subpoena. *See United States v. Xu*, No. 23-CR-133-5 (JMF), 2024 WL 4504352, at *2 (S.D.N.Y. Oct. 16, 2024) (denying motion for 17(c) subpoena, in part, because it sought attorney-client privileged—and thus inadmissible—materials); *see also United States v. Hoeffner*, 254 F.R.D. 302, 306–07 (S.D. Tex. 2008) (quashing 17(c) subpoena where sought-after material fell within un-waived attorney-client privilege); *United States v. Tomison*, 969 F. Supp. 587, 598 (E.D. Cal. 1997) (same). So, defendants would need to demonstrate admissibility despite that privilege. But defendants haven't done so.

Defendants contend that each one of the 15 identified search terms falls within the scope of the privilege waiver delineated by the court in its abrogation Order (Doc. 177). Doc. 187 at 4–5. But that's just not right. The court's abrogation Order concluded that IBB had waived its attorney-client privilege over the following subject matters:

- "the 'expense reporting and reimbursement issues discussed on September 13, 2022[,]' the 'salary, benefits, and other expenses that a union is permitted to pay its officers and employees' under the law, and any 'Expense Policy' that the IEC may have adopted" and

- "securing and maintaining privilege over the Mandiant report."

Doc. 177 at 12, 14. These defined subjects include nothing about hiring, Brian Daly, or Kate Jones. (To be sure, some of defendants' search terms fall within the scope of the waiver—such as "expenses," "compensation," and "benefits," Doc. 173-1 at 5–6 (Proposed Subpoena)—but, again, those search terms are too general to make it across the specificity threshold.)

Defendants' proposed search terms that arguably satisfy specificity thus stretch the scope of the waiver far too far—well beyond the Tenth Circuit's "communications relating to the same subject matter" standard. *Burke v. Regalado*, 935 F.3d 960, 1023 (10th Cir. 2019) (quotation cleaned up).

Besides, the abrogation Order only addressed privilege waiver for communications with the Blake & Uhlig law firm—not Mr. Elbaor. *See* Doc. 177 at 4 (explaining that IBB conceded that Mr. Elbaor's invoices weren't privileged and so mooting any need to address privilege waiver concerning Mr. Elbaor). Think of it this way: IBB couldn't have waived its privilege for communications with attorney Elbaor by producing *unprivileged* communications with him. Defendants argue that IBB waived any "residual claim of privilege by the IBB regarding Elbaor's representation" when it filed a counterclaim against Mr. Elbaor in state court in Charlottesville, Virginia. Doc. 173 at 9. But the court hasn't made any determination about whether—or to what extent—IBB's filing in the Charlottesville case waived privilege. And defendants never provide any authority—or any theory of waiver—to support their position. They make no attempt to identify counterclaim language that the court might use to determine the scope of any waiver from that Charlottesville filing. Indeed, they don't engage with the filing at all—they're content to provide the *ipse dixit* conclusion that the counterclaim's filing waives all privilege. Famously, disclosure only waives "communications relating to the same subject matter[.]" *Burke*, 935 F.3d at 1023 (quotation cleaned up). And defendants' contention that "IBB's specific allegations" in the counterclaim "track the Government's Indictment," Doc. 173 at 9, falls far shy of demonstrating waiver over topics like "hiring Brian Daly" and "hiring Kate Jones." Doc. 173-1 at 5. In sum, defendants wholly fail to convince the court that these more specific search terms would produce admissible documents.

12

So, even those search terms that lean toward the requisite specificity run into an admissibility problem—a problem defendants haven't tackled.

Checking the scoreboard, then: requests #8 and #9 ask for a date range that is too broad using search terms that are too general to survive specificity's scrutiny. And those few search terms arguably specific enough propagate admissibility issues that defendants neglect to address adequately. The court thus denies requests #8 and #9 as unfit under *Nixon*'s requirements.

### iii.        Request #10: Dropbox Indexes

In request #10, defendants seek Dropbox indexes for defendants and others. Doc. 173-1 at 6 (Proposed Subpoena). Defendants explain that the Dropbox accounts "store documents and share work product." Doc. 173 at 11. They don't attempt to narrow their request by date or subject matter. Doc. 173-1 at 6 (Proposed Subpoena). Instead, defendants assert that they want the full indexes so that they can "assess whether further access is necessary[.]" Doc. 173 at 11. Defendants' request smacks of the forbidden fishing expedition. *See Wittig*, 250 F.R.D. at 552 ("The specificity requirement ensures that a Rule 17(c) subpoena will not be used just to see 'what may turn up.'"). It suggests that defendants want to sift through lists of unspecified documents and work product in the hope of discovering something useful. But *Richardson* clarified that "the hope of obtaining favorable evidence does not justify the issuance of such a subpoena." 607 F.3d at 368–69 (quotation cleaned up).

