**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>               **Plaintiff,**<br><br>    **v.**<br><br>NEWTON JONES,<br>WILLIAM CREEDEN,<br>KATERYNA (KATE) JONES, and<br>LAWRENCE McMANAMON,<br><br>               **Defendants.** | **Crim. Case No.**<br>**2:24-cr-20070-DDC-TJJ** |

**GOVERNMENT'S CONSOLIDATED MOTIONS IN LIMINE**
**AND MOTION FOR RECIPROCAL DISCOVERY**

The United States, by and through its undersigned attorney, Ryan A. Kriegshauser, United States Attorney, hereby respectfully moves this Court for an Order granting the following motions in limine, as follows.

### I. Motions to Preclude Evidence or Argument

#### A. Eliciting Jury Nullification

The Government moves this Court to preclude Defendants from arguing, or otherwise presenting evidence or pursuing lines of inquiry designed to elicit, jury nullification. The law is plain that it is improper for a defendant to suggest in any way that the jury should acquit the defendant even if it finds that the government has met its burden of proof. Similarly, Defendants are not entitled to a jury instruction that jurors have an inherent right to acquit notwithstanding guilt under the applicable facts and law. United States v. Courtney, 816 F.3d 681, 686 (10th Cir. 2016) ("[A] criminal defendant is not entitled to have the jury instructed that

it can, despite finding the defendant guilty beyond a reasonable doubt, disregard the law").[1]

Although the Government is unable to anticipate each form of "jury nullification" argument or evidence that Defendants may seek to interject into this trial, the Government does note the following potential examples that should be precluded:

### 1. Quality of Performance of Defendant as a Boilermaker Employee and Officer

The conduct of the Defendants NEWTON JONES, WILLIAM CREEDEN, KATERYNA JONES, and LAWRENCE McMANAMON as officers and employees in the Boilermakers Union has come under criminal indictment. Those defendants may attempt to divert the jury's attention to that specific conduct by, in effect, balancing it with the successful performance of his representative duties as a union official. Whether the Boilermakers Union members were satisfied with the representation provided by those respective defendants is neither relevant to the matters before the jury nor admissible character evidence pursuant to FRE 404 and 608. Permitting a defendant to pursue such inquiries would invite the jury to disregard the Court's instruction and the merits of the Government's case and threatens to confuse the relevant issues in violation of FRE 403.

---

[1]  Accord Scarpa v. Dubois, 38 F.3d 1, 11 (1st Cir. 1994) (noting that "defense counsel may not press arguments for jury nullification in criminal cases"); United States v. Perez, 86 F.3d 735, 736 (7th Cir. 1996) ("An unreasonable jury verdict, although unreviewable if it is an acquittal, is lawless, and the defendant has no right to invite the jury to act lawlessly. Jury nullification is a fact, because the government cannot appeal an acquittal; it is not a right, either of the jury or of the defendant.") (citing United States v. Kerley, 838 F.2d 932, 938 (7th Cir. 1988); United States v. Trujillo, 714 F.2d 102, 105 (11th Cir. 1983) ("Appellant's jury nullification argument would have encouraged the jurors to ignore the court's instruction and apply the law at their caprice. While we recognize that a jury may render a verdict at odds with the evidence or the law, neither the court nor counsel should encourage jurors to violate their oath").

### 2. Culpability of Other Parties or Other Potential Defendants

Criminal defendants often raise the specter of potential defendants not charged, or the alleged misconduct of other individuals, in order to encourage the jury to ignore the merits of the case against them.   Federal courts have regarded such gambits as a clearly improper invitation to the jury to nullify.   United States v. Thompson, 253 F.3d 700, 2001 WL 498430, *15-16 (5th Cir. 2001) (holding arguments comparing defendant to uncharged persons or immunized witnesses as tantamount to solicitation of nullification).

Accordingly, the Government requests that the Court preclude any inquiry, arguments, or comparison by Defendants regarding the conduct or opinions of other Boilermakers Union officers, employees, or members; officers or employees of the Bank of Labor; any employers with whom the Boilermakers Union bargains; or any other individuals as not relevant to the elements of the offenses charged in the Indictment or as a cognizable defense to those charges.

