**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **Plaintiff,** | |
| **v.** | **Case No. 2:24-cr-20070-DDC-TJJ** |
| **NEWTON JONES,** **WILLIAM CREEDEN,** **KATERYNA (KATE) JONES, and** **LAWRENCE McMANAMON** | |
| **Defendants.** | |

**GOVERNMENT'S PROPOSED JURY INSTRUCTIONS**

Comes now the plaintiff, United States of America, by and through Ryan A. Kriegshauser,

United States Attorney for the District of Kansas, and Faiza H. Alhambra, Assistant United States

Attorney, and hereby submits the attached proposed instructions.

Respectfully submitted,

RYAN A. KRIEGSHAUSER
United States Attorney

s/ Faiza H. Alhambra
Faiza H. Alhambra, Kan. #24525
Assistant United States Attorney
500 State Ave., Suite 360
Kansas City, KS 66171
Tele: (913) 551-6904
Fax: (913) 551-6541
e-mail: Faiza.alhambra@usdoj.gov

1

**Government's Proposed Instruction No. 01**

**<u>Introduction to Final Instructions</u>**

Members of the Jury: In any jury trial there are, in effect, two judges. I am one of the judges, you are the other.  I am the judge of the law. You, as jurors, are the judges of the facts. I presided over the trial and decided what evidence was proper for your consideration. It is also my duty at the end of the trial to explain to you the rules of law that you must follow and apply in arriving at your verdict.

In explaining the rules of law that you must follow, first, I will give you some general instructions which apply in every criminal case—for example, instructions about burden of proof and insights that may help you to judge the believability of witnesses. Then I will give you some specific rules of law that apply to this particular case and, finally, I will explain the procedures you should follow in your deliberations, and the possible verdicts you may return. These instructions will be given to you for use in the jury room, so you need not take notes.

**<u>Authority</u>**

Tenth Circuit Federal Pattern Jury Instructions (Criminal) 1.03 (2025 ed.).

**Government's Proposed Instruction No. 02**

**Duty to Follow Instructions**

You, as jurors, are the judges of the facts. But in determining what actually happened—that is, in reaching your decision as to the facts—it is your sworn duty to follow all of the rules of law as I explain them to you.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences. However, you should not read into these instructions, or anything else I may have said or done, any suggestion as to what your verdict should be. That is entirely up to you.

It is also your duty to base your verdict solely upon the evidence, without prejudice or sympathy. That was the promise you made and the oath you took.

**Authority**

Tenth Circuit Federal Pattern Jury Instructions (Criminal) 1.04 (2025 ed.).

**Government's Proposed Instruction No. 03**

**<u>Presumption of Innocence—Burden of Proof—Reasonable Doubt</u>**

The government has the burden of proving the defendant guilty beyond a reasonable doubt. The law does not require a defendant to prove his innocence or produce any evidence at all. The government has the burden of proving the defendant guilty beyond a reasonable doubt, and if it fails to do so, you must find the defendant not guilty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. It is only required that the government's proof exclude any "reasonable doubt" concerning the defendant's guilt. A reasonable doubt is a doubt based on reason and common sense after careful and impartial consideration of all the evidence in the case. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

**<u>Authority</u>**

Tenth Circuit Federal Pattern Jury Instructions (Criminal) 1.05 (2025 ed.).

**Government's Proposed Instruction No. 04**

**<u>Evidence—Defined</u>**

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, including certain charts and summaries, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

During the trial, I did not let you hear the answers to some of the questions that the lawyers asked I also ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

**<u>Authority</u>**

Tenth Circuit Federal Pattern Jury Instructions (Criminal) 1.06 & 1.41 (2025 ed.) (noting with approval <u>United States v. Samaniego</u>, 187 F.3d 1222, 1223 (10th Cir. 1999) & <u>United States v. Osum</u>, 943 F.3d 1394, 1405 n. 9 (5th Cir.1991)).  <u>See also</u> Fed. R. Evid. 1006.

**Government's Proposed Instruction No. 05**

**Evidence—Direct and Circumstantial—Inferences**

There are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a chain of facts which point to the existence or non-existence of certain other facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence. The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience. An inference is a conclusion that reason and common sense may lead you to draw from facts which have been proved.

By permitting such reasonable inferences, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in this case.

**Authority**

Tenth Circuit Federal Pattern Jury Instructions (Criminal) 1.07 (2025 ed.).

**Government's Proposed Instruction No. 06**

**Credibility of Witnesses**

I remind you that it is your job to decide whether the government has proved the guilt of the defendant beyond a reasonable doubt. In doing so, you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony.  An important part of your job will be making judgments about the testimony of the witnesses [including any defendants] who testified in this case. You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was. In deciding the question of credibility, remember to use your common sense, your good judgment, and your experience.

In deciding what to believe, you may consider a number of factors:

(1) The opportunity and ability of the witness to see or hear or know the things about which the witness testified;

(2) The quality of the witness' knowledge, understanding, and memory;

(3) The witness' appearance, behavior, and manner while testifying;

(4) Whether the witness has an interest in the outcome of the case or any motive, bias, or prejudice;

(5) Any relation the witness may have with a party in the case and any effect the verdict may have on the witness;

(6) Whether the witness said or wrote anything before trial that was different from the witness' testimony in court;

(7) Whether the witness' testimony was consistent or inconsistent with other evidence that you believe; and

(8) Any other factors that bear on whether the witness should be believed.

7

Inconsistencies or discrepancies in a witness' testimony or between the testimony of different witnesses may or may not cause you to disbelieve a witness' testimony. Two or more persons witnessing an event may simply see or hear it differently. Mistaken recollection, like failure to recall, is a common human experience. In weighing the effect of an inconsistency, you should also consider whether it was about a matter of importance or an insignificant detail. You should also consider whether the inconsistency was innocent or intentional.

After you make your own judgment about the believability of a witness, you can then attach to that witness' testimony the importance or weight that you think it deserves. The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testified or the quantity of evidence that was presented. What is more important than numbers or quantity is how believable the witnesses were, and how much weight you think their testimony deserves. [The testimony of the defendant should be weighed and his credibility evaluated in the same way as that of any other witness.]

### Authority

Modeled on Tenth Circuit Federal Pattern Jury Instructions (Criminal) 1.08 (2025 ed.); Third Circuit Model Jury Instructions (Criminal) 3.04 (2025 ed.).

**Government's Proposed Instruction No. 07**

**<mark>Non-Testifying Defendant</mark>**

<mark>None</mark> of the Defendants testified in this case.  I remind you that you cannot consider his or her decision not to testify as evidence of guilt. You must understand that the Constitution of the United States grants to a defendant the right to remain silent. That means the right not to testify. That is a constitutional right in this country, it is very carefully guarded, and you must not presume or infer guilt from the fact that a defendant does not take the witness stand and testify or call any witnesses.

**Authority**

Tenth Circuit Federal Pattern Jury Instructions (Criminal) 1.08.1 (2025 ed.).

**Government's Proposed Instruction No. 08**

**<mark>Impeachment by Prior Inconsistencies</mark>**

You have heard the testimony of [name of witness].  You have also heard that, before this trial, he made a statement that may be different from his testimony here in court.

This earlier statement was brought to your attention only to help you decide how believable his testimony in this trial was. You cannot use it as proof of anything else. You can only use it as one way of evaluating his testimony here in court.

**Authority**

Tenth Circuit Federal Pattern Jury Instructions (Criminal) 1.23 (2025 ed.).

**Government's Proposed Instruction No. 09**

**<mark>Impeachment by Evidence of Untruthful Character</mark>**

You have heard the testimony of <mark>[name of witness]</mark>, who was a witness in the [<mark>government's</mark>] [<mark>defense's</mark>] case. You also heard testimony from others concerning [their opinion about his character for truth-telling] [his reputation, in the community where he lives, for telling the truth]. It is up to you to decide from what you heard here whether [name of witness] was telling the truth in this trial. In deciding this, you should bear in mind the testimony concerning his [reputation for] truthfulness.

**Authority**

Tenth Circuit Federal Pattern Jury Instructions (Criminal) 1.26 (2025 ed.).

**Government's Proposed Instruction No. 10**

**<u>Accomplice—Co-Defendant—Plea Agreement</u>**

The government called as one of its witnesses an alleged accomplice, who was named as a co-defendant in the indictment. The government has entered into a plea agreement with the co-defendant, providing *[e.g.,* for the dismissal of some charges and a recommendation of a lesser sentence than the co-defendant would otherwise likely receive]. Plea bargaining is lawful and proper, and the rules of this court expressly provide for it.

An alleged accomplice, including one who has entered into a plea agreement with the government, is not prohibited from testifying. On the contrary, the testimony of an alleged accomplice may, by itself, support a guilty verdict. You should receive this type of testimony with caution and weigh it with great care. The fact that an accomplice has entered a guilty plea to the offense charged is not evidence of the guilt of any other person.

**<u>Authority</u>**

Modeled on Tenth Circuit Federal Pattern Jury Instructions (Criminal) 1.29 (2025 ed.).

**Government's Proposed Instruction No. 11**

**<u>Expert Witness</u>**

During the trial you heard the testimony of [name witness] who expressed opinions concerning [explain topic of testimony].  In some cases, such as this one, scientific, technical, or other specialized knowledge may assist the jury in understanding the evidence or in determining a fact in issue.  A witness who has knowledge, skill, experience, training or education, may testify and state an opinion concerning such matters.

You are not required to accept such an opinion. You should consider opinion testimony just as you consider other testimony in this trial. Give opinion testimony as much weight as you think it deserves, considering the education and experience of the witness, the soundness of the reasons given for the opinion, and other evidence in the trial.

**<u>Authority</u>**

Tenth Circuit Federal Pattern Jury Instructions (Criminal) 1.31 (2025 ed.).

**Government's Proposed Instruction No. 12**

## On or About

You will note that the indictment charges that the crimes were committed on or about certain dates. The government must prove beyond a reasonable doubt that the defendant committed the crimes reasonably near the alleged dates.

## Authority

Tenth Circuit Federal Pattern Jury Instructions (Criminal) 1.18 (2025 ed.).

**Government's Proposed Instruction No. 13**

**Caution—Consider Only Crime Charged**

You are here to decide whether the government has proved beyond a reasonable doubt that the defendant is guilty of the crimes charged. The defendant is not on trial for any act, conduct, or crime not charged in the indictment.

It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for the crimes charged. The fact that another person also may be guilty is no defense to a criminal charge.

The question of the possible guilt of others should not enter your thinking as you decide whether the defendant has been proved guilty of the crimes charged.

**Authority**

Tenth Circuit Federal Pattern Jury Instructions (Criminal) 1.33 (2025 ed.).

**Government's Proposed Instruction No. 14**

**Caution—Punishment**

If you find any defendant guilty, it will be my duty to decide what the punishment will be. You should not discuss or consider the possible punishment in any way while deciding your verdict.

**<u>Authority</u>**

Tenth Circuit Federal Pattern Jury Instructions (Criminal) 1.34 (2025 ed.).

**Government's Proposed Instruction No. 15**

**<u>Summaries and Charts</u>**

Certain charts and summaries have been shown to you to help explain the evidence in this case. Their only purpose is to help explain the evidence. These charts and summaries are not evidence or proof of any facts. However, as explained in Instruction No. 04, I have allowed certain charts and summaries into evidence. As I explained above, those charts or summaries are evidence in this case.

**<u>Authority</u>**

Tenth Circuit Federal Pattern Jury Instructions (Criminal) 1.41 (2025 ed.)(noting with approval <u>United States v. Samaniego</u>, 187 F.3d 1222, 1223 (10th Cir. 1999) & <u>United States v.</u> Osum, 943 F.3d 1394, 1405 n. 9 (5th Cir.1991)).  <u>See also</u> Fed. R. Evid. 1006.

**Government's Proposed Instruction No. 16**

**<u>Knowingly—Defined</u>**

When the word "knowingly" is used in these instructions, it means that the act was done voluntarily and intentionally, and not because of mistake or accident. The government is not required to prove a defendant knew these acts or omissions were unlawful. You may consider evidence of a defendant's words, acts, or omissions, along with all the over evidence in deciding whether defendant acted knowingly.

**<u>Authority</u>**

Modified Tenth Circuit Federal Pattern Jury Instructions (Criminal) 1.37 (2025 ed.); <u>United States v. Harris</u>, 695 F.3d 1125 (10th Cir. 2012).

**Government's Proposed Instruction No. 17**

**<u>Conspiracy</u>**

In Count One of the indictment, Defendants are accused of having been a member of a conspiracy to violate certain federal laws.  I will now explain to you the law on conspiracy.  I will then explain to you the law on each individual count in the indictment.

A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose. It is a kind of "partnership in criminal purposes" in which each member becomes the agent or partner of every other member.  The evidence may show that some of the persons involved in the alleged conspiracy are not on trial. This does not matter. There is no requirement that all members of a conspiracy be charged or tried together in one proceeding.

The evidence need not show that the members entered into an express or formal agreement. Nor does the law require proof that the members agreed on all the details. But the evidence must show that the members of the alleged conspiracy came to a mutual understanding to try to accomplish a common and unlawful plan.

If you are convinced that the charged conspiracy existed, then you must next determine whether the defendant was a member of that conspiracy, that is, whether the defendant knew at least the essential goals of the conspiracy and voluntarily chose to be part of it. The law does not require proof that the defendant knew all the other members of the conspiracy or knew all the details about how activities were to be carried out.  A person may belong to a conspiracy for a brief period of time or play a minor role.  On the other hand, proof is not sufficient if it merely shows that the defendant knew about the existence of the conspiracy or was associated with members of the conspiracy.  Rather, the evidence must show the defendant knowingly joined the conspiracy with the intent to advance its purposes.

19

You are also required to find that interdependence existed among the members of the conspiracy. This means that the members intended to act for their shared mutual benefit. To satisfy this element, you must conclude that the defendant participated in a shared criminal purpose and that his actions constituted an essential and integral step toward the realization of that purpose.

### **Authority**

Modified Tenth Circuit Federal Pattern Jury Instructions (Criminal) 2.19 & 2.87 (2025 ed.); United States v. Harris, 695 F.3d 1125, 1131-32 (10th Cir. 2012).

**Government's Proposed Instruction No. 18**

**<u>Prejudice from the Word "Racketeering"</u>**

The word "racketeering" has certain implications in our society. Use of that term in this statute and in this courtroom should not be regarded as having anything to do with your determination of whether the guilt of this defendant has been proven. The term is only a term used by Congress to describe the statute.

**<u>Authority</u>**

Tenth Circuit Federal Pattern Jury Instructions (Criminal) 2.74.1 (2025 ed.).

