IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

     **Plaintiff,**

v.

NEWTON JONES (01),
WILLIAM CREEDEN (02),
KATERYNA JONES (03),
LAWRENCE MCMANAMON (05),

     **Defendants.**

Case No. 24-20070-DDC

## MEMORANDUM AND ORDER

The government seeks to admit co-conspirator statements at defendants Newton Jones, William Creeden, Kateryna Jones, and Lawrence McManamon's trial under Fed. R. Evid. 801(d)(2)(E). But they haven't provided the court with those statements yet. Instead, the government's Amended Motion for Admission of Coconspirator Statements (Doc. 288) identified *categories* of co-conspirator statements that the government anticipated could come up at trial. Doc. 288 at 11. Before the *James*[1] hearing, the court announced that it didn't intend to rule on the admissibility of co-conspirator statements by category, as the government's motion requested. Instead, the court clarified, it would hear evidence to establish the macro-level of the *James* analysis—*i.e.*, whether the government could demonstrate that a conspiracy existed and that defendants were members of that conspiracy. But the court would reserve any ruling on the

---

[1]     The court conducted a *James* hearing on April 10, 2026. "A *James* hearing is an evidentiary hearing to establish the existence of a predicate conspiracy for purposes of Rule 801(d)(2)(E)." *United States v. Otuonye*, 995 F.3d 1191, 1204 n.14 (10th Cir. 2021) (referencing *United States v. James*, 590 F.2d 575 (5th Cir. 1979)). A *James* hearing is our Circuit's preferred procedure for making Fed. R. Evid. 801(d)(2)(E)'s required preliminary findings. *United States v. Stein*, 985 F.3d 1254, 1269 (10th Cir. 2021).

micro-level *James* analysis—*i.e.*, whether particular statements were made in the course and in furtherance of the conspiracy—until the government had provided the specific statements to the court. Once proffered, the court will rule on a statement-by-statement basis. So, this Order addresses just the so-called macro level *James* analysis—the purported existence of and membership in the conspiracy.

A further consequence of the government's decision to supply the court with categories of statements—and not the individual statements themselves—is that it limits the court's ability to engage in a full analysis even on these macro prongs. Tenth Circuit precedent provides that the court should examine both the specific hearsay statements and "some independent evidence"—that "need not be substantial"—to make a preliminary factual determination under Rule 801(d)(2)(E). *Otuonye*, 995 F.3d at 1204. Pairing the statements and the independent evidence together, the court then "must determine by a preponderance of the evidence that (1) a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, and (3) the statements were made in the course of and in furtherance of the conspiracy." *United States v. Alcorta*, 853 F.3d 1123, 1137 (10th Cir. 2017). All the government has provided to the court—so far—is some independent evidence. They haven't produced any statements. So, all the court can do now is determine, preliminarily, whether the proffered independent evidence—in isolation—meets the some-but-not-substantial standard to demonstrate that a conspiracy existed and that defendants were members of the conspiracy.

Based on evidence presented at the *James* hearing, the court preliminarily finds that the government has presented some independent evidence demonstrating the existence of a conspiracy involving defendants Newton Jones and William Creeden. The proffered independent evidence doesn't suffice, however, to demonstrate as much for Lawrence

McManamon and Kateryna Jones.  The court explains this preliminary finding, below.  But first, it reiterates the governing standard.

## I.    Legal Standard

Under Fed. R. Evid. 802, hearsay statements generally are inadmissible.  But Fed. R. Evid. 801(d)(2)(E) excludes a statement from the general hearsay rule where it "was made by the party's coconspirator during and in furtherance of the conspiracy."  Rule 801(d)(2) also clarifies that the statement doesn't "by itself establish . . . the existence of the conspiracy or participation in it[.]"  Instead, before "admitting statements into evidence under the coconspirator exception to the hearsay rule, the district court must determine by a preponderance of the evidence that

(1) a conspiracy existed,

(2) the declarant and the defendant were both members of the conspiracy, and

(3) the statements were made in the course of and in furtherance of the conspiracy."

