# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | **Case No. 24-20070-DDC** |
| **v.** | |
| **NEWTON JONES (01),**<br>**WILLIAM CREEDEN (02),**<br>**KATERYNA JONES (03),**<br>**LAWRENCE MCMANAMON (05),** | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

The government seeks a pretrial ruling that certain business records are admissible,[1]

allowing the government to introduce the records at trial without foundational testimony.  Doc.

322 at 1.  Defendants oppose the government's request.  Doc. 335.  The court agrees with

defendants and denies the government's motion.  It explains this result, below.

The government has submitted six certificates of authenticity from six document

custodians.  These certificates attempt to authenticate the following categories of evidence:

- Attachment A:  PhotoShelter documents produced in response a Rule 17(c) subpoena, Doc. 322-1 at 2;

---

[1]     The government's motion sends mixed signals about its aims—*i.e.*, whether it wants the records admitted or declared authentic.  *Compare* Doc. 322 at 1 (titling the motion as one seeking a pretrial ruling on admissibility), *with id.* at 6 (concluding the motion by asking for a pretrial ruling on questions of authenticity).  Defendants read the government's motion to seek a pretrial ruling on admissibility.  Doc. 335 at 3.  That's a fair reading—the motion is titled "Government's Supplemental Motion Pursuant to Fed. R. Evid. 104 for Pretrial Ruling on Admissibility of Business Records."  Doc. 322 at 1.  And the body of the motion also ask the court for an "Order resolving preliminary questions of admissibility[.]" *Id.*  To avoid prejudicing defendants by reading the motion another way, the court follows suit and concludes that the motion asks the court to admit the records.

- Attachment B:  International Executive Council ballots and assignment letters produced in response to a Rule 17(c) subpoena, *id.* at 4;

- Attachment C:  vacation tracking records produced in response to a Rule 17(c) subpoena, *id.* at 6;

- Attachment D:  an employee vacation spreadsheet, *id.* at 8–9;

- Attachment E:  emails from nine accounts, *id.* at 11–12;

- Attachment F:  health plan documents for the International Brotherhood of Boilermaker's Employee Health Care Plan (IBBEHC), IBBEHC participant eligibility records and correspondence, COBRA billing and payment records, emails between a company called Wilson-McShane and the IBBEHC about specified participants, and claims listings for specified individuals, *id.* at 14–15.

These records cover a lot of ground.  And the certifications don't identify the records

specifically.  Nor are the records at issue attached to the certifications.

The government cites Fed. R. Evid. 902(11), which sets parameters for self-

authenticating records of regularly conducted activities.  Rule 902(11) provides that the

following records are self-authenticating:

> The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court.  Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record—and must make the record and certification available for inspection—so that the party has a fair opportunity to challenge them.

These records of regularly conducted activities are admissible if they satisfy this standard and the

standards in Fed. R. Evid. 803(6).  Rule 803(6) provides a hearsay exception for records of a

regularly conducted activity if the record at issue meets the following criteria:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

"Rules 902(11) and 803(6) are thus designed to work in tandem." *United States v. Komasa*, 767 F.3d 151, 155 (2d Cir. 2014).

"The essential component of the business records exception is that each actor in the chain of information is under a business duty or compulsion to provide accurate information." *United States v. Ary*, 518 F.3d 775, 787 (10th Cir. 2008) (quotation cleaned up).  So, if "any person in the process is not acting in the regular course of business, then an essential link in the trustworthiness chain fails." *Id.* (quotation cleaned up).

When the court reviews the six certificates of authenticity provided here with the government's motion, a split emerges.  The first three—government's Attachments A, B, and C—use the normal, business-record-type language.  The other three do not.  So, the court organizes its analysis around these two distinct cohorts.  It begins with Attachments A, B, and C.

Recall that Attachment A authenticates "PhotoShelter documents," Attachment B authenticates "International Executive Council ballots and assignment letters," and Attachment C authenticates "vacation tracking records[.]"  Doc. 322-1 at 1–6.  The International Brotherhood of Boilermakers produced these records in response to a defense subpoena, Doc. 126-1 at 5, and the government maintains that the government has satisfied Rule 902(11)'s notice requirement because "the records have been available to Defendants in discovery[,]" Doc. 322 at 5. Defendants complain that the certificates themselves don't identify specifically the records that

the government seeks to admit, thus depriving them of the notice to which Rule 902(11) entitles them.  Doc. 335 at 3–4.  They have a point.

