**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 24-20070-01-DDC** |
| **NEWTON JONES (01),** | |
| **Defendant.** | |

**<u>MEMORANDUM AND ORDER</u>**

Defendant Newton Jones informally requested a court-appointed attorney in an email to chambers on July 14, 2026. And he followed up by submitting a financial affidavit and supporting documents to the court. Under the Criminal Justice Act (CJA), a court shall appoint counsel to represent a defendant in a criminal case if it is "satisfied after appropriate inquiry that the person is financially unable to obtain counsel[.]" 18 U.S.C. § 3006A(b). That appointment shall continue "through appeal." *Id.* § 3006A(c). And the court may appoint counsel "at any stage of the proceedings" where "the court finds that the person is financially unable to pay counsel whom he had retained[.]" *Id.* The defendant bears the burden of persuading the court of the requisite financial inability. *United States v. Barcelon*, 833 F.2d 894, 896 (10th Cir. 1987).

"A defendant need not be indigent to qualify for appointed counsel. Rather, he or she need only be financially unable to obtain counsel." *United States v. Nichols*, 841 F.2d 1485, 1506 (10th Cir. 1988) (quotation cleaned up). "Financial inability is a lesser standard than indigency." *Id.* Our Circuit has explained that the court's appropriate inquiry "necessarily varies with the circumstances presented, and no one method or combination of methods is required." *Barcelon*, 833 F.2d at 897. It suggests that, in some cases, investigating "the applicant's assets,

liabilities, income and obligations alone" may suffice.  *Id.*  At the same time, courts also may account for "a broad range of additional considerations where warranted."  *Id.*  Such additional considerations include:

- the needs of the defendant and his family;

- the amount the defendant posted as bail;

- the expense and extent of legal services which the defendant requires;

- amounts given the defendant by others for limited purposes only;

- whether the defendant has secreted assets; and

- the availability of income to the defendant from other sources such as a spouse, or trusts, estates, or the like.

*Id.* at 897 n.5.

When an "applicant's financial position discloses marginal liquidity . . . . the court should expand its inquiry to explore the availability of the assets."  *Id.* at 897.  And it should consider whether "the applicant has only partial ability to pay for counsel and, as a consequence, is entitled to appointed counsel."  *Id.* at 898 (citing *Wood v. United States*, 389 U.S. 20, 20–21 (1967)).  "Liquidation of assets may be required in some cases."  *United States v. Simmers*, 911 F. Supp. 483, 486 (D. Kan. 1995).  And, at least according to the Third Circuit, "[a]ssets are available when a defendant has control over or discretionary use of them."  *United States v. Konrad*, 730 F.3d 343, 347 (3d Cir. 2013).

Some examples help.  Courts in our Circuit have found financial inability where a defendant's income was approximately $20,000 per year and the defendant held significant debt.  *United States v. Sandoval*, No. 09-3456 JB, 2011 WL 13290265, at *6 (D.N.M. Jan. 28, 2011).  Financial inability also existed where a defendant "lost his job as a probation and parole

officer, . . . work[ed] at Target, and ha[d] been paying for the assistance of three private attorneys defending a federal criminal case." *United States v. Chavez*, No. CR 12-3290 JB, 2014 WL 936721, at *8 n.3 (D.N.M. Mar. 6, 2014). And the court determined a defendant was financially unable to retain counsel where she had a heavily mortgaged home, negative net assets, and a low income. *United States v. Bryant*, No. CR 18-3490 JB, 2020 WL 670993, at *8, 9 (D.N.M. Feb. 11, 2020). Specifically, that defendant had about $226,000 in assets but owed $246,268.14 on her home, had other debts totaling over $35,000, and had a monthly income of $297. *Id.*

On the other hand, our court has held the assets of a defendant "adequate to enable him to retain qualified counsel" where he had equity in his home "in excess of $100,000[.]" *Simmers*, 911 F. Supp. at 486. There, the court noted that although "the defendant's primary asset is not liquid, the equity in his home is substantial." *Id.* And the court determined that the defendant had "failed to demonstrate that he [was] unable to use the equity in his home to either borrow the funds to employ counsel or to secure the payment of attorneys fees." *Id.* at 487.

