**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Case No. 2:24-cr-20070-DDC-TJJ |
| | ) | |
| NEWTON JONES, et al. | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**DEFENDANT NEWTON JONES' REPLY IN SUPPORT OF HIS MOTIONS FOR**
**ACQUITTAL PURSUANT TO FED. R. CRIM. P. 29**</u>

COMES NOW Defendant Newton Jones, by and through his undersigned counsel, and for his Reply in support of his Motions to Acquit pursuant to Rule 29 of the Federal Rules of Criminal Procedure (Docs. 407 and 487), respectfully submits the following.

In the Government's Response (Doc. 505) to Defendant Newton Jones' Motion and Supplemental Motion for Acquittal (Docs. 407 and 487), it incorporated the responses to motions to acquit filed by Defendants Kateryna Jones, William Creeden and Lawrence McManamon (Docs. 502, 503 and 504). This reply will address selected elements of the Government's argument from across the incorporated responses.

### A. The Government's Evidence Failed to Show an Agreement to Join a Criminal Conspiracy

It is a maxim of conspiracy law that "[t]o support a conspiracy conviction, the government must prove '(1) an agreement between the defendant and one or more persons, (2) the object of which is to do either an unlawful act or a lawful act by unlawful means." *United States v. Pineiro*, 389 F.3d 1359, 1368 (11th Cir. 2004), <u>amended,</u> No. 03-14723, 2004 WL 3059008 (11th Cir. Nov. 15, 2004). As important, the defendant must know at least the essential objectives of the conspiracy

and must knowingly and voluntarily become a part of it. *United States v. Savaiano,* 843 F.2d 1280, 1294 (10th Cir.), *cert. denied,* 488 U.S. 836 (1988).

In response to the expansive deficit of evidence to support the existence of a criminal conspiracy, the government first trots out the tired trope that conspiratorial agreements do not have to be explicit or express or formal, but may be "inferred from the facts and circumstances of the case" (Doc. 504, p. 7), as if the question left by the evidence was whether the racketeering agreement was written down or spoken. Then, as the whole of the support for the existence of the charged conspiracy, the Government cites the testimony of three alleged "co-conspirators," none of whom established that the agreement was made with knowledge of its unlawful nature or, in fact, anything other than the patent statement that there was a conspiracy.

Leaving aside for a moment the factual incompetence of the government's conspiracy evidence, the government points to the testimony of Warren Fairly, Tyler Brown and Kathy Stapp as evidence of the agreement to join the charged RICO conspiracy. But even in the government's best version, none of the three established their "knowing and voluntary" entry into the conspiracy *at the time they purportedly reached the agreement* or that the "agreement" they reached had an unlawful object. Fairley said he "believed they agreed to spend money that wasn't necessary for the benefit of the organization" (Doc. 504 at 8), yet was then wholly unable to provide any of the critical specifics for such an agreement: with whom he reached it, how it was initially reached, how beyond clairvoyance there was an understanding between he and another of the common object, what the criminal object actually was, or anything else that even hints at an agreement at the time charged. In fact, the testimony of Brown cited by the government makes this very point: he testified "there was an agreement to do these things that were *ultimately* criminal activities" (*id*.) (emphasis supplied), indicating what was established repeatedly at trial – none of the

cooperating defendants were aware of the conspiracy or the criminal nature of it until they were told about it by federal prosecutors – and then threatened by those prosecutors that unless they agreed, their plea agreements would be void.

As almost a throwaway, the government says broadly that Kathy Stapp testified "her role in the conspiracy was illegal" yet similarly failing to establish even one of the same specifics: who, what, where, when, and  how – the details that prove the deliberate nature of the defendant's decision to join the conspiracy. At its core, the evidence in a conspiracy prosecution must show that two or more persons agreed to violate the law. *United States v. Fox*, 902 F.2d 1508, 1514 (10th Cir. 1990). Not to do something that turned out years later to be unlawful, or that government prosecutors announce was illegal.  The Supreme Court walked this high wire nearly 80 years ago when it said that, in order to convict for conspiracy, "[t]here need not, of course, be proof that the conspirators were aware of the criminality of their objective," but rather, *there must only be proof of knowledge of the unlawful conduct*. *Ingram v. United States,* 360 U.S. 672, 678 (1959) (emphasis supplied); *see also United States v. Brooks*, 681 F.3d 678, 699 (5th Cir. 2012).

As far as the knowing and voluntary participation of a defendant goes, the Tenth Circuit has said a "conspirator need not know of the existence or identity of the other members of the conspiracy or the full extent of the conspiracy, ... but he or she must have a general awareness of both the scope and the objective of the enterprise to be regarded as a coconspirator." *United States v. Cushing*, 10 F.4th 1055, 1065–66 (10th Cir. 2021), citing U*nited States v. Evans*, 970 F.2d 663, 668 (10th Cir. 1992). Even "[m]ere knowledge of illegal activity, even in conjunction with participation in a small part of the conspiracy" does not suffice. In their evidence, the government here wholly failed to prove "a general awareness of both the scope and objective," let alone any contemporaneous knowledge of the conspiracy. It goes without saying that the charged RICO

3

conspiracy was an agreement to achieve an unlawful act, specifically embezzlement from a labor union. There was nothing inherently unlawful about traveling to meetings and conferences, eating meals and receiving compensation. So the government's chosen theory is that the objects were unlawful.