In their Reply, defendants argue that they "*know* there are relevant files in Defendants' drop box accounts . . . relating to the issues raised in the Indictment." Doc. 187 at 13–14 (emphasis in original). And they provide a relevant file example: "multiple presentations and speeches created for Newton Jones to present at various conferences[.]" *Id.* at 14. If defendants know what they're looking for—and defendants concede they do to some extent—then they

should ask for it *specifically*.  Defendants belatedly offer "to provide targeted search terms for the documents requested."  *Id.*  Such targeted search terms—carefully crafted—might move toward the requisite specificity.  Absent those search terms, however, this request fails as an "impermissible fishing expedition."  *Morris*, 287 F.3d at 991.

> ### iv.  Requests #12–14:  Constitutional Amendments, Policies, and Calendar Events

Requests for IBB Constitutional Amendments (#12) and IBB policies (#13) similarly fail for specificity reasons.  Defendants contend that they can't "discern, without the attendant IBB records, what policies and Constitutional provisions were in effect on a given date during the nearly 16-year alleged conspiracy."  Doc. 173 at 11.  They argue that they "know that various versions of policies and the IBB Constitution existed at various times" but the court reasonably can't "expect[] [them] to recall the exact policy version at issue for, for example, something occurring in 2012."  Doc. 187 at 14.  But—again—defendants neglect to narrow the subject matter of the requested policies and provisions.  Also, defendants never pinpoint the operative date (or dates) during the Indictment period for which they need policies.  Absent any specified subject matter or more defined dates, these requests fail to "identify the item sought and what the item contains" sufficiently.  *Morris*, 287 F.3d at 991.  It seems possible, for example, for defendants to request policies governing vacation payout at a specified time or Constitutional amendments addressing international travel.  But they seek *all* policies and Constitutional amendments for the *entire* indictment period.

When it comes to the calendar-events request (#14), defendants again invoke the rule of completeness.  Doc. 187 at 15.  IBB professes to have produced already Outlook calendar events for all defendants and Tyler Brown.  Doc. 180 at 18.  So, defendants contend, "Fed. R. Evid. 106

applies with equal force here to the remaining requested accounts for Simmons, Baca, Fultz, Stadnick, Martin-Wiser, and Linderer."  Doc. 187 at 15.

The court's earlier analysis about Rule 106 controls here as well.  Namely, such an argument is "premature" before trial.  *Maxwell*, 2021 WL 2292773, at *2.  And completeness doesn't justify broad 17(c) requests because narrowly tailored requests still could accomplish completeness.  What's more, IBB has attested to its availability during trial to take up any Rule 106 production.  So, were a completeness issue to arise at trial, there's a means to address it.

Finally, the wording of all three of these requests (#12–#14) raises red flags.  Defendants seek

- "*all* Constitutional amendments passed at Convention from January 1, 2009 to August 21, 2024[;]"

- "*[c]omprehensive* production of *all* IBB policies . . . from January 1, 2009 to August 21, 2024[;]" and

- "*all* calendar events by custodian . . . from August 21, 2019 to August 21, 2024[.]"

Doc. 173-1 at 6 (Proposed Subpoena) (emphasis added).  Both *Jackson* and *Wittig* explicitly took issue with requests for "any and all documents[,]" finding the use of such qualifiers indicative of overbreadth.  *Jackson*, 155 F.R.D. at 668; *Wittig*, 250 F.R.D. at 552; *see also United States v. Reyes*, 239 F.R.D. 591, 606 (N.D. Cal. 2006) ("Where, as here, a defendant requests any and all information related to a particular policy or procedure, courts have rejected such requests as an abuse of Rule 17(c).")  These cases thus confirm the court's conclusion that requests #12–#14 don't satisfy *Nixon*'s specificity requirement.

To recap, all but one of defendants' subpoena requests fail *Nixon*'s specificity factor.  Their date ranges are long ones, generally speaking, with no definitive days, or even months, identified.  And defendants often make no attempt to limit the requests by subject matter or

search terms. Where they do, those search terms are problematically general or they propagate admissibility issues. And Fed. R. Evid. 106 doesn't change this analysis. That leaves request #11, which the court analyzes, below.

**v.     Request #11:  IEC Meeting Minutes**

In request #11, defendants seek IEC meeting minutes from January 1, 2009, to November 12, 2012, and January 1, 2024, to August 21, 2024. Doc. 173-1 at 6 (Proposed Subpoena). Defendants already have received IEC minutes from November 12, 2012, to December 15, 2023. Doc. 173 at 11. Now, they aspire to round out that production for the whole of the charged period. *Id.*

This request isn't a fishing trip. It identifies a more confined date range. What's more, it seeks particular, identifiable documents. Defendants attached to their motion a sample of the IEC meeting minutes already produced. *See* Doc. 173-4 (Oct. 6, 2022, Meeting Minutes). This attachment—minutes from October 6, 2022—totals just six pages. *See id.* It's not clear that the attachment encompasses the entirety of the minutes. And defendants don't address whether that length is representative of the requested minutes. But on the record before the court, it appears this meeting-minutes request would require production of a limited, definitive number of pages. The more confined date range, the particularity of the documents requested, and the limited pages work together to survive specificity's watchful eye. The court thus concludes this request clears the specificity hurdle. The court next must analyze whether request #11 satisfies *Nixon*'s other two requirements:  relevance and admissibility.