### 3. Alternative Civil Remedies

Criminal prosecutions involving labor relations and internal union affairs are not common.   Members of the jury are not likely to have had direct experience with unions representing construction or industrial unions or the finances of such unions.   As a result, Defendants may argue that disputes within labor unions are better resolved at the bargaining table or sorted out by the members themselves.   Such contentions improperly invite the jury to substitute inapplicable standards and thus nullify the proper jury instructions.   See United States v. Palumbo Bros., 145 F.3d 850, 870-71 (7th Cir. 1998) ("[I]t is inconsequential that the United States incidentally implicates breaches of the collective bargaining agreement when it charges the defendant with alleged criminal offenses, because the purpose of the indictment is NOT to remedy a labor dispute, but to prosecute alleged criminal conduct.").

3

The availability of alternative civil remedies is likewise irrelevant to determination of whether Defendants committed the crimes charged in the Indictment--the only consideration for the jury.  Eliciting evidence or making arguments that this case could be resolved civilly or administratively is wholly improper.  See United States v. Merrick, 464 F.2d 1087, 1093 (10th Cir. 1972) (finding "no relevance" in proposed jury instruction that civil case might be brought against a defendant who was convicted of income tax evasion); United States v. Buras, 633 F.2d 1356, 1360 (9th Cir. 1980) (finding availability of civil remedy in criminal prosecution irrelevant, and therefore, "[s]uch an instruction would serve only to confuse the jury.").

Confusion among jurors tasked with parsing criminal issues along with the vagaries of civil labor law is inevitable.  Even if such evidence held probative value, the Court should exclude it pursuant to Fed. R. Evid. 403 as "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

### 4. Conduct of Government Prosecutors and Investigators

The Government's conduct in bringing the case – its choice of defendants, the resources expended, the offenses charged or not charged – are not relevant considerations for jury deliberation.  Accordingly, the Government requests that the Court preclude Defendants from pursuing any defenses based upon any conduct of government prosecutors or investigators. United States v. Josleyn, 99 F.3d 1182, 1197 (1st Cir. 1996) ("Injecting the prosecutor's personal life and individual efforts into the decisional mix not only invited the jury to consider irrelevant matters beyond the record, but unfairly evoked jury sympathy and diverted attention from the relevant evidence."); United States v. Trujillo, 714 F.2d 102, 105 (11th Cir. 1983) (finding that defendant may not fashion alleged insufficiency of government's indictment into veiled appeal for nullification).  Compare United States v. Kemp, 500 F.3d 257, 301-03 (3d Cir. 2007)

(upholding dismissal of juror for nullification based on refusal to deliberate due to belief that all police are liars).

**B. <u>Hardships or Adverse Impact of Prosecution; Family Needs; and Medical Conditions</u>**

A defendant may be tempted to tell his own personal "hard-luck stories" to improperly influence the jury.   However, any efforts to elicit sympathy have no probative value with respect to whether his conduct constituted mail fraud, embezzlement, and the other charged offenses. <u>See</u> <u>United States v. Walling</u>, 52 F.3d 339 (10th Cir. 1995) (finding that trial court properly refused to instruct jurors that they could be guided by their "own sense of fundamental fairness and justice"); <u>United States v. DeAlesandro</u>, 361 F.2d 694, 697 (2d Cir. 1966) ("[I]f the [jurors] were satisfied of guilt beyond a reasonable doubt[,] . . . sympathy or any other reason should not cause them to hesitate to render a verdict against defendant . . . .").

**C. <u>Penalties Faced by Defendants</u>**

As the Supreme Court stated in <u>Shannon v. United States</u>:

> It is well established that when a jury has no sentencing function, it should be admonished to "reach its verdict without regard to what sentence might be imposed." . . . The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged.   The judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict. Information regarding the consequences of a verdict is therefore irrelevant to the jury's task.

512 U.S. 573, 579 (1994) (citations omitted).

The Government accordingly moves this Court to preclude the Defendant from introducing evidence, making arguments, or otherwise mentioning the potential penalties they may face if convicted.   It is well established that the Constitution and Congress have committed the determination of the punishment to the trial judge.   Accordingly, any arguments regarding potential punishment for the defendant are impermissible.   <u>Sansone v. United States</u>, 380 U.S.