**Government's Proposed Instruction No. 19**

**Count One - RICO Conspiracy (18 U.S.C. § 1962(d))**

In Count One, Defendants are charged with conspiring to violate the Racketeer Influenced Corrupt Organization Act, Title 18 United States Code, Section 1962(d) ("RICO"). The essence of a RICO conspiracy offense is the *agreement* to commit a substantive RICO offense.

It is not necessary, in order to convict a defendant of a charge of conspiracy, that the objectives or purposes of the conspiracy, whatever they may be, have been achieved or accomplished. Ultimate success or failure of the conspiracy is not important.

Rather, the conspiratorial agreement to commit a RICO offense is the essential aspect of a RICO conspiracy offense.

The government need not prove that the alleged enterprise was actually established, that a conspirator was actually associated with the enterprise, or that the enterprise was actually engaged in, or its activities actually affected, interstate or foreign commerce.

The agreement to commit a RICO offense is the essence of a RICO conspiracy offense, so the government need only prove that if the conspiracy offense were completed as contemplated, the enterprise would be established, that a conspirator (who could be, but need not be, the defendant himself) would be associated with the enterprise, and that the enterprise would be engaged in, or its activities would affect, interstate commerce.

A defendant may be convicted of a RICO conspiracy offense even if he did not personally participate in the operation or management of the enterprise, if the evidence establishes that such defendant knowingly agreed to facilitate a scheme which, if completed, would constitute a RICO violation involving at least one conspirator who would participate in the operation or management of the enterprise.

A defendant has entered into an agreement to violate RICO if the government has proven, beyond a reasonable doubt, that the defendant agreed with at least one other co-conspirator that at least two racketeering acts of the type or types of racketeering activity listed in the Indictment would be committed by a member of the conspiracy in the conduct of the affairs of the enterprise.

The government is not required to prove that the defendant personally committed two racketeering acts, or that he agreed to personally commit two racketeering acts.

Rather, it is sufficient if the government proves beyond a reasonable doubt that the defendant agreed to participate in the enterprise with the knowledge and intent that at least one member of the RICO conspiracy (who could be, but need not be, the defendant himself) would commit at least two racketeering acts in the conduct of affairs of the enterprise.

Furthermore, to establish the requisite conspiratorial agreement, the government is not required to prove that each co-conspirator explicitly agreed with every other co-conspirator to violate RICO, knew all his fellow conspirators, or was aware of all of the details of the conspiracy. Rather, to establish sufficient knowledge, it is only required that the defendant knew the general nature and common purpose of the conspiracy and that the conspiracy extended beyond his individual role.

Moreover, the elements of a RICO conspiracy, such as the conspiratorial agreement, the defendant's knowledge of it, and the defendant's participation in the conspiracy, may be inferred from circumstantial evidence. For example, when the evidence establishes that the defendant and at least one other conspirator committed several racketeering acts in furtherance of the charged enterprise's affairs, you may infer the existence of the requisite agreement to commit a RICO offense. However, you must determine whether, based on the entirety of the evidence, the government has proven that the defendant entered into the required conspiratorial agreement.

23

Additionally, it is not necessary that the government prove that a particular defendant was a member of the conspiracy from its beginning.  Different persons may become members of the conspiracy at different times.

If you find that there is a conspiracy, you may consider the acts and statements of any other member of the conspiracy during and in the furtherance of the conspiracy as evidence against a defendant whom you have found to be a member of it. When persons enter into a conspiracy, they become agents for each other, so that the act or statement of one conspirator during the existence of, and in furtherance of, the conspiracy is considered the act or statement of all the other conspirators and is evidence against them all.

Finally, a defendant may be convicted as a conspirator even though he or she plays a minor role in the conspiracy, provided that you find beyond a reasonable doubt that the conspiracy existed and that the defendant knowingly participated in the conspiracy with the intent to accomplish its objectives or assist other conspirators in accomplishing its objectives.

**Authority**

Salinas v. United States, 522 U.S. 52, 62-65 (1997); Iannelli v United States, 420 U.S. 770, 777 (1975); United States v. Kamahele, 748 F.3d 984, 1002-1007 (10th Cir. 2014); United States v. Harris, 695 F.3d 1125, 1131-32 (10th Cir. 2012); United States v. Randall, 661 F.3d 1292, 1299 (10th Cir. 2011) (holding in a RICO conspiracy Jury only need to be unanimous as to type of predicate racketeering acts, not as to the specific racketeering acts themselves); United States v. Hutchinson, 573 F.3d 1011, 1020-21 (10th Cir. 2009)).  See also United States v. Lawson, 535 F.3d 434, 445 (6th Cir. 2008); United States v. Driver, 535 F.3d 424, 432 (6th Cir. 2008); United States v. Fowler, 535 F.3d 408, 420 (6th Cir. 2008); United States v. Saadey, 393 F.3d 669, 676 (6th Cir. 2005); United States v. Ashman, 979 F.2d 469, 492 (7th Cir. 1992); United States v. Crockett, 979 F.2d 1204, 1208-09 (7th Cir. 1992); United States v. Carlock, 806 F.2d 535, 547 (5th Cir. 1986); United States v. Melton, 689 F.2d 679, 683 (7th Cir. 1982); United States v. Sutherland, 656 F.2d 1181, 1187 n.4 (5th Cir. 1981); United States v. Elliott, 571 F.2d 880, 903 (5th Cir. 1978).

**Government's Proposed Instruction No. 20**

**Count One - RICO Conspiracy (18 U.S.C. § 1962(d))**

The defendants are charged in Count One with a violation of 18 U.S.C. § 1962(d) ("RICO"). This law makes it a crime to conspire to conduct and participate in the conduct of the affairs of an enterprise through a pattern of racketeering activity--commonly known as a RICO Conspiracy. Specifically, Count One alleges that within the District of Kansas, and elsewhere, from at least on or about January 2009 and continuing to on or about August 2024, Defendants, violated 18 U.S.C. § 1962(d) by conspiring with each other and other persons known and unknown, each being a person employed by and associated with the Jones Enterprise, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, consisting of multiple acts indictable under the following provisions of federal law:

(1) Title 29, United States Code, section 501(c), relating to embezzlement from union funds,

(2) Title 18, United States Code, section 1343, relating to wire fraud;

(3) Title 18, United States Code, section 664 relating to embezzlement from pension and welfare funds.

It is also alleged in Count One that as a part of this conspiracy, each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

**Authority**

Modified Tenth Circuit Federal Pattern Jury Instructions 2.74 (2025 ed.); 3-52 Modern Federal Jury Instructions-Criminal, ¶ 52.05 (2017 ed.); 2B O'Malley, Grenig, and Lee, Federal Jury Practice and Instructions § 56:11 (6th ed. 2013); 18 U.S.C. § 1962(c)&(d); Boyle v. United States, 556 U.S. 938, 949-50 (2009); Salinas v. United States, 522 U.S. 52, 61 (1997); Sedima, S.P.R.L.

v. Imrex, *Co.*, 473 U.S. 479, 496-97 (1985); United States v. Kamahele, 748 F.3d 984, 1002-1007 (10th Cir. 2014); United States v. Harris, 695 F.3d 1125, 1131-32 (10th Cir. 2012); United States v. Hutchinson, 573 F.3d 1011, 1020-21 (10th Cir. 2009) (i.e., rejecting need for formal structure of an enterprise, and delineating 3-part purpose, relationship, and longevity requirements).

**Government's Proposed Instruction No. 21**

**Count One - RICO Conspiracy Elements (18 U.S.C. § 1962(d))**

In order to sustain its burden of proof for the crime of conspiring to conduct and participate in the conduct in the affairs of an enterprise through a pattern of racketeering activity as charged in Count One of the Indictment, the government must prove the following five elements beyond a reasonable doubt:

**One:** The existence of an enterprise or that an enterprise would exist;

**Two:** The enterprise was or would be engaged in, or its activities affected or would affect, interstate or foreign commerce;

**Three:** A conspirator was or would be employed by or associated with the enterprise;

**Four:** A conspirator did or would conduct or participate in, either directly or indirectly, the conduct of the affairs of the enterprise; and

**Five:** A conspirator did or would knowingly participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as described in the indictment; that is, a conspirator did or would commit at least two acts of racketeering activity.

You are also required to find that interdependence existed among the members of the conspiracy. This means that the members intended to act for their shared mutual benefit. Interdependence exists when To satisfy this element, you must conclude that the defendant participated in a shared criminal purpose and that his actions constituted an essential and integral step toward realization of the conspiracy's purpose.

I will next instruct you on the law applicable to each of these five elements of RICO Conspiracy.

**Authority**

Seventh Circuit Pattern Jury Instructions (1999 ed.); Sedima, S.P.R.L. v. Imrex, Co., 473 U.S. 479, 496-97 (1985); United States v. Hutchinson, 573 F.3d 1011, 1021 (10th Cir. 2009)); United States

v. Kamahele, 748 F.3d 984, 1002-1007 (10th Cir. 2014).  See United States v. Heckard, 238 F.3d 1222, 1231–32 (10th Cir. 2001); United States v. Martinez, 543 F. Supp. 3d 1209, 1217 (D.N.M. 2021) (explaining interdependence element).  See also United States v. Godwin, 765 F.3d 1306, 1320 (11th Cir. 2014); United States v. Nieto, 721 F.3d 357, 365-66 (5th Cir. 2013); United States v. Bergrin, 650 F.3d 257, 265-268 (3d Cir. 2011); United States v. Brandao, 539 F.3d 44, 50-51(1st. Cir. 2008); United States v. Fowler, 535 F.3d 408, 418 (6th Cir. 2008); United States v. Browne, 505 F.3d 1229, 1257 (11th Cir. 2007); United States v. Nascimento, 491 F.3d 25, 48 (1st Cir. 2007); United States v. Delgado, 401 F.3d 290, 297 (5th Cir. 2005); United States v. Pipkins, 378 F.3d 1281, 1288 (11th Cir. 2004); United States v. Marino, 277 F.3d 11, 32 (1st. Cir. 2002); United States v. Allen, 155 F.3d 35, 40 (2d. Cir. 1998); United States v. Posada-Rios, 158 F.3d 832, 857-60 (5th Cir. 1998); United States v. Hoyle, 122 F.3d 48, 50 (D.C. Cir. 1997); United States v. Starrett, 55 F.3d 1525, 1541 (11th Cir. 1995); United States v. Console, 13 F.3d 641, 652-53 (3d Cir. 1993).

**Government's Proposed Instruction No. 22**

**<u>The First Element of RICO Conspiracy:</u>**
**<u>Definition of an "Enterprise" (Association-in-Fact)</u>**

The government has charged in the indictment that the defendant was a member of an enterprise known as the Jones Enterprise, an association whose members and associates engaged in theft from a labor organization, wire fraud, and embezzlement from pension and welfare funds.

As used in these instructions, the term "enterprise" "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

The term "enterprise" as used in these instructions may include a group of individuals associated in fact, even though this association is not recognized as a legal entity. Thus, an enterprise need not be a formal business entity such as a corporation, but may be merely an informal association of individuals. A group or association of people can be an "enterprise" if these individuals have "associated together for a common purpose of engaging in a course of conduct."

The government must prove an association-in-fact enterprise existed or would exist by evidence of an ongoing organization, formal or informal, and by evidence that the various associates functioned as a continuing unit. The enterprise must have the three following structural features:

(1)     a purpose;
(2)     relationships among those associated with the enterprise; and
(3)     longevity sufficient to permit these associates to pursue the enterprise's purpose.

It is not necessary that an enterprise have any particular or formal structure, but it must have sufficient organization that its members did or would function and operate in a coordinated manner in order to carry out the alleged common purpose or purposes of the enterprise. Such a group need not have a hierarchical structure or a "chain of command"; decisions may be made on

29

an *ad hoc* basis and by any number of methods—by majority vote, consensus, a show of strength, etc.  Members of the group need not have fixed roles; different members may perform different roles at different times.  The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies.

While the group must or would function as a continuing unit and remain in existence long enough to pursue a course of conduct, you may nonetheless find that the enterprise element is satisfied by finding a group whose associates engaged in spurts of activity punctuated by periods of quiescence or inactivity.

Thus, an enterprise need not have role differentiation, a unique *modus operandi*, a chain of command, professionalism and sophistication of organization, diversity and complexity of crimes, uncharged or additional crimes aside from predicate acts, an internal discipline mechanism, or an enterprise name. Moreover, an enterprise is not required to be "business-like" in its form or function, and it may, but need not, have an economic or profit-seeking motive.  Indeed, RICO is not limited to groups whose crimes are sophisticated, diverse, complex, or unique.

Such an association of individuals may retain its status as an "enterprise" even though membership of the association changes over time by adding or losing individuals during the course of its existence. The existence of the enterprise continues even if there is a gap or interruption of the enterprise's racketeering activities.

Although whether an enterprise existed or would exist is a distinct element that must be proved by the government, it is not necessary to find that the enterprise had some function wholly unrelated to the racketeering activity.  Common sense dictates that the existence of an enterprise is oftentimes more readily proven by what it does rather than by an abstract analysis of its structure. Thus, the evidence used to prove the pattern of racketeering and the enterprise may coalesce. Therefore, you may consider proof of the racketeering acts to determine  whether the evidence

30

establishes the existence of an enterprise, and further, you may infer the existence of an enterprise from evidence of the pattern of racketeering activity.

The term enterprise includes legitimate and illegitimate enterprises.

The government is not required to prove each and every allegation about the enterprise or the manner in which the enterprise operated or would operate.

## **Authority**

18 U.S.C. § 1961(4); Modified Tenth Circuit Federal Pattern Jury Instructions (Criminal) 2.74.3 (2025 ed.); 2B O'Malley, Grenig, and Lee, Federal Jury Practice and Instructions § 56.04 (6th ed. 2013); Seventh Circuit Pattern Jury Instructions 320 (1999 ed.); Black's Law Dictionary 893-94 (6th ed. 1990); Boyle v. United States, 556 U.S. 938, 129 S. Ct. 2237 (2009); Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 164 (2001); Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 259 (1994); United States v. Turkette, 452 U.S. 576, 583 (1981); United States v. Harris, 695 F.3d 1125, 1135-36 (10th Cir. 2012); United States v. Kamahele, 748 F.3d 984, 1002-1007 (10th Cir. 2014); United States v. Hutchinson, 573 F.3d 1011, 1022 (10th Cir. 2009) (citing Boyle v. United States, 556 U.S. 938 (2009)); United States v. Payne, 591 F.3d 46, 60 (2d Cir. 2010); United States v. Perholtz, 842 F.2d 343, 352-54, 362-63 (D.C. Cir. 1988).

**Government's Proposed Instruction No. 23**

**The Second Element of RICO Conspiracy:
Enterprise's Nexus to Interstate or Foreign Commerce**

The second element the government must prove beyond a reasonable doubt is that the enterprise was or would be engaged in, or its activities affected or would affect, interstate or foreign commerce.