*Alcorta*, 853 F.3d at 1137.  "A district court's preliminary conclusion that the predicate conspiracy existed at most must be supported by some 'independent evidence' of the conspiracy other than the proffered coconspirator statements themselves, although such evidence need not be substantial."  *Stein*, 985 F.3d at 1269 (quoting *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996)).  "Testimony of a government agent regarding his interactions or conversations with coconspirators is adequate independent evidence."  *Id.*

## II.    Analysis

Here, the government charged defendants with engaging in a conspiracy to embezzle union and other funds in various ways and commit wire fraud.  One of the government's theories includes embezzlement by extravagance—*i.e.*, misusing funds belonging to the International Brotherhood of Boilermakers (IBB) for personal rather than IBB's benefit.  As the government

describes it, defendants engaged in a criminal enterprise "to enrich the members of the conspiracy, embezzle union funds, commit wire fraud, and embezzle from pension and welfare funds." Doc. 288 at 8.

At the *James* hearing, the government elicited testimony from Jeremy Newman and Paula Musil. Mr. Newman is a senior investigator with U.S. Department of Labor, Office of Labor and Management Standards in the Kansas City, Missouri office. Doc. 293 at 5 (Hr'g Tr. 5:7–13). And he served as the lead investigator in this case. *Id.* at 7 (Hr'g Tr. 7:5–7). Ms. Musil is a senior investigator with the Employee Benefits Security Administration, a part of the Department of Labor. The government also introduced into evidence four plea agreements—admitted without objection for the purposes of the *James* hearing. Gov't Ex. 810 (defendant Cullen Jones's plea agreement) (also on the docket at Doc. 259) ; Gov't Ex. 811 (defendant Warren Fairley's plea agreement) (also on the docket at Doc. 257); Gov't Ex. 812 (defendant Kathy Stapp's plea agreement) (also on the docket at Doc. 79); Gov't Ex. 813 (Tyler Brown's plea agreement from a separate criminal case premised on similar allegations) (also docketed at *United States v. Brown*, 24-20047-DDC-1 (D. Kan. May 23, 2024), ECF 13).

At the end of the hearing, the court indicated that it would entertain supplemental briefs. Defendants Newton Jones, William Creeden, Kateryna Jones, and Lawrence McManamon filed a joint brief arguing that the government had failed to establish the existence of a conspiracy or defendants' membership in it. Doc. 296. Defendants Lawrence McManamon and Kateryna Jones also filed individual supplemental briefs. Doc. 297; Doc. 298. Defendant McManamon argued that the government had presented "no evidence whatsoever" that he had "agreed with anyone to enter into a conspiracy to commit a pattern of racketeering activity." Doc. 297 at 1. Defendant K. Jones similarly argued that the government's witnesses had failed to provide any

4

evidence that Ms. Jones had entered any agreement—beyond her marriage to Mr. Jones.  Doc. 298 at 3.

Defendants' joint brief devotes most of its pages to the first requisite under Rule 801(d)(2)(E)—determining that a conspiracy existed.  The court thus starts there and—like defendants—expends most of its efforts on this existence essential.  Then, near the end of this Order, the court briefly addresses defendants' membership in the conspiracy.

### A.    Existence of a Conspiracy

Defendants argue that the government has failed to demonstrate the existence of a conspiracy.

> To prove a conspiracy, the government must demonstrate:  "(1) that two or more persons agreed to violate the law, (2) that the defendant knew at least the essential objectives of the conspiracy, (3) that the defendant knowingly and voluntarily became a part of it, and (4) that the alleged coconspirators were interdependent."

*United States v. Caldwell*, 589 F.3d 1323, 1329 (10th Cir. 2009) (quoting *United States v. Sells*, 477 F.3d 1226, 1235 (10th Cir. 2007)).  The government can shoulder its burden with either direct or circumstantial evidence.  *Sells*, 477 F.3d at 1235.  Defendants' joint brief contends the government flunked all four conspiracy prongs at the *James* hearing.  Doc. 296 at 4.  They elaborate, identifying deficiencies in Mr. Newman's testimony for each required element.  *Id.* at 4–9.  Defendants McManamon and K. Jones's individual supplemental briefs focus primarily on the first requisite element—agreeing to violate the law.  The court takes up each conspiracy element, in turn, below.