Rule 902(11) requires "reasonable" notice.  And so, in a case with as many documents as this one, a certificate of authenticity should make it clear which documents it covers.  *See Adams v. United States*, No. CV 03-49-BLW, 2011 WL 925570, at *2 (D. Idaho Mar. 11, 2011) (rejecting certification that "fail[ed] to specifically identify the documents to which it refers"); *United States v. Hall*, No. 05-CR-36, 2006 WL 8448112, at *7 (E.D. Tenn. Mar. 8, 2006) (sustaining defense objection to affidavit failing to advise defendants of specific documents). Take *Adams* as an example.  There, the court suggested that a certificate of authenticity's lack of specificity "could be cured by attaching to the certification a list of the documents produced, identified by their Bates-stamp numbers."  2011 WL 925570, at *2.  But the government hasn't taken that step here.  Instead, it's opted to identify the documents merely by category. Defendants insist that the general categories identified in the certificates and the subpoena don't suffice.  Doc. 335 at 6.  The court agrees with them.  Indeed, the court previously rejected a similar methodology when the government tried to admit coconspirator statements identified only by category.  What's more, the government's motion asks the court to *admit* these records into evidence.  That's now how it works.  The court admits specifically identified exhibits.  A generic description of documents won't do.  *See United States v. Penn*, 568 F. Supp. 3d 1135, 1139 (D. Colo. 2021) (suggesting review of document itself is critical where government seeks to admit documents under Rule 902(11)).  The court declines to admit these records on this basis and this record.

The other three certificates of authenticity—Attachments D, E, and F—present three distinct issues.  The court tackles each one, in turn, below.

Attachment D tries to authenticate a spreadsheet.  Doc. 322-1 at 8–9.  The declarant, an IBB employee, created the spreadsheet in May 2022, at the request of former IBB employee Tyler Brown.  *Id.* at 8.  And the declarant asserts that the spreadsheet "is not maintained in the ordinary course of business, but instead reflects a compilation of information derived from existing records."  *Id.*  In short, the spreadsheet isn't a business record in the sense that the Federal Rules of Evidence use that term.  Fed. R. Evid. 803(6)(B)–(C).  And the government hasn't identified any other grounds for admitting this spreadsheet.  *See generally* Doc. 322.  The court declines to admit this spreadsheet at this juncture.

Attachment E, which purports to authenticate email accounts, doesn't aim to satisfy Rule 902(11).  Doc. 322-1 at 11.  Instead, that declaration is offered under Rule 902(13), which declares certified records generated by an electronic process or system as self-authenticating.  But the government's motion doesn't mention Rule 902(13)—it moves for admission only under Rule 902(11).  Given this mismatch, a dissonance between the declaration and the motion, the court declines to declare the emails admissible on this record.[2]  *E.g., United States v. Moya*, 5 F.4th 1168, 1192 (10th Cir. 2021) (explaining that litigants waive arguments "when they are inadequately presented" (quotation cleaned up)).

---

[2]    Defendants don't appear to dispute that Attachment E authenticates the relevant documents under Rule 902(13), but only for a limited purpose:  the emails were sent or received at particular dates and times between particular accounts.  Doc. 335 at 10–11 (citing *United States v. Edwards*, No. 16-20070-01/02-CM, 2019 WL 5196614, at *11 (D. Kan. Oct. 15, 2019) ("[A] custodian certificate will not suffice for the government to authenticate any online communication's substantive content.")).  If the government seeks to admit the emails to prove substance they contain, then they must authenticate them through the normal route, Rule 901, and move to admit them under a hearsay exception.  *See Edwards*, 2019 WL 5196614, at *11 ("[T]o offer any email or other online communication to prove its substantive content—content which is neither supplied nor verified respectively by [email providers]—the government must independently authenticate the email's or content's author under Federal Rule of Evidence 901 and provide a hearsay exclusion or exception for admitting the particular communication.").

Attachment F seeks to authenticate a variety of IBBEHC-related documents under Rule 902(11) and 902(13).  Doc. 322-1 at 14–15.  The categories listed are broad ones:  plan documents, participant eligibility records and correspondence, COBRA records, emails, and claims listings.  *Id.* at 14.  The court agrees with defendants.  These categories don't identify sufficiently the documents to which the certificate refers.  As though anticipating this problem, the declaration claims that the records are "attached."  *See id.*  But there wasn't any attachment.  And the declaration isn't clear about which categories the declarant authenticates under Rule 902(11) and which ones rely, instead, on Rule 902(13).  This distinction matters.  Some of the documents are emails and, as avid footnote readers know already, Rule 902(11) doesn't apply to emails, and Rule 902(13) authenticates emails for only a limited purpose.  Defendants also assert that one of the other categories—claims listings—provides summaries subject to Fed. R. Evid. 1006's requirements.  Doc. 335 at 12.  The government's motion never cites Rule 1006.  *See generally* Doc. 322.  And, without the documents to review, the court can't assess whether defendants are right that the claims listings are compilations.

In sum, this case has far too many exhibits for the government to rely on such a spare showing.  The court thus denies the government's motion.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the government's Motion Pursuant to Fed. R. Evid. 104 for Pretrial Ruling on Admissibility of Business Records (Doc. 322) is denied.

**IT IS SO ORDERED.**

**Dated this 30th day of April, 2026, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

6