Here, Mr. Jones has submitted a financial affidavit, a supplemental explanation of that financial affidavit, and two other supporting documents. Having reviewed those documents carefully, the court concludes that Mr. Jones hasn't shouldered his burden to demonstrate financial inability. Most compelling are Mr. Jones's real estate assets. Mr. Jones owns two homes, one of which carries no mortgage and is valued around $792,000. And the equity in Mr. Jones's other home totals more than half a million dollars. Mr. Jones also reports that he owns three vehicles, only one of which is financed. The two vehicles that are free and clear of debt are valued around $100,000 and $30,000, respectively. Liquidating assets so that Mr. Jones would own just one home and one car would free up nearly a million dollars. And there's another half

3

million in equity in his other home.  Plus, Mr. Jones reports that he receives more than $36,000 in pensions each month, before taxes.

The court is cognizant of the significant unpaid legal fees that Mr. Jones may owe his prior retained counsel.  Mr. Jones didn't include these unpaid fees as a liability on his financial affidavit.  The court learned about them at the July 9, 2026, hearing on Spencer Fane LLP's motion to withdraw as counsel.  But the court's only privy to the very general information Mr. Jones shared about those fees.  The court doesn't know whether Mr. Jones contests any of those fees, and so, the court can't evaluate —at least not precisely—the likely effect of that alleged debt.  Mr. Jones reports other debts, as well—credit cards, his third car, and other loans—totaling around $150,000.  But even if the unpaid fees and reported debt consumed most or all of Mr. Jones's assets, he still would have his monthly pension to fund newly retained counsel.  Mr. Jones identified his annual income, after federal and state taxes, to come in at $280,000.  Let's say he lived on $10,000 per month.  That leaves $160,000—*i.e.*, more than $13,000 per month— to fund new counsel.

With both significant assets to liquidate and a dependable income stream, Mr. Jones "is likely able to fashion some payment arrangement with an attorney." *United States v. Gutierrez*, 347 F. Supp. 3d 720, 738 (D.N.M. 2018).  And so, the court concludes Mr. Jones hasn't demonstrated financial inability.  The court thus denies his request to appoint counsel.

Finally, Mr. Jones has suggested that he may have to represent himself.  To observe the obvious, Mr. Jones is free to choose that alternative.  *See United States v. Simpson*, 845 F.3d 1039, 1046 (10th Cir. 2017) ("The Sixth Amendment provides criminal defendants with the right to represent themselves." (citing *Faretta v. California*, 422 U.S. 806, 819–20 (1975)).  But before the court can permit Mr. Jones to forego his Constitutional right to have his interests represented

4

by counsel, the court must discern whether the choice is an informed and purely volunteer choice. *Id.* (citing *United States v. Tucker*, 451 F.3d 1176, 1180 (10th Cir. 2006)). This responsibility requires the court to conduct a waiver colloquy with Mr. Jones. The court thus sets a hearing for this purpose on its afternoon docket of July 28, 2026. This docket begins at 1:30 p.m. in courtroom 476. The court will place this hearing at the heel of its 1:30 docket on that date, meaning it's the last case the court will call on that docket. Nonetheless, the court orders Mr. Jones to appear in the courtroom at 1:30 p.m. in case other hearings on that docket cancel. Also, the court directs Mr. Jones's current counsel—who remain in this case until they file the Reply supporting Mr. Jones's Rule 29 motion—to notify Mr. Jones of this docket setting, to explain how the court's weekly criminal docket works, and to ensure he understands his duty to appear in person for his hearing on July 28, 2026 at 1:30 p.m.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Newton Jones's request for the court to appoint him counsel is denied.

**IT IS SO ORDERED.**

**Dated this 20th day of July, 2026, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

5