The sum and substance of the government's position on the sufficiency of the evidence as to Count One comes down to the testimony of Fairley, Brown and Stapp. They point to nothing else and rely, much as they did at trial, on their ability to "back in to" the RICO charge by pointing to the volume of flights, hotels, meals and conferences. But each defendant must be proven to have joined the conspiracy by evidence separately considered as to each individual defendant. *United States v. Evans*, 970 F.2d 663, 675 (10th Cir. 1992). The evidence of each defendant's joinder into the charged criminal RICO conspiracy failed at every turn to show anything other than government cooperators who were coerced into pleading guilty to conspiring to do what not one of them could identify as unlawful until they were told by the government years later. To save their case, the government prosecutors relied on multiple acts of alleged embezzlement to support their theory that there must have been a RICO conspiracy amidst all the other evidence. Such a paucity of evidence cannot support a verdict of guilty as to Count One and, accordingly, the Court should enter its Order granting Defendant Jones' motion for acquittal.

### B. Count 19 Remains Legally Unsupported and the Government's Response Makes the Point.

The Government's response with regard to Count 19 focuses on non-specific fiduciary duties (not the elements of the offense), the details of previous trips to Italy that have nothing to do with Count 19, the "lack of authorization" for the trip by O'Leary via the discredited idea that advance notice and authorization by the IEC was required (it wasn't), and reliance on the suggestion that any FLAEI-related travel/meetings were worthless and thus unauthorized.

The whole of the Government's response relies on the testimony of Warren Fairley and Tyler Brown regarding their opinion of the value of trips (not the Count 19 trip) to meet with FLAEI officials, using standardless government issued adjectives like "lavish" and "unauthorized" to condemn the travel as a whole. However, none of the testimony – or other evidence – cited by the Government points to the elements it was required to prove beyond a reasonable doubt.

The Government cites Mr. Brown's testimony that he traveled to Italy in 2014 and that there were "quite a few other trips," the virtue of which he condemns, but never addresses the failure of the evidence to support proof of the elements regarding the 2022 O'Leary trip. None of Brown's opinion testimony about the impropriety of the trips – offered for the first time more than a decade later – addresses the central defect in the evidence: whether O'Leary shared criminal intent with Newt Jones and, if not, how Newt Jones had principal liability for the offense and benefitted thereby.  In an attempt to fill part of the gap, the Government throws in at the end that "none of the trips was authorized by the IEC" without specifying more. It is, however, undisputed that O'Leary's 2022 trip was specifically authorized by the union President and that there was no prior or post approval by the IEC required.

The Government cites Warren Fairley's testimony about his 2012 and 2013 trips to Rome and Ostuni, Italy nearly a decade prior to O'Leary's 2022 trip that is the subject of Count 19. At trial some 13 years later and under the weight of a plea agreement that spared him years in prison, he testified as directed that his 2013 trip "should not have been paid for by the Boilermakers Union, was not a direct benefit to the union and was not necessary for the union" none of which are relevant to the trip charged in Count 19. (Doc. 505, p. 8). He detailed other trips he took, in May 2017 to Sardinia, in June 2018 to Milan, during which there was insufficient purpose, according to him, purportedly to establish that any trip to meet with FLAEI in Italy at union expense was

5

worthless and unauthorized. What Fairley did not testify about and what the Government hides from behind a curtain of irrelevant facts is how either witness – or any other evidence – establishes the elements of Count 19, specifically the issue of criminal intent on the part of Mr. O'Leary, the issue of liability under Title 18, United States Code, Section 2 with regard to Newt Jones, and the issue of knowing criminal conversion of funds for the benefit (as charged) of Mr. Jones.

The Government's purported support for Count 19 misses the mark by a light year because it fails to address the specific conduct charged in Count 19 and instead paints a universe of purported valueless travel to Italy in general. And even if it was in the right neighborhood (it isn't), the testimony of Brown and Fairley must be considered with a full measure of skepticism, as the testimony highlighted by the Government is something neither cooperating defendant had ever raised or stated prior to cooperating with the government.

WHEREFORE, for the reasons stated above and those set out in his Motions for Acquittal pursuant to Rule 29, the Court should enter judgment of acquittal as to all counts.

Respectfully submitted,

SPENCER FANE LLP

/s/ *Patrick A. M$^c$Inerney*

| | |
|---|---|
| Patrick A. M$^c$Inerney | KS #22561 |
| Daniel M. Nelson | KS #79203 |
| Caleb P. Phillips | KS #26226 |
| Emily N. Reed | KS #79020 |

SPENCER FANE LLP
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106-2140

Tele: 816-474-8100
Fax: 816-474-3216
pmcinerney@spencerfane.com
dnelson@spencerfane.com
cphillips@spencerfane.com
ereed@spencerfane.com
**Attorneys for Newton Jones**

6

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was electronically filed on August 3, 2026, with the Clerk of the Court for delivery to interested parties.

/s/ *Patrick A. M$^c$Inerney*
Attorney for Newton Jones