**B.     Relevance & Admissibility**

Aside from specificity, to "hold that the issuance of a subpoena is proper, the Court need only find a 'rational inference' of relevancy and a 'sufficient preliminary showing' of

16

admissibility." *Romero*, 2023 WL 2614472, at *2 (quoting *Nixon*, 418 U.S. at 700).  On the admissibility requirement, generally speaking, "impeachment evidence does not meet the admissibility test and may not be the sole support for a party's demand."  25 *Moore's Federal Practice* § 617.08[3][b] (3d ed. 2024).  And, recall that a subpoena seeking attorney-client privileged materials wouldn't pass the admissibility test, either.  *See, e.g.*, *Xu*, 2024 WL 4504352, at *2.

On the "evidentiary and relevant" prong, commentators consistently emphasize that a "subpoena duces tecum is not a discovery device[.]"  25 *Moore's Federal Practice* § 617.08[2] (3d. ed. 2024).  But though "Rule 17 is limited to the production of evidentiary materials, a party need not actually use those materials in evidence."  *Id.*  Instead, a "good faith effort" to secure "evidence is sufficient for a subpoena's demands to fall within the ambit of the Rule."  *Id.*  It is thus "axiomatic that the relevance criterion can be fulfilled if the documents sought would tend to prove a material issue of the prosecution or defense."  *Id.* § 617.08[3][b] (citing, among others, decisions by district courts within Tenth Circuit).  But district courts properly quash subpoenas seeking irrelevant material.  *United States v. Komisaruk*, 885 F.2d 490, 495 (9th Cir. 1989) ("The documents sought by [defendant] were irrelevant.  [Defendant] destroyed a space shuttle computer instead of the Navstar navigational system.  Therefore, documentary evidence relating to the Navstar navigational system was irrelevant and the district court did not abuse its discretion in denying a request to produce those documents." (citing *United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984))).

The parties never argue the meeting minutes' admissibility.  *See generally* Doc. 173; Doc. 180; Doc. 183.  Nor did they address it at the hearing.  No one suggests defendants seek to use the meeting minutes as impeachment evidence.  And IBB—in the context of arguing the

17

government's abrogation motion—agreed:  the meeting minutes aren't privileged.  *See* Doc. 177 at 4, 10.  So, defendants' request for the meeting minutes comports with "a 'sufficient preliminary showing' of admissibility."  *Romero*, 2023 WL 2614472, at *2 (quoting *Nixon*, 418 U.S. at 700).

Last, evaluate relevance.  Defendants contend that "many of the topics outlined in the Indictment were discussed" at the IEC meetings.  Doc. 173 at 9.  And defendants point to the October 6, 2022, meeting minutes, which included a discussion of international travel.  *Id.* at 10.  The minutes suggest the purpose of a trip to Geneva, Switzerland, was to try to persuade IndustriALL representatives to re-align with IBB.  Doc. 173-4 at 4 (Oct. 6, 2022, Meeting Minutes).  This travel information demonstrates relevance.  The Indictment concerns, in part, defendants' allegedly "unauthorized travel to Europe" and specifically identifies trips to Geneva, Switzerland, in 2022 as part of the international-travel embezzlement charge.  Doc. 1 at 20, 27, 30–31 (Indictment).  The minutes' inclusion of such an Indictment-adjacent topic indicates that IEC meeting minutes could "tend to prove a material issue of the . . . defense."  25 *Moore's Federal Practice* § 617.08[3][b] (3d. ed. 2024).  And so, the court determines that request #11 supports a "'rational inference' of relevancy[.]"  *Romero*, 2023 WL 2614472, at *2 (quoting *Nixon*, 418 U.S. at 700).  With that determination, request #11 clears the final *Nixon* hurdle.

## III.    Conclusion

The court thus concludes defendants have shouldered their burden for the IEC meeting minutes in proposed subpoena item #11.  Doc. 173-1 at 6.  It thus authorizes the Clerk of the Court to issue a subpoena duces tecum under Fed. R. Civ. P. 17(c) for request #11 in Exhibit A of defendants' Motion for Issuance of Rule 17(c) Subpoena Duces Tecum to IBB (Doc. 173).  But defendants have failed to shoulder their burden in all other respects.  The court thus grants

defendants' motion in part but denies it in all other respects.  Defendants retain the administrative responsibilities to prepare the subpoena approved by this Order, present it to the Clerk, and effect service.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion for Issuance of Rule 17(c) Subpoena Duces Tecum to IBB (Doc. 173) is granted in part and denied in part, as described in this Order.

**IT IS FURTHER ORDERED THAT** the Clerk of the Court is authorized to approve a Rule 17(c) subpoena seeking production in advance of trial of "IEC meeting minutes from January 1, 2009 to November 12, 2012, and January 1, 2024 to August 21, 2024."  It is defendants' responsibility to prepare and present such a subpoena for review and approval by the Clerk and to effect service.

**IT IS SO ORDERED.**

**Dated this 4th day of December, 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