343, 350 n.6 (1965).  Accord United States v. Valdivias, 2025 WL 2450161, at *1 (10th Cir. 2025) (affirming denial of defendant's effort to instruct jury regrading maximum penalties for offenses charged); United States v. McKenzie, 922 F.2d 1323, 1327 (7th Cir. 1991) (holding that "the sixth amendment requires that a jury determine questions of guilt or innocence; punishment is the province of the Court.").

Consequently, Defendants should be barred from mentioning even the mere fact that he may face imprisonment or other penalties, as well as the potential length of incarceration.

### D. "Golden Rule" Arguments

A defendant makes a so-called "Golden Rule" argument where he invites the jury to put itself in the position of one of the parties in a case.  The federal courts have flatly condemned such attempts to use the "Golden Rule" jury argument.  See, for example, United States v. Moreno, 947 F.2d 7, 7-8 (1st Cir. 1991) (remarking that "golden rule" argument improperly 'encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.'") (citations omitted); Joan W. v. City of Chicago, 771 F.2d 1020, 1022 (7th Cir. 1985) (stating that the "Golden Rule" argument, which "encourages the jury to depart from its neutral role, . . . has been universally condemned by the courts."); United States v. Vario, 484 F.2d 1052, 1055 (2d Cir. 1973) (affirming district court's preclusion of defense argument that jury should treat the Defendant as they would want their friends and family members treated if charged with similar crimes).

The Government thus moves the Court to preclude attempts by Defendant to employ any variations of the Golden Rule appeals to the jury.

6

**E. Allegations of Witness Wrongdoing Not Involving Dishonesty**

The Government has produced materials setting forth potential impeachment material for the witnesses in this case, and will continue to produce such materials as they arise. In an abundance of caution, the Government has also produced various materials that may not constitute admissible impeachment. Of course, the mere fact that the Government has produced to the defense a fact or an allegation does not render it admissible at trial.

By this motion, the Government respectfully moves this Court to preclude defense counsel from introducing at trial, during the cross-examination of government witnesses, improper impeachment questioning or evidence.

## II. Motions Related to Testimony of Witnesses

### A. Government Witnesses Testifying Following a Guilty Plea

Three (3) government witness will testify following pleading guilty to allegations contained in the Indictment and pursuant to cooperation agreements. So that the jury may assess the credibility of that witness, the Government on direct examination is entitled to elicit the fact that the witness is testifying following a plea of guilty and a cooperation agreement with the Government. See Rule 607 of the Federal Rules of Evidence, ("The credibility of a witness may be attacked by any party, including the party calling him."); United States v. Townsend, 796 F.2d 158, 162 , 728 F.2d 5, 14 (6th Cir. 1986); United States v. McNeill, 728 F.2d 5, 14 (1st Cir.1984).

### B. Precluding Use of Interview Summaries as Statements Under the Jencks Act

The Jencks Act requires that after a witness for the United States testifies on direct examination, the Government must provide Defendant with any statements made by the witness that relates to the subject of his or her testimony. 18 U.S.C. § 3500. A statement within the

meaning of the Jencks Act is defined as "a written statement made by said witness and signed or otherwise adopted and approved by him;" a recording or transcription that "is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously;" or a statement made by a witness to the grand jury.   18 U.S.C. § 3500(e).

In Palermo v. United States, the Supreme Court held that because the Jencks Act is meant to restrict the defendant's use of discoverable statements to impeachment, 360 U.S. 343, 349 (1959), "only those statements which could properly be called the witness' own words should be made available to the defense."   Id. at 352.   The Court continued that "summaries of an oral statement which evidence substantial selection of material" or "statements which contain [an] agent's interpretations or impressions" are "not to be produced."   Id. at 352-53.

Consistent with Palermo, interview summaries are not discoverable under the Jencks Act because they are not statements of the witness within the meaning of the statute.   Unless the witnesses have reviewed and adopted the interview summaries, which was not the practice in this case, those summaries do not constitute statements of the witness under subsection (e)(1) of the Jencks Act.   Moreover, because the interview summaries are written after interviews are completed and reflect the thought processes and interpretations of the agent, they do not constitute a contemporary and substantially verbatim recital of the witness's statement under subsection (e)(2).[2]

Every circuit court to address the question has held that interview summaries prepared by law enforcement agents generally are not discoverable under the Jencks Act.   United States v.