Interstate commerce means trade or conducting business or travel between one state and another state or the District of Columbia; and foreign commerce means such trade, business or travel between the United States and another country. Therefore, interstate and foreign commerce may include the movement of money, goods, services or persons from one state to another state or the District of Columbia or between the United States and another country. This may include, among other matters, the purchase or sale of goods or supplies from outside the United States or the state in which the enterprise was located, the use of interstate or international mail or wire facilities, or the causing of any of those things.

An enterprise is generally "engaged in commerce" when it is itself directly engaged in the production, distribution or acquisition of goods or services in interstate commerce.

If you find that the evidence is sufficient to prove that an enterprise was or would be "engaged in" interstate or foreign commerce, the required nexus to interstate or foreign commerce is established, and therefore the government is not required to prove the alternative that the activities of the enterprise affected or would affect interstate or foreign commerce.

Regarding that alternative method of satisfying this element, to establish the requisite effect on interstate or foreign commerce, the government is not required to prove a significant or substantial effect on interstate or foreign commerce. Rather, a minimal effect on interstate or foreign commerce is sufficient.

It is not necessary for the government to prove that individual racketeering acts themselves affected interstate or foreign commerce; rather, it is the enterprise and its activities considered in their entirety that must be shown to have that effect.  On the other hand, this effect on interstate or foreign commerce may be established through the effect caused by the individual racketeering acts.

Moreover, it is not necessary for the government to prove that the defendant knew that an enterprise affected or would affect interstate or foreign commerce, that the defendant intended to affect interstate or foreign commerce, or that each defendant was or would be engaged in, or his activities affected or would affect, interstate or foreign commerce.

The government contends that the enterprise in this case was or would be engaged in, or its activities affected or would affect, interstate or foreign commerce, by, for example, executing collective bargaining agreements with employers in United States and Canada engaged in interstate and foreign commerce.

To satisfy this element, the government need only prove beyond a reasonable doubt either that the activities of the enterprise considered in their entirety had or would have some minimal effect on interstate or foreign commerce, or that the enterprise was or would be "engaged in" interstate or foreign commerce.

## **Authority**

Modified Tenth Circuit Federal Pattern Jury Instructions (Criminal) 2.74.4 (2025 ed.); Seventh Circuit Pattern Jury Instructions 324 (1999 ed.); 2B O'Malley, Grenig, and Lee, Federal Jury Practice and Instructions § 56.05 (6th ed. 2013); United States v. Robertson, 514 U.S. 669, 671-672 (1995); United States v. Harris, 695 F.3d 1125, 1131-32 (10th Cir. 2012); United States v. Kamahele, 748 F.3d 984, 1002-1007 (10th Cir. 2014); United States v. Smith, 413 F.3d 1253, 1272-73 (10th Cir. 2005) (overruled on other grounds by United States v. Hutchinson, 573 F.3d 1011, 1022 (10th Cir. 2009)).

**Government's Proposed Instruction No. 24**

**The Third Element of RICO Conspiracy:**
**Employed by Associated With The Enterprise**

The third element the government must prove beyond a reasonable doubt is that the defendant agreed that a conspirator (which may include the defendant himself) was or would be "employed by" or "associated with" the enterprise about which I have already instructed you.

"Associated with" should be given its plain meaning. As stated in Webster's Third New International Dictionary (1971 ed.), to "associate" means "to join, often in a loose relationship as a partner, fellow worker, colleague, friend, companion or ally . . . to join or connect with one another." Therefore, a person is "associated with" an enterprise when, for example, he joins with other members of the enterprise and he knowingly aids or furthers the activities of the enterprise, or he conducts business with or through the enterprise.

It is not required that the defendant agreed that any particular conspirator was or would be "employed by" or "associated with" the enterprise for the entire time the enterprise existed. The government also is not required to prove that the defendant agree that any particular conspirator had a formal position in the enterprise, or participated in all the activities of the enterprise, or had full knowledge of all the activities of the enterprise or knew about the participation of all the other members of the enterprise. Rather, it is sufficient that the government prove beyond a reasonable doubt that at some time during the existence of the enterprise as alleged in the Indictment, a conspirator was or would be "employed by" or "associated with" the enterprise within the meaning of those terms as I have just explained; that he knew or would know of the general nature of the enterprise; and that he knew or would know that the enterprise extended beyond his own role in

34

the enterprise.

## **Authority**

Federal Jury Practice and Instructions, Pattern Crim. Jury Instr. 10th Cir. 2.76.4 (2011); Boyle v. United States, 556 U.S. 938, 946-47 (2009); Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161-63 (2001); United States v. Hutchinson, 573 F.3d 1011, 1020-22 (10th Cir. 2009).

**Government's Proposed Instruction No. 25**

**The Fourth Element of RICO Conspiracy:
To Conduct, or Participate in the Conduct of, the Affairs of the Enterprise**

The fourth element the government must prove beyond a reasonable doubt is that the defendant agreed that a conspirator would conduct, or participate in the conduct of, the affairs of the enterprise. A defendant may be convicted of a RICO conspiracy offense even if he did not personally participate in the operation or management of the enterprise when the evidence establishes that the defendant knowingly agreed to facilitate a plan which, if completed, would involve at least one conspirator who would participate in the operation or management of the enterprise.

Proof of operation and management may include evidence that the defendant agreed that a conspirator would intentionally perform acts, functions or duties which are necessary to, or helpful in, the operation of the enterprise, or that a conspirator had some part in directing the enterprise's affairs. However, the government need not prove that the conspirator would exercise significant control over or within the enterprise, or that he had a formal position in the enterprise, or that he had primary responsibility for the enterprise's affairs. Rather, an enterprise is "operated" not just by upper management but also by lower-rung participants in the enterprise who are under the direction of upper management or carry out upper management's orders. An enterprise also might be operated or managed by one who exerts control over the enterprise.

**Authority**

Reves v. Ernest & Young, 507 U.S. 170, 179-86 (1993); United States v. Hutchinson, 573 F.3d 1011, 1034 (10th Cir. 2009); Tal v. Hogan, 453 F.3d 1244 (10th Cir. 2006) (contra holding). See also Ouwinga v. Benistar 419 Plan Services, Inc., 694 F.3d 783 (6th Cir. 2012); United States v. Lawson, 535 F.3d 434, 443 (6th Cir. 2008); United States v. Fowler, 535 F.3d 408, 418 (6th Cir. 2008); Smith v. Berg, 247 F.3d 532, 534 (3d Cir. 2001), overruling United States v. Antar, 53 F.3d 568, 581 (3d Cir. 1995); Brouwer v. Raffensperger, Hughes & Co., 199 F.3d 961 (7th Cir. 2000); United States v. Posada-Rios, 158 F.3d 832, 857 (5th Cir. 1998); United States v. Castro, 89 F.3d 1443, 1451-52 (11th Cir. 1996).

**Government's Proposed Instruction No. 26**

**The Fifth Element of RICO Conspiracy:**
**Pattern of Racketeering Activity**

The fifth element the government must prove beyond a reasonable doubt is that the defendant agreed that a conspirator would engage in a pattern of racketeering activity.

A pattern of racketeering activity requires at least two acts of racketeering, the last of which occurred within ten years after the commission of a prior act of racketeering.

To establish a "pattern of racketeering activity," as alleged in Count One of the Indictment, the government must prove three elements beyond a reasonable doubt:

**One:**   The defendant agreed that a conspirator, which could be the defendant himself, did or would intentionally commit, or cause, or aid and abet the commission of, two or more of the racketeering acts of the type or types alleged in the Indictment, that is, multiple acts, indictable under Title 29, United States Code, Sections 501(c) relating to embezzlement from union funds; multiple acts indictable under Title 18, United States Code, Section 1343 relating to wire fraud; and multiple acts indictable under 18 U.S.C. § 664 relating to embezzlement from pension and welfare funds.

Your verdict must be unanimous as to which type or types of racketeering activity you find that the defendant agreed was or would be committed, caused, or aided and abetted. At the end of this instruction, I will instruct you on the elements regarding each of the charged types of racketeering activity.

**Two:**   The racketeering activity must have or would have a "nexus" to the enterprise, and the racketeering activity was or would be "related." Racketeering activity has a "nexus" to the enterprise if it has a meaningful connection to the enterprise. To be "related," the racketeering activity was or would have the same or similar purposes, results, participants, victims, or methods of commission, or be otherwise interrelated by distinguishing characteristics and not be merely isolated events. Two racketeering acts of the type or types of racketeering activity described in the Indictment would be "related" even though they are dissimilar or not directly related to each other, provided that the racketeering acts are or would be related to the same enterprise. For example, for both "nexus" and "relatedness" purposes, the requisite relationship between the enterprise and a racketeering act may or would be established by evidence that the defendant was or would be enabled to commit the racketeering act solely by virtue of his position in the enterprise or involvement in or control over its affairs, or by evidence that the defendant's position in the

37

enterprise would facilitate his commission of the racketeering act, or by evidence that the racketeering act would benefit the enterprise, or by evidence that the racketeering act was or would be authorized by the enterprise or by evidence the racketeering act would promote or further the purposes of the enterprise.

**Three:** The racketeering activity must have extended over a substantial period of time, or posed a threat of continued criminal activity. The government need not prove such a threat of continuity by any mathematical formula or by any particular method of proof, but rather may prove it in a variety of ways. For example, the threat of continuing unlawful activity may be established when the evidence shows that the racketeering activity is part of a long-term association that exists for criminal purposes, or when the racketeering activity is or would be shown to be the regular way of conducting the affairs of the enterprise. In determining whether the government has proven the threat of continued unlawful activity, you are not limited to consideration of the specific type or types of racketeering activity charged against the defendant; rather, you may also consider the nature of the enterprise and other unlawful activities of the enterprise and its members viewed in their entirety, including both charged and uncharged unlawful activities.

**Government's Proposed Instruction No. 27**

**<u>Types of Racketeering Activity Alleged in the Indictment</u>**

I will now instruct you on the law applicable to the types of racketeering activity alleged in Count One. As I stated, the Indictment alleges that defendant agreed that one conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise. As I also mentioned, the Indictment charges several types of racketeering activity.

In order to convict a defendant of the RICO conspiracy offense, the jury's verdict must be unanimous as to which type or types of predicate racketeering activity defendant agreed would be committed; for example, at least two acts of theft from a labor organization, or at least one act of theft from a labor organization and one act of theft from a pension and welfare plan, or any combination thereof of the type or types of racketeering activity charged in the Indictment.

I will now provide you with the elements for each of these types of racketeering activity.

**Government's Proposed Instruction No. 28**

**<u>Types of Racketeering Activity Alleged in the Indictment: Theft from a Labor Union</u>**

The first type of racketeering activity alleged in Count One is theft from a labor organization or labor union.

Section 501(c) of Title 29 of the United States Code provides:

> Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly,

shall be guilty of an offense against the laws of the United States.

29 U.S.C. § 501(c).

**Government's Proposed Instruction No. 29**

**Purpose of Section 501(c)**

Section 501(c) was designed essentially to protect union members from the corruption of union officials and employees. The duty imposed on officers and employees of a labor union in regard to its money and property is broad enough to cover almost every kind of improper taking of funds or other property of the union, regardless of the manner of taking employed. Union officers and employees must adhere to the highest standards of ethical conduct and responsibility with respect to their labor organization's property.

**Authority**

United States v. Sullivan, 498 F.2d 146, 147-150 (1st Cir.) cert. denied, 419 U.S. 993 (1974) (Section 501(c) "was designed essentially to protect general union memberships from the corruption, however novel, of union officials and employees");

United States v. Busacca, 863 F.2d 433 (6th Cir. 1988),   cert. denied, 490 U.S. 1005 (1989) (Section 501(c) creates a generic offense which can be committed by alternative methods);

United States v. Harmon, 339 F.2d 354, 357 (6th Cir. 1964), cert. denied, 380 U.S. 944 (1965) ("The language in the statute 'embezzles, steals, or unlawfully and willfully abstracts or converts to his own use' would seem to cover almost every kind of a taking, whether by larceny, theft, embezzlement or conversion.").

United States v. Colella, 360 F.2d 792, 799-800 (1st Cir.), cert. denied, 385 U.S. 829 (1966) ("Section 501(c) establishes a 'a new Federal crime of embezzlement of any funds of a labor organization' . . . [that] can be accomplished in one of four ways: embezzling, stealing, unlawfully and willfully abstracting, and unlawfully and willfully converting. . . . [We] can not imagine facts constituting embezzlement which would not also, absent a fiduciary relationship, make out unlawful and willful abstraction or conversion.")

**Government's Proposed Instruction No. 30**

**Ownership of Union Money and Property**

The members of a labor organization are the real owners of the money and property of such organizations and are entitled to a full accounting of all transactions involving such money and property.  Because union funds belong to the members, they should be expended only in furtherance of their common interest.  A union treasury should not be managed as though it were the private property of the union officers, however well-intentioned such officers might be, but as a fund governed by fiduciary standards.

**Authority**

United States v. Goad, 490 F.2d 1158, 1162-63 (8th Cir. 1973) (quoting H. Rep. No. 741, 86th Cong., 1st Sess. (1959) pp. 7-8, reprinted in, 1959 U.S. Code, Cong. and Adm. News. p. 2430).;

See also, S.Rep. 187, 86th Cong., 1st Sess. (1959) pp. 8-9, reprinted in, 1959 U.S. Code, Cong. and Adm. News. p. 2324, quoted in, United States v. Budzanoski, 462 F.2d 443, 450 (3rd Cir. 1972).

42

**Government's Proposed Instruction No. 31**

**Elements**

In order to establish guilt under section 501(c), the Government must establish beyond a reasonable doubt each of the following elements on or about the dates charged:

First, that the Boilermakers Union was a labor organization engaged in an industry affecting interstate or foreign commerce;

Second, that the defendant was an officer of or was a person employed by the Boilermakers Union;

Third, that the defendant embezzled or stole or abstracted or converted to his own use or to the use of another, the moneys, funds, property, or other assets of the Boilermakers Union; and

Fourth, that Defendant acted unlawfully, willfully and with fraudulent intent to deprive the Boilermakers Union of the use of its monies, funds, property, or other assets.

**Authority**

Transcript of Jury Instructions as given in United States v. Ellison M. Stockton, No. M-84-00074 (D.Md. May 4, 1984) pp. 16-17,  jury instructions approved in, United States v. Stockton, 788 F.2d 210 (4th Cir.), cert. denied, 479 U.S. 840 (1986).

Given and upheld in United States v. DeFries, 129 F.3d 1293, 1308 (D.C. Cir. 1997) (citing United States v. Stockton, 788 F.2d 210 (4th Cir.), cert. denied, 479 U.S. 840 (1986)).

**Government's Proposed Instruction No. 32**

**Labor Organization**

As to the first element of the crime, whether the Boilermakers Union was a "labor organization" engaged in an industry affecting interstate or foreign commerce, you are instructed as follows:

A "labor organization" is an organization of any kind, engaged in an industry affecting commerce in which employees participate and which exists for the purpose, in whole or part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment.