### i.    Agreed to Violate the Law

Start with the first element—an agreement to violate the law.  Mr. Newman's testimony as lead-investigator witness on this first prong was uninspired.  He couldn't identify when the conspiracy started.  Doc. 293 at 49 (Hr'g Tr. 49:23–24) ("I guess I don't really know when the

conspiracy started."). And when he tried to pin down a date, he suggested two alleged coconspirators—Tyler Brown and Kathy Stapp—had agreed to a conspiracy to overspend IBB funds before either Brown or Stapp even began working at IBB. *Id.* at 65–66, 76–77 (Hr'g Tr. 65:9–66:20, 76:24–77:16); Doc. 296 at 7. Also, Mr. Newman never identified where or how the alleged co-conspirators had reached an agreement—or even specifically with whom they had reached the agreement. *See, e.g.*, Doc. 293 at 78–81 (Hr'g Tr. 78:16–81:2) (Mr. Newman testifying that he couldn't identify with whom specifically Ms. Stapp formed an agreement, or when, or how, but testifying simply that Ms. Stapp reached an agreement with all the people in the conspiracy). And sometimes, when listing individuals allegedly participating in the Jones enterprise, Mr. Newman left out one defendant or another. *See, e.g.*, *id.* at 29–30 (Hr'g Tr. 29:22–30:4) (failing to list Kateryna Jones as member of Jones enterprise); *id.* at 62 (Hr'g Tr. 62:3–6) (failing to list Lawrence McManamon when enumerating those who had agreed to commit predicate acts of conspiracy).

The question then is: Does Mr. Newman's subpar testimony as the government's lead-investigator witness mean that the government has failed to establish the first prong under Tenth Circuit precedent?

"To prove the existence of an agreement, the government does not have to prove an express or formal agreement was made. It merely has to show the coconspirators tacitly came to a mutual understanding." *United States v. Rutland*, 705 F.3d 1238, 1250 (10th Cir. 2013) (quotation cleaned up). Indeed, an "agreement may be inferred from the facts and circumstances of the case, including frequent contacts among the defendants and from their joint appearances at transactions and negotiations." *Sells*, 477 F.3d at 1236 (quotation cleaned up).

The shortcomings of Mr. Newman's testimony aside, the government's evidence at the

*James* hearing demonstrated transactions involving N. Jones, William Creeden, and K. Jones that suffice to infer a tacit mutual understanding and thus an agreement to violate the law.  Based on the *James* hearing evidence discussed below, the court concludes that the government has shouldered its burden to present "some 'independent evidence'"—even if it's not substantial—of the first conspiracy element for N. Jones, Creeden, and K. Jones.  *Stein*, 985 F.3d at 1269 (quoting *Lopez-Gutierrez*, 83 F.3d at 1242).

*First*, Mr. Newman identified allegedly offending transactions involving these three defendants.  He testified that Newton Jones ordered Kathy Stapp and Tyler Brown to pay Kateryna Jones two years' worth of back wages in 2015—though the investigation never unearthed any work actually performed by K. Jones from 2013 to 2015.  Doc. 293 at 26–27 (Hr'g Tr. 26:15–27:1).  Mr. Newman then confirmed that Mr. Brown's plea agreement indicated that K. Jones received $2 million in cumulative salary, reimbursed expenses, and benefit contributions made on her behalf—all directed by N. Jones and authorized by Creeden.[2]  *Id.* at

---

[2]      The court considers the admitted plea agreements when evaluating the government's *James* evidence.  Defendants' joint brief never mentions the plea agreements—at all.  *See generally* Doc. 296. Defendants McManamon and K. Jones's individual briefs each imply that these plea agreements are unreliable.  Defendant McManamon asserts that the defendants who pled "accepted" the plea agreement's factual basis "as true in exchange for leniency from the government[.]"  Doc. 297 at 5.  Defendant K. Jones likewise avers that "a primary basis for [the government's witnesses'] conclusions were guilty plea agreements of cooperating co-defendants seeking leniency in sentencing."  Doc. 298 at 3.  But neither brief identifies any authority suggesting that the government can't rely on plea agreements to make its *James* proffer.  Indeed, the court's research suggests that it can.