---

[2]   Of course, the interview summary prepared by an agent would be discoverable under the Jencks Act as a statement of the agent, if the agent who prepared it is called as a witness to testify regarding the subject matter contained in the summary.

Price, 542 F.3d 617, 621 (8th Cir. 2008) (holding that absent evidence that the witnesses "approved or adopted" the FBI 302s, "these documents are not discoverable under . . . the Jencks Act"); United States v. Jordan, 316 F.3d 1215, 1255 (11th Cir. 2003) (holding that FBI 302s "are not Jencks Act statements of the witness unless they are substantially verbatim and were contemporaneously recorded, or were signed or otherwise ratified by the witness"); United States v. Donato, 99 F.3d 426, 433 (D.C. Cir. 1996) ("[T]he agent's notes and 302 report . . . are not covered by the Jencks Act."); United States v. Roseboro, 87 F.3d 642, 646 (4th Cir. 1996) ("[T]he district court's finding that the FBI 302 Report was not a Jencks Act statement is not clearly erroneous."); United States v. Farley, 2 F.3d 645, 654-55 (6th Cir. 1993) (holding that because there was "no proof that the statement was adopted or approved . . . it was not clearly erroneous . . . to deny defendants access to the FBI 302"); United States v. Williams, 998 F.2d 258, 269 (5th Cir. 1993) ("We hold that the FBI Forms 302 were not discoverable statements under the Jencks Act."); United States v. Morris, 957 F.2d 1391, 1402 (7th Cir. 1992) ("[T]he documents are not statements producible under the Jencks Act because they were neither signed nor adopted . . . and further because they are not a verbatim recital . . . but rather only an agent's summary."); United States v. Foley, 871 F.2d 235, 239 (1st Cir. 1989) ("It is plain that the 302s are not substantially verbatim recitals . . . and recorded contemporaneously."); United States v. Claiborne, 765 F.2d 784, 801 (9th Cir. 1985) (because "the summaries represent . . . the agents' selection of certain information . . . the district court properly characterized the summaries as non-Jencks Act material").

Although production of interview summaries is not required, the Government will provide broad discovery, including interview summaries for the Government's witnesses at trial. Defendants should accordingly be limited to using those interview summaries consistent with the

law and rules of evidence.   In particular, Defendants must be precluded from introducing the contents of the interview summaries to impeach witnesses on the basis of inconsistent statements because the summaries are not the statements of the witnesses themselves.

In addition, the Court should preclude Defendants from publishing the contents of the interview summaries to the jury, or otherwise suggesting to the jury that the interview summaries are statements of the witness.   To allow otherwise would subvert the meaning of the Jencks Act and the Supreme Court's decision in Palermo holding that it would "be grossly unfair to allow Defendant to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations and interpolations."   360 U.S. at 350.

Defendants are, of course, free to ask a witness whether he or she made a statement that is reflected in an interview summary.   Likewise, in the appropriate circumstances and with the proper foundation, a defendant may attempt to refresh the witness's recollection by showing the witness the interview summary, but only if a defendant does so in a manner that does not imply that the interview summary is the witness's own statement.

However, if a defendant is not satisfied with the witness's answer, he or she should not be permitted to publish or introduce the contents of the interview summary as a prior inconsistent statement.   See United States v. Brika, 416 F.3d 514, 529 (6th Cir. 2005) (holding that "such documents [FBI 302s] have been deemed inadmissible for impeaching witnesses on cross-examination"); United States v. Leonardi, 623 F.2d 746, 757 (2d Cir. 1980) (holding that because "the written statement of the FBI agent was not attributable to [the witness]" it was "properly rejected as a prior inconsistent statement"); United States v. Hill, 526 F.2d 1019, 1026 (10th Cir. 1975) (upholding the trial court's decision to "not allow counsel to use the 302

10

statement to impeach a witness because the witness did not prepare or sign the document and probably never adopted it").

Moreover, Defendants should not be permitted to use the interview summary in a way that suggests to the jury that the interview summary is a statement of the witness. See United States v. Marks, 816 F.2d 1207, 1210-11 (7th Cir. 1987) (holding that where defense counsel read from a 302 during cross-examination in a way that would "seem authoritative" and potentially confuse the jury, the judge was entitled to require the witness be shown the 302 and given the opportunity to adopt or reject it as a statement, although such a practice was no longer required by the federal rules of evidence).