A labor organization is engaged in an industry affecting commerce if it is a labor organization recognized or acting as the representative of employees of an employer or employers engaged in an industry affecting commerce.  As used in these instructions, the term "industry affecting commerce" means any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce.  The term "commerce" means trade, traffic, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.

**Authority**

29 U.S.C. § 402(a) (definition of "commerce");

29 U.S.C. § 402(c) (definition of "an industry affecting commerce");

29 U.S.C. § 402(I) (definition of "labor organization");

29 U.S.C. § 402(j)(2) and (3) (description of labor organizations deemed to be engaged in an industry affecting commerce);

Lawson v. United States, 300 F.2d 252, 253 (10th Cir. 1962) (a labor union whose members' work stoppage would have curtailed the flow of commerce into the home state of the union was engaged in an industry affecting commerce);

44

<u>United States v. Stubin</u>, 446 F.2d 457, 461-462 (3rd Cir. 1971) (a labor union, whose members worked for employers doing business throughout the country and having home offices outside the state where the union was located, was engaged in an industry affecting commerce);

**Government's Proposed Instruction No. 33**

**<u>Officer or Employee</u>**

As to the second element of the crime, whether a defendant was an officer or a person employed by the Boilermakers Union on the dates alleged, you are instructed that:

The term "officer" means any constitutional officer, or any person who is authorized to perform the functions of president or vice president or secretary or treasurer or other executive functions of a labor organization, or any member of the labor organization's executive board or similar governing body.  The term "officer" includes any person who in fact has executive or policy-making authority or responsibility, even though he may not occupy a position identified as an officer under the constitution and bylaws of the union.  Authorization to perform such functions need not be contained in any provision of the union constitution or bylaws or other document, but may be inferred from actual practices or conduct.

An "executive function" is one which involves the exercise of independent judgment.  As a general rule, a person is regarded as being authorized to perform the functions of president if he is the chief or principal executive officer of the labor organization.  A member of any group, committee, or board which is vested with broad governing or policy making authority is regarded as a member of an "executive board or similar governing body."  The name or title that the labor organization assigns to the position is not controlling.

A person is "employed" of a labor organization for purposes of Section 501(c) if he is employed, directly or indirectly, by the labor organization in connection with its money or property and would include a person, who by virtue of his office with or employment by the union, had access to labor organization funds while performing services for the union.  It is not necessary that the person receive any wages or payment for the services or functions he performs or that he perform such services under the direct supervision of another person.

46

**Authority**

29 U.S.C. § 402(n) (definition of officer);

NLRB v. Hearst Publications, Inc., 322 U.S. 111, 124 (1944) (executive function);

United States v. Capanegro, 576 F.2d 973, 976-980 and note 6 (2d Cir.), cert. denied, 439 U.S. 928 (1978) (a principal for purposes of Section 501(c) is not limited to a common law employee, but includes any person performing services for the union with access to union funds, such as an independent contractor on retainer);

United States v. Sullivan, 498 F.2d 146, 148-49 (1st Cir.), cert. denied, 419 U.S. 993 (1974) (defendant holding a largely ceremonial union office designated in the union constitution as a "guard" was an officer and employee for purposes of section 501(c). Because of the broad protective purposes underlying the statute it is "entirely appropriate to construe the §501(c) term 'officer' in its most literal sense to include all union officers, no matter how minor their responsibilities.");

United States v. Ferrara, 451 F.2d 91, 94 at note 2 (2d Cir. 1971), cert. denied, 405 U.S. 1032 (1972) (a labor union "officer" includes an unpaid executive board member);

United States v. Ford, 462 F.2d 199, 201 (7th Cir. 1972) (legislative history of § 501(c) indicates that the statute applies to "any person having any direct or indirect functions in connection with the money or property of a labor organization", quoting, 104 Cong.Rec. 1327, 85th Cong., 2nd Sess. (1958).

**Government's Proposed Instruction No. 34**

**<u>Fiduciary Duties</u>**

Section 501(a) of the Labor Management Reporting and Disclosure Act or LMRDA provides that "officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group." Section 501(a) of the LMRDA further specifies that a representative of a labor organization carries the duty:

1) to hold the organization's money and property solely for the benefit of the organization and its members as a group and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder;

2) to refrain from dealing with the organization as an adverse party or on behalf of an adverse party in any matter connected with their duties;

3) to refrain from holding or acquiring any pecuniary or personal interest which conflicts with the interests of the organization in any transaction conducted by him or under his direction on behalf of the organization; and

4) to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization.

29 U.S.C. § 501(a);

Guidry v. Sheet Metal Workers Nat. Pension Fund, 493 U.S. 365, 374, 110 S. Ct. 680, 686, 107 L. Ed. 2d 782 (1990)

United States v. Douglas, 398 F.3d 407, 418 (6th Cir. 2006);

United States v. DeFries, 129 F.3d 1293, 1304-05 (D.C.Cir. 1997) (fiduciary and election provisions of LMRDA and provisions in the union's constitution, provided basis for honest services fraud);

United States v. Frost, 125 F.3d 346, 366-68 (6th Cir. 1997);

48

<u>United States v. Runnels</u>, 833 F.2d 1183, 1186-88 (6th Cir. 1987) (union official's acceptance of bribe from employer violated fiduciary duty under section 501(a) to "account" for, and turn over, secret profits received while transacting union business);

<u>United States v. Boffa</u>, 688 F.2d 919, 930 (3d Cir. 1982) (receipt of secret bribery payments by union official violated LMRDA section 501(a) duties to refrain from conflicts of interest and to account to union for receipt of personal profit while transacting union business, as well as duties under collective-bargaining agreement);

<u>United States v. Boyd</u>, 309 F.Supp.2d 908, 913-14 (S.D.Tex. 2004) (honest service fraud based on violation of fiduciary and reporting duties under LMRDA during fundraising for election of international officers).

**Government's Proposed Instruction No. 35**

**<u>Third Element–-Embezzle, Steal, Abstract, Convert</u>**

In regard to the third element of the offense, as used in Section 501(c), the term "embezzle" means to willfully take, or convert to one's own use or the use of another, the moneys, funds, property or other assets of a labor organization, which came into the alleged wrongdoer's possession lawfully by reason of his office, employment or position of trust. The term includes the fraudulent appropriation of the labor organization's property by a person to whom such property has been entrusted subject to the fiduciary duty to hold such property solely for the benefit of the labor organization and its members and to manage it in accordance with the labor organization's constitution, by-laws, and applicable resolutions.

The term "steal" as used in Section 501(c) means any dishonest transaction whereby one person obtains property which rightfully belonged to another, and deprives the owner of the rights and benefits of ownership. To "steal" means to take away from some one in lawful possession of property without right and with intent to keep wrongfully and to deprive the owner of the rights and benefits of ownership.

"Abstracts" as used in Section 501(c) means to take or withdraw from the possession and control of a labor organization monies or funds belonging to it without lawful right or authority to do so.

The term "converts" as used in Section 501(c) means to apply the moneys or property of a labor organization for the use, benefit, or profit of a person not lawfully entitled thereto. Conversion may include the misuse in an unauthorized manner or to an unauthorized extent property which has been placed in one's custody for a limited use. But, conversion does not require that the moneys or property was held by the alleged converter in some fiduciary or trustee capacity.

The phrase "to their own use or the use of another" means simply "not to the use of the entruster," that is, the Boilermakers Union, the true owner of the money.  It does not require the Government to prove that any of the amounts of money charged in the Indictment were actually spent for the personal use, benefit or advantage of the defendant.  Indeed, while the Government has the burden of establishing beyond a reasonable doubt that a defendant took or converted the money of the Boilermakers Union to his use or the use of another as charged, it need not prove what Defendant actually did with the money after the taking.  A defendant's disposition of the property of another, without right, by means of an unauthorized use or use not benefitting the Boilermakers Union and its members, as if it were his own property, is a conversion "to his own use."

Therefore, you can see, the statutory language of Section 501(c), "embezzle, steals, or unlawfully and willfully abstracts or converts" covers virtually every sort of taking that injures the rights of a labor organization to the beneficial use of its funds.  However, in order to establish the third element, the  Government is not required to prove that all four means, which I have just defined for you, were actually employed by a defendant.  Rather, the Government's proof need only establish beyond a reasonable doubt that Defendant either embezzled, or stole, or unlawfully and willfully abstracted, or unlawfully and willfully converted the property of the Boilermakers Union to his own use or the use of another, as alleged.

**Authority**

Morrissette v. United States, 342 U.S. 246, 271-273 (1952) (description of "steals" and "conversion" generally);

United States v. Northway, 120 U.S. 327, 334 (1887) ("abstracts");

United States v. Busacca, 863 F.2d 433 (6th Cir. 1988), cert. denied, 490 U.S. 1005 (1989) (Section 501(c) creates a generic offense which can be committed by alternative methods);

51

United States v. Stockton, 788 F.2d 210, 217-218 (4th Cir.), cert. denied, 479 U.S. 840 (1986) (definition of "embezzlement" upheld as instructed, that is, "willfully to take or convert the property of another which came into the wrongdoer's possession lawfully by virtue of his office, employment, or position of trust.");

United States v. Santiago, 528 F.2d 1130, 1133 (2d Cir. 1976), cert. denied, 425 U.S. 972 (1976) (upholding conviction of having converted employee benefit plan funds to the use of the sponsoring labor union having common members, where the defendant had also stolen the union's funds, holding that the misappropriation of funds need not be for the personal advantage of a defendant and that "'conversion to one's own use' means simply 'not to the use of the entruster.'"; citations omitted);

Colella v. United States, 360 F.2d 792, 799 (1st Cir.), cert. denied, 385 U.S. 829 (1966) (embezzlement carries concept of breach of fiduciary relationship);

Doyle v. United States, 318 F.2d 419, 423 (8th Cir. 1963) (conversion, abstraction and stealing do not connote breach of fiduciary relationship);

United States v. Nell,  526 F.2d 1223 (5th Cir. 1976) ("Section 501(c) fashioned a new federal crime whose scope extends beyond common law embezzlement.");

United States v. Harmon, 339 F.2d 354, 357 (6th Cir. 1964), cert. denied, 380 U.S. 944 (1965) (Section 501(c) creates new crime for which "technical common law distinctions of various types of crimes were not intended to be rigidly applied", relying on analysis in Morrissette, supra).

52

**Government's Proposed Instruction No. 36**

**Fourth Element--Knowingly, Willfully, and Unlawfully**

The term "knowingly," as used in section 501(c) means that the defendant was conscious and aware of his action or omission, realized what he was doing or what was happening around him, and did not act or fail to act because of ignorance, mistake or accident.  You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.

The term "unlawfully" means without legal justification, without authority of law, or contrary to law.

For an act to performed or omitted "willfully," it must be done with the specific intent to do something the law forbids or with bad purpose to disobey or disregard the law, that is, with the fraudulent intent which I will now explain to you.

**Authority**

Devitt and Blackmar, Federal Jury Practice and Instructions, 4th Ed. 1992, § 17.04 (knowingly).

**Government's Proposed Instruction No. 37**

**<u>Fourth Element: Proof of Fraudulent Intent</u>**

In making a determination of whether Defendant had the requisite fraudulent intent you may consider whether or not Defendant knew that his use of union property was unauthorized. Fraudulent intent may be proved by circumstantial evidence.  Indeed, it is seldom that such intent can be proved by any means other than circumstantial evidence because, although witnesses may see and hear, and thus be able to come into court and give direct evidence of what a defendant has said or done there, of course, there can be no eye-witness account of the state of mind with which the acts were done or omitted.

On the other hand, what a defendant does, or fails to do, may indicate intent, or lack of intent, to commit the offense.  In determining the issue of fraudulent intent, you may consider any statements made, and acts done or not done by a defendant, as well as all the facts and circumstances in evidence which surround or attend his actions or statements, or which may aid you in determining his state of mind.

**<u>Authority</u>**

<u>United States v. Hammond</u>, 201 F.3d 346, 349 (5th Cir. 1999) ("Fraudulent intent requires actual knowledge that the use [of union property] was unauthorized.") ("Intent will generally be established circumstantially and may be established by proving the lack of benefit to the union from the use of the funds.");

<u>United States v. Welch</u>, 728 F.2d 1113, 1119 (8th Cir. 1984), <u>citing</u>, <u>Morrissette v. United States</u>, 342 U.S. 246, 275-276 (1951), as requiring "that the jury determine fraudulent intent on the basis of 'all the evidence considered together' and in light of 'all the surrounding circumstances.'";

<u>United States v. Bane</u>, 438 F.Supp. 1286, 1295 (E.D. Mich. 1977), <u>aff'd</u>, 583 F.2d 832 (6th Cir. 1978), <u>cert. denied</u>, 439 U.S. 1127 (1979) (trial court's instruction that "[a] good faith belief, as commonly used, means a belief or state of mind denoting honesty of purpose; freedom from intention to defraud; generally speaking, it means being faithful to one's duty or obligation.").

54

**Government's Proposed Instruction No. 38**

**<u>Fourth Element–Lack of Authorization</u>**
**<u>and Absence of Good Faith in Authorization</u>**

If you find that the expenditure of property was unauthorized and that a defendant knew the expenditure was unauthorized, you may consider this as evidence of that defendant's fraudulent intent to deprive the Boilermakers Union of the property alleged.

An unauthorized expenditure is one which is done without the permission of the union and its members as a whole.  That is, permission of the union is lacking if the expenditure is outside the scope of the fiduciary trust placed in a defendant by the union as a whole.

In determining whether or not the charges alleged were authorized or unauthorized, you may consider, among other evidence, the following:

One, the Boilermakers Union Constitution relating to authorization, approval, and reporting of the use of the Boilermakers Union funds;

Two, evidence that a defendant concealed or failed to disclose to the membership or any government agency to which there was a duty to disclose, including on the form LM-2, the use of the Boilermakers Union funds;

Three, evidence indicating a defendant's control of the Boilermakers Union's treasury; and

Four, evidence of the business purpose of the expenditure.

In addition, you may consider whether or not Defendant had a good faith belief that such expenditures benefited the Boilermakers Union in consideration of whether an expense was authorized.  A "good faith belief" as the term is commonly used means a belief or state of mind denoting honesty of purpose and freedom from the intention to defraud.  Generally speaking, it means being faithful to one's duty or obligation.

**Authority**

United States v. DeFries, 129 F.3d 1293, 1307 (D.C. Cir. 1997) ("[WIe agree that a § 501(c) violation requires the unauthorized appropriation of union property.  While some of our sister circuits weigh lack of authorization as only one of many factors in determining whether a defendant possessed "fraudulent intent" under § 501(c), the language of the statute dictates that it should be considered a distinct element of the offense." (citations omitted)).