United States District Judge James O. Browning found the existence of a conspiracy—and defendants' participation in it—simply by citing findings of fact drawn *exclusively* from plea agreements. *See United States v. DeLeon* (*DeLeon I*), 287 F. Supp. 3d 1187, 1199–1200, 1250 (D.N.M. 2018) (finding United States established first two of Rule 801(d)(2)(E)'s prongs with facts located in plea agreements); *see id.* at 1224 ("The United States argued that the plea agreements of cooperating defendants, which it introduced [at the *James* hearing], establish the existence of a conspiracy.").  What's more, our Circuit has upheld a district court's finding that a predicate conspiracy existed where the government's *James* evidence consisted solely of an FBI special agent's testimony that summarized "the information . . . coconspirators provided after entering into plea agreements with the government." *United States v. Owens*, 70 F.3d 1118, 1124 (10th Cir. 1995).  Indeed, the Circuit rejected defendant's argument that "the government was required to corroborate the information his coconspirators gave [the

27 (Hr'g Tr. 27:2–8); *United States v. Brown*, 24-20047-DDC-1 (D. Kan. May 23, 2024), ECF 13 at 3 (Gov't Ex. 813). And Mr. Newman testified that defendants N. Jones and K. Jones both held IBB-issued American Express credit cards that they used when going out to dinner as husband and wife—and expensed IBB for it. Doc. 293 at 39 (Hr'g Tr. 39:19–25).

*Second*, Ms. Musil—a senior investigator for the U.S. Department of Labor Employee Benefits Security Administration—also testified. She, too, recited allegedly offending transactions involving defendants N. Jones, Creeden, and K. Jones. Ms. Musil testified, for example, that K. Jones didn't qualify for IBB's sponsored health plan or pension plan because she didn't work the requisite hours per week to qualify. Ms. Musil reached that insufficient-work conclusion based on witness statements, Ms. Jones's personnel file, and comparing Ms. Jones's work product with other employees' work product and email traffic. Despite this ineligibility, Ms. Jones participated in the plans. Ms. Musil also testified that N. Jones and Creeden appointed another individual, Bryan Daly, to receive health care benefits when Mr. Daly was terminally ill—and to backdate Mr. Daly's employment and health plan. Mr. Daly had not, and would not, perform work for IBB. Nonetheless, defendants N. Jones and Creeden authorized Daly's health-plan participation. Finally, Ms. Musil testified that defendants N. Jones and Creeden cashed out benefits of retirement plans at the Bank of Labor—receiving more than $500,000 each—despite performing no work for the bank outside their already-established director duties. Entitlement to retirement benefits at the bank was premised on full-time work.

---

special agent] with independent evidence, which [defendant] define[d] as evidence from a source other than his coconspirators." *Id.* The Circuit explained that there's nothing "to suggest the 'independent evidence' must come from some source other than a member of the conspiracy or that it cannot be an out-of-court statement by a coconspirator to a government agent during an investigation." *Id.* at 1125. It would seem, then, that the government properly can use the factual bases in the four admitted plea agreements here to support its *James* proffer. And so, the court considers the plea agreements alongside witness testimony and other exhibits when evaluating the existence of a conspiracy.

But the bank employees and others Ms. Musil interviewed in her investigation indicated that defendants N. Jones and Creeden performed no additional work when they moved from directors to CEO and executive vice president, respectively.

Recall that the bar for independent evidence to establish a conspiracy is low—as our Circuit explains, it "need not be substantial." *Stein*, 985 F.3d at 1269. The government's independent evidence of defendants' various allegedly offending transactions provides enough— under that minimal standard—to demonstrate defendants N. Jones, Creeden, and K. Jones's tacit agreement. Conspicuously absent from these transactions, however, is defendant Lawrence McManamon. The sum total of the government's evidence involving McManamon included (i) his attendance at allegedly unnecessary and lavish international trips; and (ii) his presence on the International Executive Council (IEC), which allegedly neglected its duties to review the offending expenditures.