### C. Limit Cross-examination to Matters Permitted under Fed. R. Evid. 608 and 609

Under Rule 611(b), cross-examination is limited to the subject matter of direct examination and matters affecting the credibility of the witness. To prevent the cross-examiner from creating unfair prejudice, confusing the issues, misleading the jury and/or engaging in undue delay, Rules 608(b) and 609 of the Federal Rules of Evidence limit attempts to impeach credibility through prior instances of misconduct by restricting such proof to conduct which is relevant to truthfulness, by requiring some showing of recency, and by restricting the use of extrinsic evidence. Fed. R. Evid. 608(b) and 609.

Rule 608(b) prohibits the use of extrinsic evidence of misconduct, other than evidence of convictions under Rule 609. Fed. R. Evid. 608(b). Rule 609 provides that a witness may be impeached by evidence of a prior felony conviction, or by evidence of a non-felony conviction for crimes involving "dishonesty or false statement." Fed. R. Ev. 609(a). Pursuant to the express terms of Rules 608(b) and 609, evidence of uncharged crimes or criminal charges absent convictions are not admissible to impeach a witness. United States v. Hoffa, 349 F.2d 20, 47

(6th Cir. 1965), aff'd, 385 U.S. 293 (1966).

Moreover, evidence of a misdemeanor conviction is only admissible if the crime involved dishonesty, such as "perjury or subrogation of perjury, false statement, criminal fraud, embezzlement, or false pretense" (United States v. Cameron, 814 F.2d 403, 406 (7th Cir. 1987)) and misdemeanor drug convictions do not fall within the scope of Rule 609 (United States v. Hastings, 577 F.2d 38, 41-42 (8th Cir. 1978)).

### D. Calling Witnesses as Grounds to Impeach or Cross-examine Them

It is settled that a party may not call a witness for the sole purpose of impeaching him. See United States v. Webster, 734 F.2d 1191, 1192 (7th Cir. 1984); United States v. Morlang, 531 F.2d 183, 189 (4th Cir. 1975). As a corollary to that foundational principle, the federal courts have repeatedly warned against allowing a party to call a witness he knows will not give useful evidence, just so the party may then introduce otherwise inadmissible impeachment evidence. See United States v. Webster, 734 F.2d at 1192. Accord Evans v. Verdini, 466 F.3d 141, 146 (1st Cir. 2006).

Trial courts retain wide latitude to impose reasonable limits on the scope and extent of cross-examination. Delaware v. VanArsdall, 475 U.S. 673, 678 (1986). Accordingly, if Defendants can properly call federal agents to offer relevant and helpful testimony, the Court should restrict him to admissible impeachment evidence, such as prior inconsistent statements. This will prevent using a witness simply as a vehicle for introducing otherwise inadmissible impeachment. See United States v. McClain, 934 F.2d 822, 832 (7th Cir. 1991).

## II. Motions Related to Documentary Exhibits

### A. Admissibility of Duplicates and Photocopies

Copies of reproductions or reprints are admissible to the same extent as originals whether the original is in existence or not.  28 U.S.C. § 1732(b).  Therefore, such reproductions are admissible in the same manner as the originals.  United States v. Carroll, 860 F.2d 500, 507 (1st Cir. 1988) (microfilm of checks is admissible); United States v. Saputski, 496 F.2d 140, 141 (9th Cir. 1974); Williams v. United States, 404 F.2d 1372, 1373 (5th Cir. 1968).

The Government intends to admit documents as evidence which are duplicates and photocopies of original documents.  Rules 1001 and 1004 govern the admissibility of duplicate documents.  Rule 1004 of the Federal Rules of Evidence states, "[a] duplicate is admissible to the same extent as an original unless (1) genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

### B. Summary Exhibits

Under Federal Rule of Evidence 1006, a summary exhibit may be admitted into evidence.  A summary exhibit may be admitted, though the underlying documents upon which it is based may not be complete or otherwise imperfect, and where a summary exhibit is admitted, the underlying documents need not be admitted into evidence.  United States v. Milkiewicz, 470 F.3d 390, 399-401 (1st Cir. 2006).  See also Fed.R.Evid. 611(a) (authorizing court to "exercise reasonable control over the mode . . . of . . . presenting the evidence so as to (1) make the ... presentation effective for the ascertainment of the truth, [and] (2) avoid needless consumption of time.").