United States v. Hammond, 201 F.3d 346, 349 (5th Cir. 1999) ("To establish a Section 501(c) violation, the government must prove that Hammond lacked authorization to convert union funds to his own use and that his misuse of the money was 'coupled with a fraudulent intent to deprive the union of its funds.' . . .  Fraudulent intent requires actual knowledge that the use was unauthorized.") (citations omitted).

United States v. Nell, 526 F.2d 1223 (5th Cir. 1976) (defendant's failure to follow union constitutional procedures in connection with the expenditure of union funds for personal legal expenses supported fraudulent intent);

United States v. Long, 952 F.2d 1520, 1526-27 (8th Cir. 1991), aff'd on remand sub. nom. United States v. Cantrell, 999 F.2d 1290 (8th Cir. 1993) (failure to inform other union officers of sale of union property as source of expended monies contrary to union constitution supported fraudulent intent despite the fact that the custom and practice of union was to not comply with constitutional procedures);

United States v. Stockton, 788 F.2d 210, 217-218 (4th Cir.), cert. denied, 479 U.S. 840 (1986) (holding that defendant's concealment from an authorizing body of the true identity of provider performing services for the union supported fraudulent intent to deprive the union of monies expended for such services and that

> [a]n appropriation or expenditure of union funds is therefore unauthorized if it is done without the permission of the union, even if it is approved by a superior union official.  The permission of the union is lacking if the appropriation or expenditure is outside the scope of the fiduciary trust placed in the defendant by the union as a whole and outside the scope of the powers of any superior union official on whose permission the defendant has sought to rely.);

United States v. Goad, 490 F.2d 1158, 1160-61 (8th Cir.), cert. denied, 417 U.S. 945 (1974) (failure to obtain prior approval in accordance with union constitutional requirements for a salary increase supported fraudulent intent);

United States v. Sullivan, 498 F.2d 146, 151 (lst Cir.), cert. denied, 419 U.S. 993 (1974) (knowledge that an unauthorized salary increase had been made contrary to union constitutional

procedures could be inferred from defendant-union officer's lengthy service in the union and regular attendance at union meetings where such procedures were discussed);

United States v. Silverman, 430 F.2d 106, 123 (2d Cir.), modified on the other grounds, 439 F.2d 1198 (2d Cir. 1970), cert. denied, 402 U.S. 953 (1971) (evidence that union procedures were not followed because of defendant's almost single-handed control of the union was admissible to prove a sham authorization for a particular union expenditure).

**Government's Proposed Instruction No. 39**

**Fourth Element–Lack of Authorization**

On the issue of authorization, where an official exercises absolute domination and control of the authorizing machinery of a union's expenditures, conviction under section 501(c) may rely on evidence of the expenditures' lack of union benefit from which defendant's fraudulent intent to embezzle or willfully convert union funds may be inferred. Where lack of authorization is not at issue, the Government may nonetheless pursue a theory that the official knew that the expenditure provided no benefit to the union.

If you find that there has not been a good faith disclosure of any or all of the pertinent facts concerning an expenditure in the face of a known duty to not disclose or conceal or that an alleged ratification was obtained as a result of a defendant's domination and control of the ratifying body, then you may reject the purported ratification as an invalid exculpatory resolution and find that the expenditure was unauthorized.

**Authority**

United States v. Gibson, 675 F.2d 825, 828 (6th Cir. 1982) (finding that conviction may be obtained either lack of authorization or lack of good faith belief in benefit to union).

United Mine Workers of Am. v. Boyle, 1975 WL 1183, at *3 (D.D.C. Dec. 9, 1975), aff'd, 556 F.2d 77 (D.C. Cir. 1977) ("Where a union's executive board has been dominated by executive officers, even contemporaneous authorization or ratification will not absolve officers of liability for actions otherwise in violation of § 501.")

Lawson v. United States, 300 F.2d 252, 254 (10th Cir. 1962) (affirming conviction of local union officials for embezzlement and remarking, "Congress was free to find that corruption of union officials and a lack of the highest standards of ethical conduct by those representing unions … would substantially affect the free flow of commerce.").

United States v. Oliva, 46 F.3d 320, 24 (3d Cir. 1995) (holding that totality of circumstances test "requires that the factfinder look at all evidence in light of all circumstances to determine whether

the government has proven the requisite intent.  Within this analysis, both authorization and benefit are merely factors that may be considered as bearing on intent.");

United States v. Welch, 728 F.2d 1113, 1116–18 (8th Cir. 1984) ("If union authorization were a complete defense to a section 501(c) prosecution, self-dealing in the presence of a constitution and by-laws authorizing union officials to expend union funds potentially could become a license to steal.") (affirming convictions of union officials for authorizing vacation and severance payments to themselves and others which would bankrupt union).

**Government's Proposed Instruction No. 40**

**Fourth Element--Proof of Fraudulent Intent**
**Valid Authorization and Ratification versus Invalid Exculpatory Resolution**

The union membership and governing bodies of the union cannot authorize or ratify an expenditure where its nature, purpose, amount, supporting documentation and other pertinent details have been withheld from them.

Section 501(a) prohibits general exculpatory resolutions. An "exculpatory resolution" is one which tends to clear or excuse one of alleged fault, duty or breach of responsibility. "Ratification" is the affirmance of a prior act whereby the act is given effect as if originally authorized. Thus, if a purported authorization was obtained subsequent to the actual expenditure, you must determine whether there was full disclosure of all the facts to the body issue the purported ratification, and whether it was the result of the domination and control exercised over the union and its governing body by the person or persons seeking the ratification.

**Authority**

29 U.S.C. § 501(a) ("A general exculpatory provision in the constitution and bylaws of ... a labor organization or a general exculpatory resolution of a governing body purporting to relieve any [officer, agent, shop steward or other representative of a labor organization] of liability for breach of the duties declared by this section shall be void as against public policy.");

United States v. Durnin, 632 F.2d 1297, 1301-02 (5th Cir. 1980) (rejecting argument of union official charged with submitting double reimbursements that members of the union knew about them and acquiesced in his misuse of their funds);

United States v. Dibrizzi, 393 F.2d 642, 645 (2d Cir. 1968) (affirming conviction of union official for use of union accounts for personal expenses where governing body of union authorized them retroactively) ("[T]he reach of 501(c) is not limited to union officers who engage in stealthy larcenies or devious embezzlements but extends to an officer who 'unlawfully and willfully abstracts or converts to his own use' the funds of a labor organization. When one sends the union a voucher known to be an improper one, and then receives payment of the voucher, the crime is completed."). Accord United States v. Ladmer, 429 F. Supp. 1231, 1240 (E.D.N.Y. 1977).

United Mine Workers of Am. v. Boyle, 1975 WL 1183, at *3 (D.D.C. Dec. 9, 1975), aff'd, 556 F.2d 77 (D.C. Cir. 1977) ("Where a union's executive board has been dominated by executive

60

officers, even contemporaneous authorization or ratification will not absolve officers of liability for actions otherwise in violation of § 501.").

United States v. Butler, 954 F.2d 114, 119 (2d Cir. 1992) ("An authorization obtained without disclosure of . . . material information is obviously a nullity.");

United States v. Lavergne, 805 F.2d 517, 523 (5th Cir. 1986) (union officer's failure to disclose material information about the amount of the increase and "could be properly considered by the jury in weighing the validity of the authorization relied upon by appellants.");

United States v. Dixon, 609 F.2d 827, 829 note 3 (5th Cir. 1980). ("Authorization which is improperly or fraudulently obtained is treated as lack of authorization.");

United States v. Ottley, 509 F.2d 667, 671 (2d Cir. 1975) (holding that defendant did not violate § 501(c) if he "in good faith believed that [another union officials] automobile was being used for union business and that the union had authorized the expenditure or would ratify it ... .");

United States v. Silva, 517 F. Supp. 727, 739 (D.R.I. 1980), aff'd, 644 F.2d 68 (1st Cir. 1981) (affirming the conviction of a union officer who diverted, but later repaid with interest, monies in the possession of the union for his personal use with the purported authorization of individuals whom he had hand-picked as an "ad-hoc" committee of officers).

**Government's Proposed Instruction No. 41**

**Fourth Element–Lack of Authorization**
**and Absence of Good Faith in Authorization**

Finally, unauthorized expenditures would include not only those initially lacking any authorization, but also those expenditures for which authorization was obtained by deceit or fraud and expenditures which were not being expended as authorized.

**Authority**

United States v. Lavergne, 805 F.2d 517, 519 and 523 (5th Cir. 1986) (fraudulent intent was supported by evidence that the authorization for a salary increase had been obtained by the defendant-union officer's failure to disclose material information about the amount of the increase and "could be properly considered by the jury in weighing the validity of the authorization relied upon by appellants.");

United States v. Durnin, 632 F.2d 1297, 1300-1302 (5th Cir. 1980) (knowledge by defendant-union officer of union procedures can not be presumed; but fraudulent intent was supported by defendant's failure to disclose to union members that the expenses which they authorized for reimbursement would also be paid by another organization);

United States v. Butler, 954 F.2d 114, 119 (2d Cir. 1992) (holding, in regard to the defendant's concealment from the authorizing body of other compensation he had received for the same expense, that "[a]n authorization obtained without disclosure of . . . material information is obviously a nullity.");

United States v. Butler, 954 F.2d 114, 119 (2d Cir. 1992) ("An authorization obtained without disclosure of . . . material information is obviously a nullity.");

United States v. Dixon, 609 F.2d 827, 829 note 3 (5th Cir. 1980). ("Authorization which is improperly or fraudulently obtained is treated as lack of authorization.");

**Government's Proposed Instruction No. 42**

**Fourth Element–Incidental or Fortuitous Benefit to the Union**

However, if you have found beyond a reasonable doubt that a particular expenditure was unauthorized and that Defendant held a fraudulent intent with respect to that unauthorized expenditure, it is no defense that the Boilermakers Union or its membership may have incidentally benefitted it from the expenditure or that Defendant believed that it might do so. It is not necessary for the government to prove that the expenditure did not actually benefit the Boilermakers Union.

**Authority**

United States v. DeFries, 129 F.3d 1293, 1307 (D.C. Cir. 1997) ("[WIe agree that a § 501(c) violation requires the unauthorized appropriation of union property. While some of our sister circuits weigh lack of authorization as only one of many factors in determining whether a defendant possessed "fraudulent intent" under § 501(c), the language of the statute dictates that it should be considered a distinct element of the offense." (citations omitted)).

United States v. Boyle, 482 F.2d 755, 764-65 (D.C. Cir. 1973), cert. denied, 414 U.S. 1076 (1973) ("No officer or union governing body could in all logic believe that a transfer for a criminal purpose was for a legitimate union purpose, was authorized by the union constitution or bylaws, or was for the union's benefit.).

United States v. Bane, 583 F.2d 832, 836 (6th Cir. 1978) (". . . it is not necessary for the government to prove that the expenditure did not actually benefit the union. To require such proof could absolve a defendant of liability when an otherwise fraudulent appropriation of funds fortuitously had some beneficial effect upon the union.") (footnote omitted).

United States v. Goad, 490 F.2d 1158, 1163 (8th Cir. 1974).

**Government's Proposed Instruction No. 43**

**Types of Racketeering Activity Alleged in the Indictment: Theft from a Pension or Welfare Plan**

The second type of racketeering activity alleged in Count One is theft from a theft from a pension or welfare plan.

Section 664 of Title 18 of the United States Code states:

Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith

shall be guilty of an offense against the laws of the United States.

18 U.S.C. § 664.

**Government's Proposed Instruction No. 44**

**<u>Purpose of the Statute</u>**

Employee pension and welfare benefit plans are important to millions of employees in the United States as significant benefits supplementing their regular income.  The purpose of section 664 is to prevent dishonesty and diversion of such employee benefit plan funds and to preserve such funds for the protection of those entitled to their benefits.

**<u>Authority</u>**

<u>United States. v. Andreen</u>, 628 F.2d 1236, 1240 -1241 (9th Cir. 1980) ("By enacting s 664 in 1962, Congress made it a federal crime to embezzle, steal, or willfully and unlawfully convert or abstract assets of an employee welfare or pension benefit plan. . . . The legislative history indicates that the intended purpose of § 664 was to preserve welfare and pension funds for the protection of those entitled to their benefits.").

**Government's Proposed Instruction No. 45**

**Elements of Offense**

To prove that a defendant has committed the offense of embezzlement, stealing or unlawful and willful conversion or abstraction from an employee benefit plan in violation of 18 U.S.C. § 664, the government must prove beyond a reasonable doubt the following three elements:

First, that a plan was established or maintained as an employee pension benefit plan or as an employee welfare benefit plan subject to title I of the Employee Retirement Income Security Act (which I shall hereafter refer to as "ERISA");

Second, that the defendant embezzled, stole, abstracted, or converted to his own use or the use of others the monies, funds, securities, premiums, credits, property, or other assets of such employee benefit plan; and

Third, that the defendant acted unlawfully and willfully.

**Authority**

United States v. Smith, 641 F.3d 1200, 1205 (10th Cir. 2011);

United States v. Andreen, 628 F.2d 1236, 1241-43 (9th Cir. 1980).

**Government's Proposed Instruction No. 46**

**First Element:   Existence of an Employee Benefit Plan**

The first element that the government must prove beyond a reasonable doubt is that plan specified in the Indictment was established or maintained as an employee benefit plan(s) subject to title I of ERISA.

An "employee pension benefit plan" within the meaning of ERISA is a plan, fund, or program that is established or maintained by an employer, or by an employee organization, or by both an employer and employee organization and that by its express terms or as a result of surrounding circumstances either provides retirement income to employees or results in a deferral of income by employees for periods extending to the termination of covered employment or beyond.

An "employee welfare benefit plan" within the meaning of ERISA is any plan, fund, or program which is established or maintained by an employer, or by an employee organization, or by both an employer and employee organization to the extent that such plan, fund, or program is established or maintained for the purpose of providing the plan's participants or their beneficiaries, through the purchase of insurance or otherwise, certain welfare benefits described in ERISA, including benefits [for medical and hospital care, sickness, accident, disability, death, unemployment, vacation, apprenticeship training, day care centers, scholarship funds, prepaid legal services, severance pay or financial assistance for employee housing] other than pensions on retirement or death.

"Employer" means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan.

"Employee" means any individual employed by an employer.

"Employee organization" means any labor union or any organization of any kind in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships.

An employee benefit plan is subject to title I of ERISA if it is established or maintained by an employer engaged in commerce or in any industry or activity affecting commerce, or by an employee organization or organizations representing employees engaged in commerce or any industry or activity affecting commerce, or by both such an employer and employee organization(s).  The term "commerce" means trade, traffic, commerce, transportation, or communication between any State and any place outside thereof.  The term "industry or activity affecting commerce" means any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce.