*First*, Mr. Newman testified about defendants' allegedly excessive and costly overseas travel. Doc. 293 at 15 (Hr'g Tr. 15:2–20). Indeed, government's Exhibit 108 confirmed the attendance of defendant McManamon, along with defendants N. Jones and Creeden, at the Paris 2009 IEC meeting. *Id.* at 117–18 (Hr'g Tr. 117:18–118:4). Further exemplifying defendants' frequent international travel, Mr. Newman confirmed the contents of various paragraphs from defendant Warren Fairley's plea agreement—paragraphs that describe particular overseas trips. *Id.* at 15 (Hr'g Tr. 15:2–20). Specifically, Mr. Fairley's plea agreement placed McManamon on IBB-funded trips to Italy in June 2018 and June 2019, as well as a trip to England in February 2020. Doc. 257 at 4–5 (Gov't Ex. 811).

*Second*, Mr. Newman testified that, as a member of the IEC, McManamon regularly should have reviewed the officers' and IBB's expenses, to authorize and approve them. Doc.

9

293 at 16–17 (Hr'g Tr. 16:13–17:12).  But Mr. Newman's investigation revealed that McManamon rarely did so.  *Id.*  Instead, Mr. Newman testified that McManamon and other members of the executive council acquiesced to Newton Jones's expenditures, never confronting or questioning them.  *Id.* at 34 (Hr'g Tr. 34:7–23).

Our Circuit has concluded that "mere presence is not sufficient in and of itself to establish a conspiracy, nor is it sufficient for the government to show only mere association with conspirators known to be involved in crime."  *Caldwell*, 589 F.3d at 1331 (quotation cleaned up). The evidence the government proffered about defendant McManamon constitutes no more than mere presence.  He attended lavish trips and IEC meetings where the members failed to review expenditures.  But the court can't infer from his mere presence at work trips and lackadaisical performance at work meetings that McManamon agreed to violate the law.

So, the government's proffer of independent evidence at the *James* hearing clears the first prong required to prove the existence of a conspiracy for defendants N. Jones, Creeden, and K. Jones, but not defendant McManamon.  The court thus addresses the next two prongs— together—but just for the three defendants still standing.

### ii. & iii. Knowledge of the Essential Conspiracy Objectives & Knowing, Voluntary Participation in the Conspiracy

Recall that the government also must supply independent evidence that "the defendant knew at least the essential objectives of the conspiracy" and "that the defendant knowingly and voluntarily became a part of it[.]"  *Caldwell*, 589 F.3d at 1329 (quotation cleaned up).  The court addresses these two prongs together because the circumstantial evidence evincing these prongs largely overlaps.  Defendants' joint supplemental brief argues that the government failed to establish that any defendant knew the criminal objectives of the alleged conspiracy or that any defendant knowingly and voluntarily became part of the alleged conspiracy, pointing again to

10

Mr. Newman's testimony. Doc. 296 at 5–8. The joint brief neglects to account for any evidence apart from Mr. Newman's testimony, however—never mentioning the plea agreements or engaging with Ms. Musil's testimony. *See generally id.*; *see also id.* at 3 (mentioning Ms. Musil just once and stating that she served as a witness but never addressing any of her testimony). And defendant K. Jones's individual brief makes just a passing reference to her knowledge, or lack thereof, without developing the argument any further. Doc. 298 at 2 ("[T]he James hearing . . . provided no evidence that Kateryna Jones . . . knew of the existence of such [a RICO conspiracy] agreement—if there was one.").

"[T]he government isn't required to present direct evidence of the defendant's knowledge of the conspiracy's objective or of the defendant's knowing and voluntary participation in the conspiracy. Instead, circumstantial evidence will suffice." *United States v. Arnold*, 696 F. App'x 903, 908 (10th Cir. 2017) (citing *United States v. Small*, 423 F.3d 1164, 1182–83 (10th Cir. 2005)). And, in some cases, the same circumstantial evidence may satisfy conspiracy prongs two and three. *See, e.g.*, *United States v. Mitchell*, No. 07-CR-149 TS, 2008 WL 2048386, at *4 (D. Utah May 12, 2008) (citing same evidence of knowledge and involvement to satisfy the second and third conspiracy prongs when performing existence-of-conspiracy analysis under Fed. R. Evid. 801(d)(2)(E)). When evaluating knowledge and participation, "a conspirator 'need not know of the existence or identity of the other members of the conspiracy or the full extent of the conspiracy.'" *United States v. Leveille*, No. 18-CR-2945-WJ, 2023 WL 5835889, at *11 (D.N.M. Sept. 8, 2023) (quoting *United States v. Evans*, 970 F.2d 663, 669 (10th Cir. 1992)).