In this case, the Government intends to offer numerous summaries of voluminous account records from the International Brotherhood of Boilermakers, The Bank of Labor, American Express, and ADP.  These exhibits are admissible summary exhibits under F.R.E. 1006 as opposed to pedagogical devices since they are "primary-evidence summaries" of other voluminous documents.[3]

### III. Motions Related to Conduct of the Trial

#### A. Agent At Counsel Table

The Government requests permission to allow Special Agent Scott Macke of the FBI, or an alternative should Mr. Macke be unavailable, to sit at counsel table throughout the trial.  Fed. R. Evid. 615 mandates, upon motion, the sequestration of the witnesses in any case.  Excluded from this rule, however, is "an officer or employee of a party which is not a natural person designated as its representative by its attorney."  Fed. R. Evid. 615(2).  A government investigative agent involved in a criminal prosecution, such as Special Agent Macke, falls squarely within this exception.  United States v. Gonzalez, 918 F.2d 1129, 1137-38 (3d Cir. 1990) (noting that "[m]any circuits recognize a 'case agent' exception to the typical rule of sequestration," based on Rule 615); United States v. Parodi, 703 F.2d 768, 773 (4th Cir. 1983) ("[i]t has been authoritatively determined, based on the legislative history of the Rule, that a government investigative agent involved in a criminal prosecution . . . is within this exception.").

This practice is recognized and permitted in this circuit.  See United States v. Williams, 991 F.2d 806 (10th Cir. 1993).

---

[3]  Both the summary exhibits, and the records underlying records them, will be made available to Defendants via the discovery process and provision of proposed exhibits pursuant to the Court's scheduling order dated February 14, 2025.

**B. <u>Submission of the Indictment to the Jury</u>**

A trial judge has the discretion to submit the indictment to the jury provided that limiting instructions are given to the effect that the indictment is not to be considered evidence.   <u>United States v. Roy</u>, 473 F.3d 1232, 1237-38 (D.C. Cir. 2007); <u>United States v. McFarlane</u>, 491 F.3d 53, 59 (1st Cir. 2007) ("'subject to a proper covering instruction, whether the indictment should be given to the jury for use during its deliberations is within the discretion of the trial court.'") (<u>quoting</u> <u>United States v. Medina</u>, 761 F.2d 12, 21-22 (1st Cir. 1985)).

Given the complexity of charges involved in the case, the Government asks that the Court submit the Indictment to the jury with a limiting charge that it does not constitute evidence of any defendant's guilt.

### IV. <u>Requests for Reciprocal Discovery</u>

To date, the Government has endeavored to provide all required discovery in this case and to respond to Defendants' discovery concerns promptly.   In turn, none of the defendants has provided the Government with any discovery items in this case.   A request for reciprocal discovery was made in the initial Rule 16 discovery letter to Defendants, starting in October 2024.

Therefore, the Government hereby requests this Court order Defendants to produce in discovery any documents he or she may introduce at trial, reports of any examinations or tests, and any statements of potential witnesses.

## VI. <u>Conclusion</u>

For the foregoing reasons, the Government requests that the Court enter an order granting

its motion in limine and for reciprocal discovery.

Respectfully Submitted,

RYAN A. KRIEGSHAUSER
United States Attorney

By:  /s/Faiza H. Alhambra
FAIZA H. ALHAMBRA
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
913-551-6904
913-551-6541 (fax)
Faiza.Alhambra@usdoj.gov
Kan. S. Ct. No. 24525

By:  /s/ Jabari B. Wamble
JABARI WAMBLE
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
913-551-6730
913-551-6541 (fax)
Jabari.wamble@usddoj.gov
Kan. S. Ct. No. 22730

By: /s/ Vincent Falvo
VINCENT FALVO
Trial Attorney
Violent Crime and Racketeering Section
United States Department of Justice
1301 New York Avenue, NW, Room 753
Washington, D.C. 20530
(202) 353-9384
vincent.falvo@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel for defendant.

*s/ Faiza H. Alhambra*
Faiza H. Alhambra
Assistant United States Attorney

17