### Authority

29 U.S.C. §§ 1002(1) (defining "employee welfare benefit plan"); (2) (A) (defining "employee pension benefit plan); (3) ("employee benefit plan or plan"); (4) ("employee organization"); (5) ("employer"); (6) ("employee"); (11) ("commerce"); (12) ("industry or activity affecting commerce");

29 U.S.C. § 1003(a) ("Coverage of employee benefit plan established by employer, by employee organization or by both an employer and employee organization");

**Government's Proposed Instruction No. 47**

**Second Element:   "Embezzle," "Steal," "Abstract," or "Convert"**

The second element that the government must prove beyond a reasonable doubt is that the defendant embezzled, stole, or unlawfully and willfully abstracted or converted to his own use or to the use of another, any of the assets of an employee benefit plan or of a fund connected with such a plan.

Although the term "connected fund" is not defined by statute, a "connected fund" for purposes of this case is any trust or other fund of money or other property that contained identifiable property or other assets of the employee benefit plan(s) at the time of the offense(s) alleged in the indictment.  Accordingly, if you find that a particular account or other fund of money consisted in whole or part of the property or other assets of an employee benefit plan, such account or fund was a "connected fund" to the extent that such account or fund contained the plan's property or other assets.

For purposes of section 664, "embezzlement" is the unauthorized conversion of money or property to one's own use or for the use of someone other than the plan or connected fund by a person who had acquired lawful custody or possession of such monies or property in a fiduciary capacity or other position of trust.  Embezzlement includes the use of monies or property placed in one's custody for a limited purpose in an unauthorized manner or to an unauthorized extent.

"Stealing" involves the taking of property, money, or other assets from an employee benefit plan or connected fund without permission and depriving the plan or connected fund of the rights and benefits of ownership in the property.  Stealing is distinguished from embezzlement in that embezzlement requires that the money or property first have come into the custody or possession

of the alleged embezzler lawfully.  Stealing does not presuppose lawful custody of the assets of the plan or a connected fund.  Therefore, one who is not in lawful custody of the assets of the plan or connected fund  may be guilty of violating section 664 by converting to his own use, or to the use of another person, money or property of the plan or connected fund through the act of stealing.

"Conversion" as used in section 664 means using the monies or property of the employee benefit plan or connected fund in an unauthorized manner or to an unauthorized extent.  The phrase "to his own use or the use of another" means unlawfully using the money, property or other assets of an employee benefit plan or connected fund for an unauthorized or non-plan related purpose which may also benefit either a defendant or some person other than the plan and its participants and beneficiaries.  It does not mean, nor is the government required to prove, that the defendant necessarily pocketed the money or other assets.  In other words, the defendant need not have benefitted personally and directly from an act which deprived the plan or connected fund of the beneficial use of its property.

"Abstraction" means to take or withdraw property from the possession and control of the plan or connected fund without consent or any lawful right or authority or with intent to injure or defraud the plan or connected fund.

The government need not prove the particular amount of money or property that was embezzled, stolen, abstracted or converted.  It need only prove that a substantial amount was so embezzled, stolen, abstracted or converted.

As you can see, the statutory language of section 664 covers four different kinds of taking: embezzling, stealing, abstracting, and converting.  However, the government is not required to prove that all four means were actually employed by the defendant.  Rather, the government's

70

proof need only establish beyond a reasonable doubt that a defendant either embezzled *or* stole *or*

abstracted *or* converted to his own use or the use of another the monies or other assets of the

alleged plan.

### Authority

United States v. Andreen, 628 F.2d 1236, 1241 (9th Cir. 1980) ("Embezzlement" ... encompasses the fraudulent appropriation of the property of another by one in lawful possession thereof. . . .");

United States v. Goodstein, 883 F.2d 1362, 1372  (7th Cir. 1989) (upholding jury instruction that "the term convert as used in section 664 means the use of profit sharing funds in an unauthorized manner or to an unauthorized extent");

Morrissette v. United States, 342 U.S. 246, 271 (1952) ("To steal means to take away from one in lawful possession without right with the intention to keep wrongfully.");

United States v. Northway, 120 U.S. 327, 334 (1887) (abstracts) ("To constitute that offense, within the meaning of the act, it is necessary that the moneys and funds should be abstracted from the bank without its knowledge and consent, with the intent to injure or defraud it, or some other company or person, or to deceive some officer of the association, or an agent appointed to examine its affairs.") (bank larceny statute).

United States v. Breese, 173 F. 402, 406 (4th Cir. 1909) ("To abstract . . . means to 'take from,' or 'withdraw,' so that to abstract the moneys . . . is to take and withdraw from the possession and control of the . . . [owner] its moneys, funds, and credits. To constitute the offense of abstracting, it should be done without the knowledge and consent of the [owner], and with intent to injure and defraud it or some other company, or person.")

United States v. Santiago, 528 F.2d 1130, 1135 (2d Cir. 1976) ("The phrase 'to his own use'  . . . does not require a showing that the misappropriation was for the personal advantage of the defendant. . . .   One's disposition of the property of another, without right, as if it were his own, is a conversion to one's own use. Conversion to 'one's own use' means simply 'not to the use of the entruster.'") (citations omitted) (upholding § 664 conviction of plan administrator for expending employee welfare plan funds to pay salaries of union sponsor and finding that if the administrator ". . . fraudulently dispersed such funds for purposes unrelated to welfare, he must have put them to his own use or the use of another.");

United States v. Cusumano, 943 F.2d 305, 311-12 (3d Cir. 1991)(no specific unanimity instruction necessary for different § 664 crimes where indictment charged a single factual

method of violating § 664).

**Government's Proposed Instruction No. 48**

**<u>Third Element—Unlawfully and Willfully</u>**

The third element that the Government must prove is that the defendant acted unlawfully and willfully with fraudulent intent to deprive the plan or connected fund of the beneficial use of its property.

The term "unlawfully" means contrary to law.  However, a defendant need not know that his conduct was contrary to any specific statute.  The defendant need only have been aware of the generally unlawful nature of his acts.

"Willfully" means to act voluntarily, knowingly, and purposely, with knowledge that one's conduct is unlawful and with the intent to do something the law forbids.

That is, the misappropriation or withdrawal of monies or property from an employee benefit plan or connected fund does not, in itself, establish a violation of the statute.  The government must prove beyond a reasonable doubt that the defendant embezzled, stole, converted, or abstracted the money or property from the employee benefit plan or connected fund with the specific intention of using the money or property for purposes other than for the benefit of the plan or connected fund with fraudulent intent.

In determining whether a transaction involving the money or other assets of such a plan or connected fund was accompanied by a defendant's fraudulent intent, you may consider whether or not the defendant lacked a good faith belief that a particular transaction involving assets of the plan or connected fund was authorized.   An expenditure is "unauthorized" if it is substantially inconsistent with the purposes and fiduciary objectives of the employee benefit plan as set forth by statute or instruments governing the operation of the plan.

The fraudulent intent required under section 664 may be inferred from proof of actions that were unauthorized and which a defendant knew were unauthorized by law or by the instruments governing the plan. You may also consider whether or not the defendant had a good faith belief that assets belonging to such plans were being used for the benefit of the participants and beneficiaries of the plan or whether such assets were being used for the personal benefit of the defendant or other unauthorized persons. Knowledge of the unauthorized nature of the taking may be inferred from knowledge that one's actions were contrary to provisions of the statutory laws, regulations, agreements, and documents by which the plans and connected fund were established, maintained, and administered.

For the purpose of determining this intent on the part of the defendant, you may consider any statements made and any acts done or not done by the defendant, as well as all the facts and circumstances in evidence which surround or attend the defendant's actions or statements, which may aid you in determining the defendant's state of mind. Evidence that the defendant concealed information about the plans from persons to whom he or she owed a duty of disclosure is also relevant to the defendant's knowledge that his actions were unauthorized.

## Authority

United States v. Andreen, 628 F.2d 1236, 1241 (9th Cir. 1980) ("The essence of the crime is theft and in the context of . . . pension plans the offense includes a taking or appropriation that is unauthorized, if accomplished with specific criminal intent. In this respect lack of authorization may be shown if the diversion is substantially inconsistent with the fiduciary purposes and objectives of the . . . pension plan, as set forth by statutes, bylaws, charters, or trust documents which govern uses of the funds in question.");

United States v. Andreen, 628 F.2d 1236, 1241 at footnote 8 (9th Cir. 1980) (" . . . scienter . . . is an essential element of the crime. . . . The act to be criminal must be willful, which means an act done with a fraudulent intent or a bad purpose or an evil motive.") (declining to decide whether fraudulent intent is equivalent to a reckless disregard for the interests of the protected fund);

74

Accord United States v. Harris, 185 F.3d 999, 1006 (9th Cir. 664 1999) (section 664 scienter requires "act to be criminal must be willful, which means an act done with a fraudulent intent or a bad purpose or an evil motive.") ("A rational juror could conclude beyond a reasonable doubt that Harris had this *mens rea.* He diverted almost all the money in the plan, close to a million dollars, away from the secure investments that would fund his employees' retirements, and into the risky development projects he and his partners needed cash for. Intent could be inferred from the tricks and deceptions Harris used to cover up what he did.");

United States v. Ford, 632 F.2d 1354, 1362 (9th Cir. 1980) (§ 664 requires defendants were "sufficiently aware of the facts to know that they were acting wrongfully and contrary to the trust placed in them by the pension trust beneficiaries.");

United States v. Krimsky, 230 F.3d 855, 861 (6th Cir. 2000).("The portion of the jury instructions to which Krimsky now objects states that "[a]cting with 'specific intent' means acting with intent to deprive the retirement plan of its funds or with reckless disregard for the interests of the retirement plan.") ("After reviewing the law of this Circuit, we find that specific intent for the theft or embezzlement of funds in violation of § 664 is the same as that of §§ 371, 656, and 657. The specific intent required for finding a violation of § 664 includes reckless disregard for the interests of the plan. Accordingly, the district court's jury instructions with regard to § 664 were correct.");

"Lack of authorization and benefit"

United States v. Mett, 178 F.3d 1058 (1999), 1067-1068 (9th Cir.1999) (". . . we have recognized in both the pension fund and union fund contexts that facts pertaining to authorization and benefit (whether to plan participants or the union) may be relevant to intent.  See United States v. Thordarson, 646 F.2d 1323, 1336 (9th Cir. 1981); Andreen, 628 F.2d at 1242. We have even gone so far as to say that, in the right case, 'these factors may be crucial in determining the defendant's intent.' Thordarson, 646 F.2d at 1336.")

United States v. Mett, 178 F.2d at 1068 (also concluding " . . . that those who embezzle from ERISA pension funds cannot argue that their otherwise illegal transactions were 'authorized' by the plan participants because the participants themselves lack the legal power to 'authorize' such a diversion of pension monies. Consequently, when a pension fund embezzler argues that the plan participants "authorized" the embezzlement, it is little different from arguing that complete strangers 'authorized' the illicit transactions. This sort of evidence is simply irrelevant to the scienter inquiry required to support a conviction under 18 U.S.C. § 664.") (citing anti-alienation provisions of ERISA at 29 U.S.C. § 1056(d) prohibiting plan participants from transferring their vested pension benefits to third parties and rejecting contrary dicta in United States v. Todd, 108 F.3d 1329 (11th Cir.1997)) (material in brackets added);

United States v. McCarthy, 271 F.3d 387, 397-98 (2d Cir. 2001) (upholding jury charge instructing that "In making a determination whether the defendant acted with specific criminal intent to deprive the plan or fund connected therewith of the use of its funds, you may consider the following: 1. Whether or not the alleged use of the funds of the plan were authorized and whether or not the defendant had a good-faith belief that such use was authorized by law; and 2. Whether or not the defendant had a good-faith belief that such use of the funds of the plan benefitted the participants and beneficiaries of the plan.");

McCarthy, 271 F.3d at 398 ("McCarthy's argument that "he believed in good faith that the use of the funds was authorized or would be authorized" fails because neither the Plans' trustees nor their participants could authorize the transactions. Therefore, McCarthy could prevail only by showing he had a good faith belief his actions were authorized by law. The district court correctly instructed the jury.") (but declining to also hold that authorization and participant benefit jury charges were inappropriate in Section 664 cases because the plan participants lack the authority to approve a diversion of pension monies to the benefit of their employer);

United States v. Wiseman, 274 F.3d 1235, 1240 (9th Cir. 2001) ("While the defendant must "knowingly act [ ] wrongfully to deprive another of property," there is no requirement that the defendant also know his conduct was illegal.") (citations omitted);

Wiseman, at 274 F.3d 1243 ("Wiseman's participation in the concealment of the withdrawal of plan funds also supports the court's finding that Wiseman possessed the requisite criminal intent. See United States v. Harris, 185 F.3d 999, 1006 (9th Cir.1999) (inferring intent from acts of concealment). Moreover, Wiseman's criminal intent can be inferred from the substantial benefit he received from the embezzlement of plan funds. See Andreen, 628 F.2d at 1245 (noting that criminal intent 'may be inferred from ... evidence that transfers yielded personal profit to the trustee').")

76

**Government's Proposed Instruction No. 49**

**Types of Racketeering Activity Alleged in the Indictment: Wire Fraud**

The third and last type of racketeering activity alleged in Count One is wire fraud.

This law makes it a crime to use interstate wire communication facilities in carrying out a scheme to defraud. To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: the defendant devised or intended to devise a scheme to defraud. A "scheme to defraud" includes a scheme to deprive another of money or property.

*Second*: the defendant acted with specific intent to defraud. An "intent to defraud" means an intent to deceive or cheat someone;

*Third*: the defendant caused another person to use interstate or foreign wire communications facilities for the purpose of carrying out the scheme. To "cause" interstate wire communications facilities to be used is to do an act with knowledge that the use of the wire facilities will follow in the ordinary course of business or where such use can reasonably be foreseen;

*Fourth*: the scheme employed false or fraudulent pretenses, representations, or promises that were material. A representation is "false" if it is known to be untrue or is made with reckless indifference as to its truth or falsity. A representation would also be "false" when it constitutes a half truth, or effectively omits or conceals a material fact, provided it is made with intent to defraud. A false statement is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed.

77

**Authority**

Federal Jury Practice and Instructions, Pattern Crim. Jury Instr. 10th Cir. 2.57 (2025) and cited cases.

**Government's Proposed Instruction No. 50**

**<u>Elements of Wire Fraud</u>**

A "scheme to defraud" is conduct intended to or reasonably calculated to deceive persons of ordinary prudence or comprehension.

A "scheme to defraud" includes a scheme to deprive another of money, property, or the intangible right of honest services.

An "intent to defraud" means an intent to deceive or cheat someone.

A representation is "false" if it is known to be untrue or is made with reckless indifference as to its truth or falsity.

A representation would also be "false" when it constitutes a half truth, or effectively omits or conceals a material fact, provided it is made with intent to defraud.