The Tenth Circuit evaluation of conspiracy evidence in *Arnold* proves instructive to the court's analysis here. There, our Circuit addressed the sufficiency of the evidence to convict a

defendant of conspiracy. *Arnold*, 696 F. App'x at 907–08. The indictment alleged that defendant and his family members participated in a scheme to secure victims' financing-incentive rebates from their new vehicle purchases. *Id.* at 904. The conspirators promised victims that a co-op association would invest the victims' rebate money and then make the victims' loan payments using the invested rebate's interest. *Id.* The Circuit found the evidence sufficient to convict defendant of conspiracy by identifying three categories of circumstantial evidence. *First*, the Circuit credited defendant's failure to respond to victims' inquiries as circumstantial evidence supporting an inference that defendant understood the rebate scheme was a fraudulent one. *Id.* at 908. *Second*, the Circuit deemed the "highly implausible" nature of the rebate scheme—where the invested rebates purportedly would generate sufficient income to satisfy the victims' loan payments—as additional circumstantial evidence of defendant's knowledge. *Id. Finally*, *Arnold* determined that evidence of defendant's "coordination and concert of action" with coconspirators—such as a coconspirator having defendant handle the steps of vehicle purchases—sufficed to demonstrate knowing participation. *Id.* at 908–09. Similar categories of circumstantial *James* evidence satisfy the essential-objectives and knowing, voluntary participation prongs here, as well.

Start with the "highly implausible" scheme category of evidence. Here, the government presented evidence that defendants N. Jones, Creeden, and K. Jones performed little to no work but reaped the benefits of full-time employment—a highly implausible scheme. Ms. Musil testified that defendants N. Jones and Creeden performed little to no additional work when moving from Bank of Labor directors to CEO and executive vice president, respectively. Yet, when they left the Bank of Labor's employ, N. Jones and Creeden submitted for distributions from a retirement plan for full-time employees of the bank—to the tune of around half a million

dollars each.  Ms. Musil also testified that K. Jones didn't perform 30 hours a week of work but nonetheless participated in the IBB-sponsored health plan.  K. Jones also participated in IBB's pension plan, a plan that requires full-time employment.  According to Ms. Musil's review of witness statements, as well as K. Jones's personnel file and work product, K. Jones didn't work enough to qualify for the pension plan, either.  It's highly implausible that defendants could perform little to no work and nonetheless believed they merited full-time employee benefits.  As in *Arnold*, such a "highly implausible scenario" as receiving substantial employee benefits without performing the work of an employee supplies circumstantial evidence of defendants N. Jones, Creeden, and K. Jones's knowledge of the conspiracy's essential objectives.

Next consider *Arnold*'s "coordination and concert of action" category of evidence.  N. Jones and Creeden repeatedly authorized expenditures jointly.  For example, Mr. Newman testified that N. Jones and Creeden approved expenses for Cullen Jones—N. Jones's son and an alleged co-conspirator—to attend film school in Vancouver on IBB's dime.  Doc. 293 at 22 (Hr'g Tr. 22:12–22).  They allegedly authorized Cullen Jones's relocation and allowed him to continue receiving full salary and benefits, as well as paying his tuition and board, along with a per diem while in school.  *Id.*  Cullen Jones's plea agreement provides the full details about the expenses IBB covered:  $2,000 in relocation expenses; $43,000 in tuition and books; $1,350 in monthly rent and utilities; $75 in a daily per diem; the use of a rental car; and $63,000 in salary while he was in residence in Canada as a student.  Doc. 259 at 2 (Gov't Ex. 810).  For defendants to expense such transactions to IBB, N. Jones and Creeden had to act in concert, with both granting approval.  Given the nature of these film-school expenditures—and the unlikelihood that they benefitted IBB or its members—scrutiny at the approval stage presumably would have

13

halted them.  Defendants N. Jones and Creeden thus, in a coordinated effort of approval, allowed such expenditures.

In sum, N. Jones, K. Jones, and Creeden's "highly implausible" receipt of full-time benefits for minimal work and the coordination required among N. Jones and Creeden all serve as independent circumstantial evidence sufficient for this small piece in the *James* analysis.  That leaves one final conspiracy element:  interdependence.