A false statement is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed.

To "cause" interstate wire communications facilities to be used is to do an act with knowledge that the use of the wire facilities will follow in the ordinary course of business or where such use can reasonably be foreseen.

**<u>Authority</u>**

Federal Jury Practice and Instructions, Pattern Crim. Jury Instr. 10th Cir. 2.57 (2025) and cited cases.

United States v. Zar, 790 F.3d 1036, 1049–50 (10th Cir. 2015); BancOklahoma Mortg. Corp. v. Capital Title Co., 194 F.3d 1089, 1102 (10th Cir. 1999); United States v. Smith, 133 F.3d 737, 742–43 (10th Cir. 1997); United States v. Galbraith, 20 F.3d 1054, 1056 (10th Cir. 1994); United States v. Drake, 932 F.2d 861, 863 (10th Cir. 1991).

In *Neder v. United States*, 527 U.S. 1, 25 (1999), the Court held that "materiality of falsehood" is an essential element of wire fraud.  Where false representations are involved in the scheme, they must be material. Id.   However, a scheme to defraud does not necessarily involve affirmative misrepresentations.  United States v. Cochran, 109 F.3d 660, 664 (10th Cir. 1997); United States v. Cronic, 900 F.2d 1511, 1513–14 (10th Cir. 1990), overruled on other grounds by United States v. Iverson, 818 F.3d 1015 (10th Cir. 2016).  *See also* Neder, 527 U.S. at 22 (noting that, at common law, fraud required misrepresentation, concealment, or omission of material fact).

**Government's Proposed Instruction No. 51**

**The Fifth Element of RICO Conspiracy:**
**Pattern of Racketeering Activity**

That concludes my discussion of the fifth element of RICO conspiracy—a pattern of racketeering activity. To summarize, Count One of the Indictment alleges a pattern of racketeering activity consisting of multiple acts of embezzlement from union funds, embezzlement from pension and welfare funds, and wire fraud as I have just described them to you.

**Government's Proposed Instruction No. 51**

**<u>Counts Two Through Twelve, Fourteen through Sixteen, Eighteen through Twenty-Four, Twenty-Seven and Twenty-Eight, Thirty and Thirty-One, and Thirty-Three through Forty-Eight:  Theft from a Labor Organization</u>**

Counts Two Through Twelve, Fourteen through Sixteen, Eighteen through Twenty-Four, Twenty-Seven and Twenty-Eight, Thirty and Thirty-One, and Thirty-Three through Forty-Eight charge separate instances of theft from a labor organization in violation of Title 29, United States Code, section 501(c).  In assessing these counts, you should apply the same elements of theft from a labor organization as I have described them to you above.

Remember that each count are separate offenses charging different defendants with violating section 501(c) with respect to different alleged money and property.  For you to find a particular defendant guilty of either Count Two, Count Three, Count Four, and so forth, you must conclude beyond a reasonable doubt that the Government has established the four elements of the section 501(c) offense with respect to the specific allegations in each count.

Your deliberations on the counts listed above from Counts Two through Forty-Eight must be conducted separately.  In addition, your deliberations with respect to each defendant in each count must be conducted separately.  You do not need to find that each and every defendant charged in each count was guilty in order to find one or more defendants guilty of that count.  You do, however, need to be unanimous in finding any particular defendant guilty of any particular count.

**Government's Proposed Instruction No. 52**

**<u>Counts Two Through Twelve, Fourteen through Sixteen, Eighteen through Twenty-Four, Twenty-Seven and Twenty-Eight, Thirty and Thirty-One, and Thirty-Three through Forty-Eight:  Theft from a Labor Organization</u>**

Attached to these instructions, you will find a chart which lists the counts listed above from Counts Two through Forty-Eight which identifies which particular expenditure of Boilermakers Union funds is charged and which defendants are charged in that respective count.  The chart contains similar listings for each additional count from Count Forty-Nine through Fifty-Seven.  Please, as I have instructed, you must consider each defendant separately with respect to each count.

Finally, you will note that the counts listed above from Counts Two through Forty-Eight bear particular dollar amounts taken in the alleged thefts from the Boilermakers Union.  The exact dollar amount taken, however, is not an element of the offenses charged in the counts listed above from Counts Two through Forty-Eight.  In other words, you do not have to agree on the exact dollar amount taken in each count in order to find any defendant guilty of that count.  You must be unanimous, however, that the Government has proven each of the elements beyond a reasonable doubt to convict a defendant of that count.

**Government's Proposed Instruction No. 53**

**<u>Count Forty-Nine:  Health Care Fraud Conspiracy</u>**

Count Forty-Nine of the Indictment charges Defendants Newton Jones, William Creeden, and Kateryna Jones with health care fraud conspiracy in violation of Title 18, United States Code, section 1347.  Section 1347 provides that:

(a) Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice-

(1) to defraud any health care benefit program; or

(2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services . . . .

commits the offense.

Section 1347 further provides that, "[A] person need not have actual knowledge of this section or specific intent to commit a violation of this section."

18 U.S.C. § 1347.

**Government's Proposed Instruction No. 54**

## Count Forty-Nine:  Health Care Fraud Conspiracy

Title 18, United States Code, section 24(b) defines "health care benefit program" as:

any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract.

18 U.S.C. § 24.

**Government's Proposed Instruction No. 55**

**<u>Count Forty-Nine:  Health Care Fraud Conspiracy</u>**

In assessing whether the charged defendants committed the health care fraud conspiracy charged in Count Forty-Nine, you may apply the elements of conspiracy as I explained them to you under Count One.  In order to prove those defendants committed health care fraud conspiracy, however, the government is not required to prove that the objective of committing health care fraud in violation of Title 18, United States Code, Section 1347 was actually achieved.

**Government's Proposed Instruction No. 56**

**<u>Count Forty-Nine:  Element of Health Care Fraud</u>**

The offense of health care fraud includes the following elements:

<u>First</u>, That the Boilermakers Health Care Plan was a health care benefit program;

<u>Second</u>, That the defendant knowingly executed or attempted to execute a scheme or artifice to defraud the Boilermakers Health Care Plan or a scheme or artifice to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of the Boilermakers Health Care Plan

<u>Third</u>, That the scheme or artifice was in connection with the delivery of or payment for health care benefits, items, or services; and

<u>Fourth</u>, That the defendant knowingly and willfully executed or attempted to execute that scheme or artifice with the intent to defraud.

I will now discuss those four elements individually.

**<u>Authority</u>**

18 U.S.C. § 1347(a)(2)

Mod. Crim. Jury Instr. 3rd Cir. 6.18.1347, Mod. Crim. Jury Instr. 3rd Cir. 6.18.1347;

<u>See</u> <u>United States v. Wheeler</u>, 889 F. Supp. 2d 64, 71 (D.D.C. 2012), aff'd, 753 F.3d 200 (D.C. Cir. 2014); <u>United States v. Hunt</u>, 521 F.3d 636, 645 (6th Cir. 2008) (setting forth elements of offense).

**Government's Requested Instruction No. 57**

**First Element--"Health Care Benefit Program"**

Count Forty-Nine  of the Indictment alleges that the Boilermakers Health Care Plan was

the "health care program" in the health care fraud conspiracy engaged in by Defendants Newton

Jones, William Creeden, and Kateryna Jones.

**Authority**

United States v. Gelin, 712 F.3d 612, 618 (1st Cir. 2013); United States v. Frost, 355 F. App'x 230, 233 (10th Cir. 2009); United States v. Redcorn, 528 F.3d 727, 733 (10th Cir. 2008); United States v. Caldwell, 302 F.3d 399, 412 (5th Cir. 2002); United States v. Stoner, 98 F.3d 527, 535 (10th Cir. 1996) (finding private health insurance policies to be health care benefit programs).

United States v. Makarita, 576 F. App'x 252, 264 (4th Cir. 2014) (determining the Aetna corporation to qualify as "health care benefit program" affecting commerce)

**Government's Requested Instruction No. 58**

**Second Element--"Fraudulent Scheme"**

The phrases "a scheme or artifice to defraud" or "a scheme and artifice to obtain money or property" means any deliberate plan of action or course of conduct by which someone intends to deceive or cheat another, or to deprive another of something of value, such as money or other property.

The term "false or fraudulent pretenses, representations, or promises" means a statement or assertion which concerns a material or important fact or a material or important aspect of the matter in question and that was either known to be untrue at the time it was made or used, or that was made or used with reckless indifference as to whether it was, in fact, true or false.

The term "false or fraudulent pretense, representation, or promise" includes both actual, direct false statements or misrepresentations, as well as half-truths or other omissions, such as the knowing concealment of material facts, which were made or used with the intent to defraud. The false or fraudulent pretenses, representations, or promises, in whatever form, must concern a material fact or aspect of the matter in question. A material fact is a fact that would be of importance to a reasonable person in making a decision about a particular matter or transaction. A statement is material if it has a natural tendency to influence or is capable of influencing a decision.

The scheme or artifice to defraud or to obtain money or property need not be based upon verbalized words alone, nor need it involve any misrepresentations of fact or affirmative false statements, although such conduct may be indicative of a scheme to defraud. Rather, the words "to defraud" have the common understanding of wronging one in his property rights by dishonest methods or schemes, and usually signify the deprivation of something of value by trick, deceit, deception, or overreaching

It is not necessary for the Government to prove that the Defendants Newton Jones, William Creeden, and Kateryna Jones were successful in defrauding anyone, or in obtaining money or property, through the alleged scheme. The success or failure of the scheme is not relevant. An unsuccessful fraudulent scheme or plan is as illegal as a scheme or plan that is ultimately successful.

### Authority

Fifth Circuit Pattern Jury Instructions, Criminal Offense Instrs. 2.59 (West 2001) (as modified)

Mod. Crim. Jury Instr. 3rd Cir. 6.18.1347, Mod. Crim. Jury Instr. 3rd Cir. 6.18.1347;

United States v. Hickman, 331 F.3d 439, 445–46 (5th Cir. 2003).

United States v. Shaffer, 599 F.2d 678, 679 (5th Cir. 1979); United States v. Netterville, 553 F.2d 903, 909 (5th Cir. 1977) (mail fraud statute does not require that alleged scheme be ultimately successful in order for offense to be committed).

United States v. Patterson, 534 F.2d 1113, 1114 (5th Cir. 1976) ("The Wire Fraud Statute does not require that the scheme be successful, or even that the victim be deceived. It need only be shown that there was a scheme and that interstate wires were 'used as a step in the execution of the scheme.'") (citing Huff v. United States, 301 F.2d 760, 765 (5th Cir.), cert. denied, 371 U.S. 922 (1962));

**Government's Requested Instruction No. 59**

**<u>Third Element--"In connection with the delivery of or payment for health care benefits, items or services"</u>**

The third element requires that the scheme or artifice to defraud to obtain money and property from the victim must be in connection with the delivery of or payment for health care benefits, items, or services.

**Government's Requested Instruction No. 60**

**Fourth Element--"Intent to Defraud"**

Finally, the fourth element of health care fraud is the intent to defraud. An "intent to defraud" means an intent to deceive or cheat someone and to cause some harm to result from the deceit. A defendant has the intent to defraud if he acts knowingly with the specific intent to deceive for the purpose of causing pecuniary loss to another or bringing about some financial gain to himself. Direct proof of fraudulent intent is not necessary; you may infer the defendant's intent from the surrounding circumstances.

**Authority**

Fifth Circuit Pattern Jury Instructions, Criminal Offense Instrs. 2.59 (West 2001)(as modified);

"This statute protects both property rights and the intangible right to honest services. In property rights cases, the Government must show that the defendant contemplated or intended some harm to the property rights of the victim or a property gain to himself." United States v. Leonard, 61 F.3d 1181, 1187 (5th Cir. 1995); United States v. Stouffer, 986 F.2d 916, 922 (5th Cir.1993), cert. denied, 114 S.Ct. 115 (1993); United States v. St. Gelais, 952 F.2d 90, 95 (5th Cir.1992), cert. denied, 113 S.Ct. 439 (1992).

Carpenter v. United States, 484 U.S. 19, 27 (1987)("The concept of 'fraud' includes the act of embezzlement, which is the fraudulent appropriation to one's own use of the money or goods entrusted to one's care by another.")(citations and quotations omitted);

McNally v. United States, 483 U.S. 350, 358 (1987)(the words "to defraud" in the mail fraud statute have the "common understanding" of "wronging one in his property rights by dishonest methods or schemes and usually signify the deprivation of something of value by trick, deceit, chicane or overreaching.") (citations and quotations omitted);

United States v. Bankston, 182 F.3d 296, 314 (5th Cir. 1999)(definition of "intent to defraud");

United States v. Townley, 665 F.2d 579, 585 (5th Cir. 1982)("Under the mail fraud statute, it is just as unlawful to speak 'half truths', or to omit to state facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.")

**Government's Requested Instruction No. 61**

**Health Care Fraud**

Count Fifty charges Defendants Newton Jones, William Creeden, and Kateryna Jones with the completed offense of health care fraud in violation of Title 18, United States Code, section 1347.

Counts Fifty-One and Fifty-Two charge Defendants Newton Jones and William Creeden with the completed offense of health care fraud in violation of Title 18, United States Code, section 1347.

In determining whether the charged defendants committed the offenses charged in Counts Fifty, Fifty-one, and Fifty-two, I instruct you that you must find beyond a reasonable duty that the particular defendant charged in each count committed element of the four elements of health care fund as I have just explained them.

94

**Government's Requested Instruction No. 62**

**Wire Fraud Conspiracy**

Count Fifty-Three charges Defendants Newton Jones and William Creeden with wire fraud conspiracy the completed offense of health care fraud in violation of Title 18, United States Code, section 1347. In determining whether Defendants Newton Jones and William Creeden committed the offense charge in Count Fifty-three, you should apply the same instructions regarding wire fraud conspiracy as I have described them above.

Thus, in deliberating over Count Fifty-Three you must consider for each defendant whether they committed each of the four elements beyond a reasonable doubt: his law makes it a crime to use interstate wire communication facilities in carrying out a scheme to defraud: 1) that the defendant devised or intended to devise a scheme to defraud; 2) that the scheme employed false or fraudulent pretenses; 3) that the defendant acted with specific intent to defraud; and 4) that the defendant caused another person to use interstate or foreign wire communications facilities for the purpose of carrying out the scheme.

**Government's Requested Instruction No. 63**

**Wire Fraud Conspiracy**

**Unanimity**

You should notice that Count Fifty-three of the Indictment lists seven instances of alleged wire transmissions occurring on different occasions. It is not necessary for you to all agree that every particular wire transmission was intended to carry out the purposes of the alleged conspiracy. On the other hand, for you to find that the particular defendant committed wire fraud conspiracy, you must all agree unanimously about at least one of the seven instances of wire transmissions was intended to carry out the purposes of the alleged conspiracy.