### iv.    Interdependence

Defendants' joint brief contends that this final element may highlight "the most fatal flaw" of the government's conspiracy claim.  Doc. 296 at 8.  They argue that the government "was utterly unable to identify any interdependence among Defendants, instead pointing only to acts that Defendants did as part and parcel of their lawful employment at IBB[.]"  *Id.* Defendants contend that the government's evidence demonstrates—at best—"'similar or parallel objectives between similarly situated people.'"  *Id.* (quoting *United States v. DeLeon* (*DeLeon II*), 418 F. Supp. 3d 682, 746 (D.N.M. 2019)).  And they focus on Mr. Newman's inability to identify any "extra-IBB" relationship or communication among defendants.  *Id.* at 8–9.  So, defendants conclude, the government hasn't pinpointed any acts "outside of [defendants'] employment with the IBB that would constitute interdependence in the alleged conspiracy."  *Id.* at 9.  Defendants never provide any authority or explain why the acts demonstrating interdependence must have occurred outside their employment with the IBB.  *See generally id.*

Interdependence exists where "each alleged coconspirator depends on the operation of each link in the chain to achieve the common goal.  In essence, the defendant's actions must facilitate the endeavors of other alleged coconspirators or facilitate the venture as a whole." *Evans*, 970 F.2d at 671 (quotation cleaned up).  That is, "'a single conspiracy does not exist

solely because many individuals deal with a common central player.  What is required is a *shared*, single criminal objective, not just similar or parallel objectives between similarly situated people.'"  *United States v. Serr*, 817 F. App'x 598, 601 (10th Cir. 2020) (emphasis in original) (quoting *Small*, 423 F.3d at 1182).  "And interdependence gets to this question, asking whether coconspirators intend to act together for their shared mutual benefit within the scope of the conspiracy charged."  *Id.* at 601–02 (quotation cleaned up).

At the *James* hearing, the government adduced evidence that IBB had used an expenditure-approval structure that indicates interdependence.  It asked Mr. Newman about article 5.2 of IBB's constitution.  Doc. 293 at 11 (Hr'g Tr. 11:1–9).  Mr. Newman testified that N. Jones and Creeden—given their roles as international president and international secretary-treasurer—were required by article 5.2 to authorize all nonroutine expenditures.  *Id.*  So, any defendant involved in the expenditure-authorization chain necessarily depended on the others in the chain.  Remember—the government alleges that the conspiracy sought to enrich defendants personally with funds intended to benefit the IBB and its members.  The constitutionally required structure for expenditure approval suggests defendants N. Jones and Creeden couldn't act independently to accomplish that purpose.  Each allegedly unnecessary or lavish expenditure needed joint approval.  That structure thus intertwines Newton Jones and William Creeden because, to accomplish the aims of the alleged conspiracy, they had to act together.  The court thus concludes that the government presented some independent evidence of interdependence for N. Jones and Creeden.  And some is enough.  *See Stein*, 985 F.3d at 1269.

But what about Kateryna Jones?  The government never adduced any evidence that she could approve expenses.  Indeed, the government's evidence suggested that her husband, Newton Jones, set up much of the alleged scheme on her behalf—never indicating acts taken by

15

Ms. Jones herself.  For example, Mr. Newman testified that Newton Jones ordered that Kateryna Jones receive two years' worth of back wages—allegedly for no work.  Doc. 293 at 26–27 (Hr'g Tr. 26:15–27:1).  And Creeden authorized it.  *Id.* at 27 (Hr'g Tr. 27:8).  But Ms. Jones had no role to play in approving that backpay expense.  And this exemplifies the type of evidence the government presented against Ms. Jones.  She consistently received benefit from various expenditures but the government hasn't demonstrated that she acted to secure any of them.  Recall that interdependence requires that "the defendant's actions . . . facilitate the endeavors of other alleged coconspirators or facilitate the venture as a whole."  *Evans*, 970 F.2d at 671 (quotation cleaned up).  Based on the evidence the government proffered at the *James* hearing, Kateryna Jones received benefits, but she didn't facilitate anything.  The evidence never revealed any actions taken by Ms. Jones that paved the way for "the endeavors of other alleged coconspirators" or that pushed forward "the venture as a whole."  *Id.*  In short, the government's evidence demonstrated that Ms. Jones profited from the scheme; the evidence didn't demonstrate, however, that she meaningfully contributed to or in any way enabled it.  The court thus concludes that the government has failed to provide the requisite independent evidence—at least, for now—to demonstrate K. Jones's interdependence.