**Government's Requested Instruction No. 64**

**<u>Theft from a Pension or welfare plan</u>**

Counts Fifty-Four and Fifty-Five charge Defendant Newton Jones and William Creeden respectively with embezzlement, stealing or unlawful and willful conversion or abstraction from an employee benefit plan in violation of 18 U.S.C. § 664  In determining whether the particular defendant is guilty of the alleged offenses in Counts Fifty-Four and Fifty-Five, you may apply the same elements of section 664 as I described them above.  In Count Fifty-Four and Fifty-Five, the particular employee pension of welfare plan is the Bank of Labor Retirement Plan.

**Government's Requested Instruction No. 65**

**Theft from a Pension or welfare plan**

Counts Fifty-Six and Fifty-Seven charge Defendant Newton Jones and William Creeden respectively with embezzlement, stealing or unlawful and willful conversion or abstraction from an employee benefit plan in violation of 18 U.S.C. § 664  In determining whether the particular defendant is guilty of the alleged offenses in Counts Fifty-Four and Fifty-Five, you may apply the same elements of section 664 as I described them above.  In Count Fifty-Four and Fifty-Five, the particular employee pension of welfare plan is the Boilermaker-Blacksmith National Pension Trust.

**Government's Requested Instruction No. 66**

<u>**Causing Commission of Offense by Another**</u>

Finally, you will notice that the counts between Counts Two through Fifty-Seven also charge defendant(s) with violating section 2 of Title 18 of the United States Code, which provides that: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

This law makes it a crime to intentionally help someone else commit a crime. To find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: every element of the charged crime as outlined in the above Instructions was committed by someone other than the defendant, and

*Second*: the defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means that the government must prove that the defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help him.

The defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

<u>**Authority**</u>

Tenth Circuit Federal Pattern Jury Instructions (Criminal) 2.06 (2025 ed.), and cited authority.

**Government's Requested Instruction No. 67**

**<u>Duty to Deliberate</u>**

In a moment the bailiff will escort you to the jury room and provide each of you with a copy of the instructions that I have just read. Any exhibits admitted into evidence will also be placed in the jury room for your review

When you go to the jury room, you should first select a foreperson, who will help to guide your deliberations and will speak for you here in the courtroom. The second thing you should do is review the instructions. Not only will your deliberations be more productive if you understand the legal principles upon which your verdict must be based, but for your verdict to be valid, you must follow the instructions throughout your deliberations. Remember, you are the judges of the facts, but you are bound by your oath to follow the law stated in the instructions.

To reach a verdict, whether it is guilty or not guilty, all of you must agree. Your verdict must be unanimous on each count of the indictment. Your deliberations will be secret. You will never have to explain your verdict to anyone.

You must consult with one another and deliberate in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if convinced that you were wrong. But do not give up your honest beliefs solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times, you are judges—judges of the facts. You must decide whether the government has proved the defendant guilty beyond a reasonable doubt.

**Government's Requested Instruction No. 68**

**<u>Verdict Form</u>**

A form of verdict has been prepared for your convenience.

The foreperson will write the unanimous answer of the jury in the space provided for each count of the indictment, either guilty or not guilty. At the conclusion of your deliberations, the foreperson should date and sign the verdict.

If you need to communicate with me during your deliberations, the foreperson should write the message and give it to the bailiff. I will either reply in writing or bringyou back into the court to respond to your message. Under no circumstances should you reveal to me the numerical division of the jury.

**<u>Authority</u>**

Tenth Circuit Federal Pattern Jury Instructions (Criminal) 1.23 (2025 ed.).

**Government's Requested Instruction No. 69**

**<u>Communication with Court</u>**

If you want to communicate with me at any time during your deliberations, please write down your message or question and give it to [the marshal] [the bailiff] [my law clerk], who will bring it to my attention. I will respond as promptly as possible, either in writing or by having you return to the courtroom so that I can address you orally. I caution you, however, that with any message or question you might send, you should not tell me any details of your deliberations or indicate how many of you are voting in a particular way on any issue.

Let me remind you again that nothing I have said in these instructions, nor anything I have said or done during the trial and sentencing proceedings, was meant to suggest to you what I think your decision should be.  That is your exclusive responsibility.

**<u>Authority</u>**

Tenth Circuit Federal Pattern Jury Instructions (Criminal) 1.44 (2025 ed.).

**ATTACHMENT**

| Count | Defendant(s) | Approximate Dates | Destination(s) | Traveler(s) | Estimated Cost |
|---|---|---|---|---|---|
| 2 | Newton Jones and William Creeden | Sept. 6-14, 2019 | United Arab Emirates, Belgium, and Netherlands | One employee of Boilermakers Union | $15,000 |
| 3 | Newton Jones and William Creeden | Sept. 8-14, 2019 | Stuttgart, Germany | Tyler Brown and one additional employee of the Boilermakers Union | $30,000 |
| 4 | Newton Jones and William Creeden | Oct. 6-11, 2019 | Dusseldorf, Germany | Three employees of the Boilermakers Union | $45,000 |
| 5 | Newton Jones and William Creeden | Nov. 2-9, 2019 | Marseille, France, Steinbach Germany | Warren Fairley, Tyler Brown, and one additional employee of the Boilermakers Union | $45,000 |
| 6 | Newton Jones, William Creeden, and Kateryna Jones | Nov. 5-26, 2019 | Odessa, Ukraine, Milan, and Verona, Italy | Newton Jones and Kateryna Jones | $30,000 |
| 7 | Newton Jones and William Creeden | Nov. 16-23, 2019 | Geneva, Switzerland | Warren Fairley, Tyler Brown, and four additional employees of the Boilermakers Union | $90,000 |
| 8 | Newton Jones and William Creeden | Nov. 16-20, 2019 | Geneva, Switzerland | Tyler Brown, and four additional employees of the Boilermakers Union | $75,000 |
| 9 | Newton Jones and William Creeden | Nov. 18-23, 2019 | Geneva, Switzerland | Warren Fairley and Tyler Brown | $30,000 |
| 10 | Newton Jones, William Creeden, and Lawrence McManamon | Dec. 1-8, 2019 | Madrid, Spain | Newton Jones, Warren Fairley, Lawrence McManamon, Tyler Brown, and six additional employees of the Boilermakers Union | $165,000 |

| 11 | Newton Jones, William Creeden, Kateryna Jones, and Lawrence McManamon | Jan. 31, 2020- Feb. 10, 2020 | London, England | Newton Jones, Kateryna Jones, William Creeden, Warren Fairley, Lawrence McManamon, Tyler Brown, and five additional employees of the Boilermakers Union | $165,000 |
|---|---|---|---|---|---|
| 12 | Newton Jones and William Creeden | Feb. 20, 2020 | New Zealand | Employee Number One and Employee Number Two | $30,000 |
| 14 | Newton Jones and William Creeden | Aug. 13, 2021 | Italy | Newton Jones | $15,000 |
| 15 | Newton Jones and William Creeden | Feb. 27 -Mar. 1, 2020 | Italy to Marco Island, FL | One official of an Italian union of electrical workers | $15,000 |
| 16 | Newton Jones, William Creeden, Kateryna Jones, and Lawrence McManamon | Oct. 31- Nov. 12, 2021 | London, Great Britain, Glascow, Scotland and Amsterdam, Netherlands | Newton Jones, Kateryna Jones, William Creeden, Warren Fairley, Lawrence McManamon, Tyler Brown, Employee Number One, Employee Number Two, and four additional employees and guest of the Boilermakers Union | $180,000 |
| 18 | Newton Jones and William Creeden | Mar. 27- April 4, 2022 | Geneva, Switzerland | Two employees of the Boilermakers Union | $30,000 |
| 19 | Newton Jones and William Creeden | Apr. 17-26, 2022 | Rome/Paestum, Italy | One employee of the Boilermakers Union | $15,000 |
| 20 | Newton Jones, William Creeden, and Lawrence McManamon | Apr. 8- May 2, 2022 | Santa Caterina and Paestum, Italy | William Creeden, Lawrence McManamon, Employee Number One, Employee Number Two, and two additional employees of the Boilermakers Union | $75,000 |

| 21 | Newton Jones, William Creeden, Kateryna Jones, and Lawrence McManamon | May 6-11, 2022 | York/Sheffield, Great Britain | Newton Jones, Kateryna Jones, Lawrence McManamon, Tyler Brown, and four additional employees of the Boilermakers Union | $120,000 |
|----|----|----|----|----|----|
| 22 | Newton Jones and William Creeden | June 6-11, 2022 | Bilbao, Spain | Four employees of the Boilermakers Union | $60,000 |
| 23 | Newton Jones and William Creeden | June 18-25, 2022 | Amsterdam, Netherlands and Geneva, Switzerland | Four employees of the Boilermakers Union | $60,000 |
| 24 | Newton Jones and William Creeden | July 14, 2022 | London to North Carolina | One official of an English union of salaried rail workers | $15,000 |
| 27 | Newton Jones and William Creeden | Oct. 16-21, 2022 | Bremen, Germany | Three employees of the Boilermakers Union | $45,000 |
| 28 | Newton Jones and William Creeden | Jan. 24, 2023 | Berlin, Germany | William Creeden | $15,000 |
| 30 | Newton Jones and William Creeden | June 3-10, 2023 | Norway, Belgium, France | One employee of the Boilermakers Union | $15,000 |
| 31 | Newton Jones and William Creeden | June 17-24, 2023 | Cape Town, South Africa | Two employees of the Boilermakers Union | $30,000 |
| 33 | Newton Jones and William Creeden | Oct. 10-14, 2023 | Steinbach, Germany | One employee of the Boilermakers Union | $15,000 |

| Count | Defendant(s) | Approximate Dates | Expenditure(s) | Estimated Cost |
|---|---|---|---|---|
| 34 | Newton Jones, William Creeden, and Kateryna Jones | September 2019 to on or about August 2023 | personal restaurant and merchandise charges on the Boilermakers Union credit card by Newton Jones and Kateryna Jones | $38,019.39 |
| 35 | Newton Jones, William Creeden, and Kateryna Jones | September 2019 to on or about August 2023 | Salary for Kateryna Jones | $587,981.85 |
| 36 | Newton Jones and William Creeden | September 2019 to on or about August 2023 | Salary for Cullen Jones | $413,340.03 |
| 37 | Newton Jones and William Creeden | September 2019 to on or about February 2024 | Salary increases for Employees One | $98,413.02 |
| 38 | Newton Jones and William Creeden | September 2019 to on or about February 2024 | Salary increases for Employees Two | $231,367.61 |
| 39 | Newton Jones and William Creeden | August 2019 to June 2020 | Relocation Expenses from Boone, North Carolina to Kansas City, Missouri and monthly rent for Employees One and Two | $17,754.22 |
| 40 | Newton Jones and William Creeden | June 2020 to June 2021 | Relocation Expenses from Kansas City, Missouri to Chapel Hill, North Carolina and monthly rent for Employees One and Two | $25,814.19 |
| 41 | Newton Jones and William Creeden | September 2019 to on or about August 2023 | Cash Payouts to Newton Jones for Unused Vacation Time | $157,886.95 |

105

| 42 | Newton Jones, William Creeden, and Kateryna Jones | September 2019 to on or about August 2023 | Cash Payouts to William Creeden for Unused Vacation Time | $413,478.24 |
|---|---|---|---|---|
| 43 | Newton Jones and William Creeden | September 2019 to on or about August 2023 | Cash Payouts to Warren Fairley for Unused Vacation Time | $51,712.08 |
| 44 | Newton Jones, William Creeden, and Kateryna Jones | September 2019 to on or about August 2023 | Cash Payouts to Kateryna Jones for Unused Vacation Time | $118,673.01 |
| 45 | Newton Jones, William Creeden, and Lawrence McManamon | September 2019 to on or about August 2023 | Cash Payouts to Lawrence McManamon for Unused Vacation Time | $51,713.20 |
| 46 | Newton Jones and William Creeden | September 2019 to on or about August 2023 | Cash Payouts to Cullen Jones for Unused Vacation Time | $73,753.83 |
| 47 | Newton Jones and William Creeden | April 2023 to on or about October 2023 | Expenses for forensic surveillance performed by Mandiant and legal services by Blake and Uhlig law firm | $185,000 |
| 48 | Newton Jones and William Creeden | September 2021 to on or about August 2023 | $7,000,000 in loans from the Boilermakers Union MORE Fund to the Bank of Labor | $7,000,000 |

| Count | Defendant(s) | Approximate Dates | Charge |
|---|---|---|---|
| 49 | Newton Jones, William Creeden, and Kateryna Jones | January 2015, and continuing at least through June 2024 | Conspiracy to Commit Health Care Fraud Associated with Boilermakers Union Health Care Plan |

| Count | Defendant(s) | Approximate Dates | Expenditure(s) | Estimated Cost |
|---|---|---|---|---|
| 50 | Newton Jones, William Creeden, and Kateryna Jones | August 2019- June 2024 | Reimbursements for Medical Care for Kateryna Jones from the Boilermakers Union Health Care Plan | $3,903.16 |
| 51 | Newton Jones and William Creeden | August 2019- June 2024 | Reimbursements for Medical Care for Cullen Jones from the Boilermakers Union Health Care Plan | $18,026.07 |
| 52 | Newton Jones and William Creeden | August 2019- June 2024 | Reimbursements for Medical Care for Individual Number One and his descendants Jones from the Boilermakers Union Health Care Plan | $14,082.85 |

| Count | Defendant(s) | Approximate Dates | Charge |
|---|---|---|---|
| 53 | Newton Jones and William Creeden | January 2009, and continuing at least through August 2024 | Wire Fraud Conspiracy Associated with Bank of Labor |

| Count | Defendant(s) | Approximate Dates | Expenditure(s) | Estimated Cost |
|---|---|---|---|---|
| 54 | Newton Jones and William Creeden | September 2019 to August 2024 | Retirement Payout to Newton Jones from the Bank of Labor Retirement Plan | $703,238.31 |
| 55 | Newton Jones and William Creeden | September 2019 to August 2024 | Retirement Payout to William Creeden from the Bank of Labor Retirement Plan | $740,642.07 |

| 56 | Newton Jones and William Creeden | September 2019 to August 2024 | Monthly Retirement Payments to Newton Jones from the Boilermaker-Blacksmith National Pension Trust | $12,012.16 |
|---|---|---|---|---|
| 57 | Newton Jones and William Creeden | September 2019 to August 2024 | Monthly Retirement Payments to William Creeden from the Boilermaker-Blacksmith National Pension Trust | $10,087.60 |

## CERTIFICATE OF SERVICE

I hereby certify that on April 22 2026, the foregoing was electronically filed with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following: any attorney entering their appearance on behalf of a defendant in the above-captioned case.

/s/ *Vincent Falvo*
Vincent Falvo
Trial Attorney