Recall that the burden on the government to establish the existence of a predicate conspiracy at a *James* hearing is light.  The independent evidence needn't "be substantial."  *Id.* The court finds the government's evidence passes muster at this preliminary stage on all four conspiracy prongs for N. Jones and Creeden, thus surviving *James*'s first macro-level requirement:  the conspiracy's existence.  Having so concluded, one other macro-level question remains:  Has the government provided sufficient independent evidence to demonstrate that defendants N. Jones and Creeden were members of the conspiracy?

16

### B.      Members of the Conspiracy

Defendants' joint brief ends by arguing that the government can't show each defendant was a member of the conspiracy.[3]  Doc. 296 at 9–10.

"Only slight evidence is required to demonstrate the defendant's participation in the conspiracy to permit the introduction of a co-conspirator's statement under rule 801(d)(2)(E)." *United States v. Salas-Aguayo*, No. CR 12-3109 JB, 2024 WL 453642, at *13 (D.N.M. Feb. 6, 2024).  The court concludes the evidence already reviewed above suffices to clear that slight evidence hurdle for defendants N. Jones and Creeden.  *See Mitchell*, 2008 WL 2048386, at *5 (referring to its discussion of the existence of a conspiracy to find that the government also established the conspiracy's membership).  Indeed, even defendants' joint brief acknowledges the overlap of these two macro-level analyses.  *See* Doc. 296 at 9 ("For largely the same reasons that the conspiracy was not established as discussed above, the Government similarly provided no evidence or testimony supporting that each defendant . . . agreed to the 'same criminal objective[.]'").

Defendants' only novel argument addressing this portion of the standard contends that the broad manner in which the government defines the conspiracy means that defendants couldn't have agreed on the *same* criminal objective.  *Id.*  Recall that the government defines the conspiracy to include four components:  defendants allegedly sought to "enrich the members of the conspiracy, embezzle union funds, commit wire fraud, and embezzle pension and welfare funds."  Doc. 288 at 8.  The court isn't persuaded that this broad description of the conspiracy

---

[3]      Defendants' joint brief also argues that the government can't show that each declarant was a member of the conspiracy.  Doc. 296 at 9.  But the court saves any declarant-membership issues for the micro-level *James* analysis.  Because the court doesn't yet have the statements the government hopes to admit as Rule 801(d)(2)(E) statements, it can't determine at this juncture who the declarants of those undisclosed statements were and whether they were conspiracy members.

precludes defendants' agreement on the same objective. All four categories involve a common thread: acquiring personal benefit from their IBB and Bank of Labor positions through embezzlement and wire fraud. And the court concludes the evidence already cited in this Order shows that the government proffered "some independent evidence"—even if "not . . . substantial"—that Newton Jones and William Creeden were members of the alleged conspiracy. *Stein*, 985 F.3d at 1269

## III.    Conclusion

The court concludes the independent evidence the government presented at the *James* hearing suffices to demonstrate the existence of a conspiracy and Newton Jones and William Creeden's membership in it. The independent evidence doesn't suffice, however, to loop Lawrence McManamon or Kateryna Jones into it.

This preliminary conclusion doesn't do much for the government yet. The court still has to analyze the forthcoming coconspirator statements to determine whether—adding those statements to the independent evidence adduced at the *James* hearing—will enable the government to reach a preponderance of the evidence standard.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the government's Amended Motion for Admission of Coconspirator Statements (Doc. 288) is granted in part, as set forth in this Order. The motion remains pending so that the court can assess any coconspirator statements on an individual basis.

**IT IS FURTHER ORDERED THAT** the government's Motion for Admission of Coconspirator Statements (Doc. 211) is moot as superseded by Doc. 288.

**IT IS SO ORDERED.**

18

Dated this 27th day of April, 2026, at Kansas City, Kansas.

s/ Daniel D. Crabtree
Daniel D. Crabtree
United States District Judge